UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ATLANTIC CASUALTY INSURANCE COMPANY,                    Case No.: 07CIV4098 (DC)

Plaintiff,

**NOTICE OF MOTION FOR**
V.                                                      **SUMMARY JUDGMENT**

FORTHRIGHT CONSTRUCTION, INC., WONDER
WORKS CONSTRUCTION CORP., AND VASILIS
AFTOUSMIS and CONSTANTIA AFTOUSMIS

Defendants.
-------------------------------------------------------------X

PLEASE TAKE NOTICE, that upon the annexed Affirmation of RACHEL L.

KAYLIE, Esq., duly affirmed on July 31, 2008, the Affidavit of Mark Kanevsky dated

July 31, 2008, together with the exhibits annexed thereto, and upon all the pleadings

and proceedings heretofore had herein, the undersigned will move this Court, Judge

Denny Chin, U.S.D.J., room 1020, United States Courthouse, New York, New York,

on the 5 day of September, 2008, at 9:30 a.m., or as soon thereafter as counsel can be

heard for an Order granting summary judgment in favor of Defendant FORTHRIGHT

CONSTRUCTION, INC., and for such other and further relief as this Court deems just

and proper.

Dated: BROOKLYN, NEW YORK
       July 31, 2008

Yours, etc.

RACHEL L. KAYLIE, ESQ.
LAW OFFICES OF WILLIAM PAGER
Attorneys for Defendant
FORTHRIGHT CONSTRUCTION, INC.
470 Kings Highway
Brooklyn, NY 11223
718-998-1010

TO:    CYRIL E. SMITH, ESQ.
NIXON PEABODY, LLP
Attorneys for Plaintiff
ATLANTIC CASUALTY INSURANCE CO.
437 Madison Avenue
New York, NY 100022

MICHAEL L. SMAR, ESQ.
MCCABE, COLLINS, MCGEOUGH & FOWLER, LLP
Attorneys for Defendant
WONDER WORKS CONSTRUCTION CORP.
346 Westbury Avenue, P.O. Box 9000
Carle Place, NY 11514

VASILIS AND CONSTANTIA AFTOUSMIS
97 Quentin Road
Brooklyn, NY 11223

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ATLANTIC CASUALTY INSURANCE COMPANY,                    Index No.: 07CIV4098

               Plaintiff,

                 V.                              **AFFIRMATION IN**
                                                  **SUPPORT**

FORTHRIGHT CONSTRUCTION, INC., WONDER
WORKS CONSTRUCTION CORP., AND VASILIS
AFTOUSMIS and CONSTANTIA AFTOUSMIS

               Defendants.

-------------------------------------------------------------------X

       RACHEL L. KAYLIE, an attorney duly admitted to practice before the courts

of this State, and associated with the Law Offices of William Pager, attorneys for

defendant FORTHRIGHT CONSTRUCTION, INC., affirms the following to be true

under penalty of perjury:

1)  I am fully familiar with all of the pleadings and proceedings had in this matter

    previously, and make this Affirmation in support of the instant motion for

    summary judgment in favor of defendant FORTHRIGHT CONSTRUCTION,

    INC. (hereinafter "FORTHRIGHT").

2)  This insurance coverage and declaratory judgment action was commenced by a

    Summons and Complaint on May 25, 2007 by plaintiff ATLANTIC

    CASUALTY INSURANCE COMPANY (hereinafter "ATLANTIC

    CASUALTY"). A copy of the Summons and Complaint for the instant action

    is annexed hereto as Exhibit A.

3)  The Complaint seeks a judgment declaring that plaintiff has no legal obligation

to insure and defend defendants FORTHRIGHT CONSTRUCTION, INC. and WONDER WORKS CONSTRUCTION CORP. (hereinafter "WONDER WORKS") in the underlying New York Supreme Court action.

4) Plaintiff's Complaint is without merit for the following reasons:

    a) The Complaint makes many allegations that are irrelevant to the case at hand, are overbroad, are completely frivolous, and only serve to waste the valuable time of this Honorable Court.

    b) As to those allegations of the Complaint that are arguably relevant to the underlying action, there are no material issues of fact. As such, defendant will demonstrate below why summary judgment must be granted in favor of FORTHRIGHT, and plaintiff must be compelled to provide coverage for the underlying action at no expense to defendants.

5) The underlying action is entitled Vasilis Aftousmis and Constantia Aftousmis v. Wonder Works Construction Corp. and Forthright Construction, Inc., Index No. 102479/07, Supreme Court of the State of New York, County of New York, filed on February 22, 2007 (hereinafter the "Aftousmis action"). A copy of the Complaint for that action is annexed hereto as Exhibit B.

6) In the instant action, WONDER WORKS interposed an Answer on or about June 29, 2007, and FORTHRIGHT interposed an Answer on or about July 24, 2007. A copy of said Answers are annexed hereto collectively as Exhibit C.

7) This action stems from an insurance policy issued by plaintiff ATLANTIC CASUALTY to defendant FORTHRIGHT through its broker Steven Bykovsky

at BR Vital Brokerage, Inc. in Brooklyn, New York.

8) The original insurance contract was issued under Policy Number #L036000522 and was for the period of November 24, 2003 through November 24, 2004. The policy was subsequently renewed under Policy Number #L036001127 with a policy period of November 24, 2004 through November 24, 2005; and again renewed under Policy Number #L036001737 with a policy period of November 24, 2005 through November 24, 2006. A copy of the original policy is annexed hereto as Exhibit D.

## THE PARTIES AND UNDERLYING FACTS

9) Defendant WONDER WORKS is a construction contractor who entered into an agreement dated November 17, 2003 with QUENTIN TERRACE, LLC. as owner. The agreement provided that WONDER WORKS would oversee all construction of a building known to the parties as the Quentin Terrace project. A copy of this Agreement is annexed hereto as Exhibit E.

10) On February 19, 2004 WONDER WORKS then entered into an agreement with FORTHRIGHT entitled SUBCONTRACTOR AGREEMENT, a copy of which is annexed hereto as Exhibit F. In this agreement WONDER WORKS is labeled the "Contractor" and FORTHRIGHT is labeled the "Subcontractor."

11) This agreement provides that Forthright will "perform and furnish all the work, labor, services, materials, plans, equipment, tools, scaffolds, appliances and all other things necessary for the completion" of the Quentin Terrace project, all of which must be in accordance with the terms of the contract between WONDER WORKS and QUENTIN TERRACE, LLC.

12) Basically, FORTHRIGHT became the "general contractor" acting on behalf of QUENTIN TERRACE, LLC. and WONDER WORKS, who was also a general contractor on the same project.

13) In fact, at his deposition taken on May 13, 2008, on page 28, lines 3-15, (a copy of the deposition transcript is annexed hereto as Exhibit G) Mark Kanevsky, an officer of FORTHRIGHT, testified as follows:

"Q. Now, in 2004 was Forthright Construction, Inc. the general contractor, a subcontractor?  What was their role for the construction project at Quentin Road?

    A.  I would say general contractor.

    Q.  What was Wonder Works in relation to Forthright?

    A.  Wonder Works is a general contractor on the same job.

    Q.  So, your testimony is that there were two general contractors working the job on Quentin Road; is that correct?

    A.  You can say so.

14) Therefore, even though the contract between FORTHRIGHT and WONDER WORKS labeled FORTHRIGHT as the "Subcontractor", they were really acting as a general contractor.

15) This is evidenced in FORTHRIGHT's duties and obligations and in the execution of same as follows: pursuant to the agreement between WONDER WORKS and FORTHRIGHT, Mark Kanevsky, on behalf of FORTHRIGHT hired the services of four subcontractors, MMG Design, ATY Construction, N&C Ironworks, and OMI, as discussed in more detail below, to perform the

actual construction work on the Quentin Terrace project. Mark Kanevsky, co-owner of FORTHRIGHT and in his capacity as the general contractor, then acted as the overseer of the entire Quentin Terrace project, including coordinating and supervising the work of each of the subcontractors.

16) The Courts have defined a "general contractor" as follows:

"...it is understood that a general contractor is generally responsible for the coordination and execution of all the work at the worksite (*see, Russin v. Picciano & Son,* 54 N.Y.2d 311, 316, 445 N.Y.S.2d 127, 429 N.E.2d 805; *Bjelicic v. Lynned Realty Corp.,* 152 A.D.2d 151, 153, 546 N.Y.S.2d 1020, *appeal dismissed* 75 N.Y.2d 947, 555 N.Y.S.2d 693, 554 N.E.2d 1281). **Feltt v. Owens** 247 A.D.2d 689, 668 N.Y.S.2d 757, N.Y.A.D. 3 Dept., 1998.

17) Furthermore, the agreement between FORTHRIGHT and WONDER WORKS provides in **Article XXI Indemnity** that FORTHRIGHT agrees to indemnify, defend and hold harmless both WONDER WORKS and the owner QUENTIN TERRACE LLC, amongst other entities. See page 13 of Exhibit F.

18) **Article XXII Insurance** of the Agreement also provides that before commencing work, FORTHRIGHT agrees to obtain Professional Liability insurance for an amount not less than $2,000,000 per occurrence, and which is also for the benefit of WONDER WORKS and the owner and certain other entities. This article also obligates FORTHRIGHT to provide to WONDER WORKS a certificate from said insurer showing that such a policy was in full force and effect to the satisfaction of WONDER WORKS before the commencement of any work on the project. See pages 13-14 of Exhibit F.

19) As the general contractor, FORTHRIGHT hired the services of various subcontractors to perform different portions of the construction job. They hired ATY Construction to do the excavation, underpinning and shoring work, MMG Design Inc. to do the demolition and some excavation work, OMI to erect scaffolding and do brick/stone work, and N&C Ironworks to do steel work. Copies of the subcontractor agreements for these four subcontractors are annexed hereto collectively as Exhibit H.

20) The ATLANTIC CASUALTY insurance policy issued to FORTHRIGHT contains an Endorsement regarding coverage for work done by subcontractors. A copy of the Endorsement is included with the insurance policy already annexed as Exhibit D, however, for the sake of convenience, a copy of the Endorsement is annexed hereto separately as Exhibit I.

21) The Endorsement provides, *inter alia*, that subcontracted work is not covered under the policy unless certain conditions are met. These conditions include:

    1) The subcontractor maintains insurance in force with a minimum general aggregate limit of $1,000,000; and

    2) FORTHRIGHT maintains a current certificate of insurance for the subcontractor; and

    3) The subcontractor has executed a hold harmless agreement in favor of FORTHRIGHT; and/or

    4) FORTHRIGHT is endorsed to the subcontractor's policy as an additional insured.

22) FORTHRIGHT has obtained Certificates of Liability Insurance for MMG

Design, ATY Construction, Inc. and N&C Ironworks, the three subcontractors whose work on this project are relevant to the underlying Aftousmis action. Copies of the Certificates of Liability Insurance are annexed hereto collectively as Exhibit J.

23) In June 2007, the subcontractor OMI did brick and masonry work on the exterior of the building owned by Quentin Condos, including erecting scaffolding without permission of the owner on the Aftousmis property. However, that issue was not part of the underlying Aftousmis action and was resolved separately, and is thus not relevant for the purposes of this motion.

24) The separate issue involving the work done by the subcontractor OMI is only mentioned here because the Certificate of Liability Insurance for OMI is not included in Exhibit J.

25) The gravamen of the Aftousmis action is that the owners of 97 Quentin Road, the property adjacent to the Quentin Terrace property, alleged that demolition and excavation work done on the Quentin Terrace project caused damage to their property, more specifically, cracks to the walls and floors.

26) ATLANTIC CASUALTY is currently providing a defense to FORTHRIGHT, a named defendant and third party plaintiff in the Aftousmis action.

## LEGAL ARGUMENT

27) The Courts have held that:

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed.R.Civ.P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158- 59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the nonmoving party "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (internal quotation marks omitted). Silverman Sclar Byrne Shin & Byrne P.C. v. Chicago Ins. Co. Not Reported in F.Supp.2d, 2005 WL 2367709 (E.D.N.Y. 2005)

28) Pursuant to CPLR §3212(b), a "motion for summary judgment shall be granted if, upon all the papers and proof submitted, the cause of action shall be established sufficiently to warrant the Court as a matter of law in directing judgment of favor to any party."

29) Here, defendant FORTHRIGHT will demonstrate that there are no material issues of fact and that they are indeed entitled to summary judgment as a matter of law, and an order dismissing plaintiff's Complaint.

### The Complaint's First Cause of Action

30) In the first cause of action in their Complaint, plaintiff makes no less than 24 allegations concerning their duty to cover defendant FORTHRIGHT under the insurance policy.  Most of these allegations mirror the general reasons stated in the April 10, 2007 letter denying coverage, a copy of which is annexed hereto as Exhibit K.

31) The majority of these allegations are irrelevant, overbroad, and completely frivolous.

32) However, even though most of the allegations in the Complaint do not actually pertain to the matter at hand, because plaintiff alleges them, defendant is compelled to address each of them in this summary judgment motion.

33) The first cause of action begins with paragraph 29 on page 12, however it is **paragraph 30, subdivisions a-x** that form the basis for the first cause of action and which need to be addressed herein.

34) For the sake of expediency, the irrelevant, overbroad, and frivolous allegations will be addressed first, although they may not necessarily be in the same order as in the Complaint.

<u>Irrelevant Allegations</u>

35) Plaintiff alleges in subdivision n. that there is an exclusion of coverage for damages claimed for any loss, cost or expense incurred for the loss of use, withdrawal, repair, replacement, adjustment, removal or disposal of the insured's product, work or impaired property, if such product, work or property was withdrawn or recalled from the market, etc. because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

36) Secondly, plaintiff alleges in subdivision o. that there is no coverage for injury or damages relative to pollution or pollutants.

37) Thirdly, subdivision q. makes an exclusion for subsidence, which is essentially defined in the policy as property damage caused by, resulting from, or attributable to the subsidence of land as a result of landslide, mud flow, earth sinking or shifting resulting from the operations of the insured or their subcontractor.

38) Next, plaintiff alleges in subdivision r. that there is no coverage on the grounds that there is an exclusion for punitive damages.

39) Finally, subdivision u. claims an exclusion for liability for damages from mold, fungus, bacteria, virus and organic pathogens.

40) All of the above exclusions are inapplicable and irrelevant to the allegations made in the underlying property damage claim in the Aftousmis action.

41) None of these five allegations should have even been made in the Complaint.

Overbroad Allegations

42) Plaintiff alleges in subdivision a. there is no coverage under the insurance contract, including the duty to defend and indemnify on the grounds that **all** of the terms, conditions, provisions and exclusions of the contract apply to bar or limit coverage.

43) Subdivision l. alleges an exclusion of coverage for property damage to property that must be restored, repaired or replaced because the insured's work was incorrectly performed on it.

44) Neither of these allegations makes any sense at all. They are overly broad and akin to saying that plaintiff issued an insurance policy to a general contractor that does not cover **any** work performed by or on behalf of that general contractor.

45) Obviously that cannot be the case; otherwise, why would any general contractor bother to obtain insurance.

46) Subdivision i. is also overly broad. Plaintiff here alleges there is no duty to defend and/or indemnify on the grounds that there was any misrepresentation,

misstatement, omission, and/or failure to disclose during the procurement of the insurance contract.

47) However, plaintiff fails to state what misrepresentations, misstatements, omissions, and/or failures to disclose during the procurement of the insurance contract defendant actually made.

48) Furthermore, defendant obtained this insurance policy prior to the commencement of any work being done, or even of any inspections of the surrounding properties being made.

49) Therefore, defendant had no knowledge of anything that could have given rise to the underlying property damage claim, and thus no information to disclose, omit, misstate, or misrepresent.

50) Finally, subdivision o. claims there is no coverage on the grounds and to the extent that there is co-insurance, other insurance, deductibles, etc.

51) Again, plaintiff fails to state what these "other" insurances, deductibles, etc. are.

52) Also, even if there is other insurance and deductibles, etc. from some unknown source, that does not in and of itself bar coverage under this insurance contract.

53) At best, it would supplement this policy, or reduce the amounts paid, but certainly not exclude coverage.

54) Obviously all four of these overly broad allegations were thrown in to the Complaint as meaningless catch-alls.

<u>Frivolous Allegations</u>

55) Under this category, plaintiff makes at least 12 frivolous allegations.

56) Subdivision c. asserts that there is no coverage on the grounds that the

Aftousmis action does not assert a claim for property damage caused by an "occurrence".

57) The Aftousmis action asserts a claim for property damage precisely because of an occurrence, i.e. that damage occurred when the defendant's subcontractors did demolition and excavation work in a negligent manner.

58) Plaintiff alleges in subdivision d. that there is no covered property damage during the contracts' policy periods, beginning with November 24, 2003 and ending, after two renewals of the policy, with November 24, 2006.

59) Again, the Aftousmis action asserts a claim for property damage precisely during this time period. The damage is alleged to have occurred at sometime after the construction work began in February 2004 but before November 2006.

60) Next, in subdivision e. claims there is no coverage on the grounds that WONDER WORKS is not an insured or additional insured under the policy.

61) However, the insurance contract specifically states it will defend an indemnitee of the insured who is also named as a party to the "suit" as long as certain conditions are met.

62) All of those conditions for coverage of the indemnitee have been met in this case as applies to WONDER WORKS. See SUPPLEMENTARY PAYMENTS – COVERAGES A AND B, Section 2 (a-f) of the insurance policy (Exhibit D) for a list of the necessary conditions.

63) Subdivision f alleges an exclusion on the grounds that the Aftousmis action does not allege property damage arising out of work within the business description as classified in the policy and/or the Classification Limitation

endorsement to the policy.

64) The business description as classified in the policy, in sum and substance, is for "construction of residential property not exceeding three stories in height" and for "subcontracted work in connection with building construction, reconstruction, repair or erection – one or two family dwellings."

65) The Aftousmis action specifically alleges property damage arising out of such work as described in the policy classification.

66) Subdivision h. alleges there is an exclusion for claims in process which bars coverage since the defendants supposedly knew of the alleged property damage before at least two of the contracts incepted.

67) As discussed elsewhere in this Affirmation and in Kanevsky's Affidavit, FORTHRIGHT first learned of the alleged property damage only when they received notice of the claim in the February 2, 2007 letter from Steve Newman.

68) Not only was this after all of the insurance policies and renewals had incepted, but it was also almost three months after the last policy renewal had expired.

69) Subdivisions j., k. and m. allege exclusions for property damage to the following, respectively: to the insured's product and/or work, to the real property on which the insured is performing operations, and to impaired property or property not physically injured but arising out of a defect, deficiency, inadequacy or dangerous condition in the insured's product or work, or a delay or failure to perform a contract in accordance with its terms.

70) These three subdivisions are grouped together because none of these exclusions apply to the allegations made in the Aftousmis action.

71) The Aftousmis action deals only with the real property owned by them at 97 Quentin Road, and these exclusions apply only to the real property of the Quentin Terrace project.

72) Subdivision s. alleges an exclusion because the Aftousmis action does not seek sums that any insured is legally obligated to pay as damages.

73) Presumably, plaintiff means that the underlying claim is seeking excessive damages.

74) And subdivision x. alleges an exclusion of coverage on the grounds that any award or settlement exceeds the applicable policy limits.

75) If either situation is the case, then ATLANTIC CASUALTY would only obligated to pay the limits of the policy as damages. However, this is not a basis to exclude coverage entirely.

76) Furthermore, no award or settlement has been made in the underlying action, and none may ever be made, so subdivision x. is frivolous and premature for that reason as well.

77) The underlying Aftousmis action alleges negligence on the part of WONDER WORKS, FORTHRIGHT and their subcontractors. That Complaint does not allege an intentional tort on the part of any defendants.

78) Therefore, subdivision t., which alleges an exclusion of coverage on the grounds and to the extent that the alleged damage was expected or intended from the standpoint of any insured.

79) Clearly, that is not the situation in the case at hand.

80) Finally, subdivision v. alleges there is no coverage on the grounds that

Exclusion b. relative to contractual liability applies.

81) This provision of the policy states there is an exclusion for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

82) While it may arguably be true, without conceding, that in the agreement between WONDER WORKS and FORTHRIGHT, FORTHRIGHT did assume liability for damages, that still does not bar coverage under the contractual liability exclusion.

83) The contractual liability provision further states, in relevant part, "This exclusion *does not* apply to liability for damages: (1) That the insured would have in the absence of the contract or agreement; or ..." (emphasis added).

84) For two reasons, then, this exclusion does not apply.

85) First, the Complaint in the underlying action alleges negligence directly on the part of FORTHRIGHT, and therefore, they would be liable for any damages they caused, even in the absence of a contract or agreement.

86) Secondly, that Complaint alleges negligence for work done by the subcontractors, and with FORTHRIGHT being the general contractor, FORTHRIGHT would be liable for the work performed by their subcontractors, even in the absence of an agreement or contract.

87) As was the case with the irrelevant and over broad allegations discussed above, these 12 frivolous allegations in the first cause of action serve no purpose but to waste the Court's time.

### The Remaining Allegations in the First Cause of Action

88) There are essentially two remaining allegations made in the Complaint that need to be addressed.

89) One is the allegation that there is no coverage because the insured did not provide timely written notice to ATLANTIC CASUALTY.

90) The other is the exclusion for property damage allegedly arising out of work performed by a subcontractor.

91) It will be demonstrated below that there are no issues of fact with regards to those two allegations, and as a matter of law, therefore, summary judgment must be granted in favor of defendant FORTHRIGHT.

### Timely Written Notice

92) The Complaint alleges in subdivision b. that there is no coverage under the insurance contracts on the grounds that FORTHRIGHT did not provide ATLANTIC CASUALTY with timely written notice of the underlying claim.

93) This is simply not true. The first time FORTHRIGHT was aware of the Aftousmis action was when they received a letter dated February 2, 2007 from the Law Office of Steve Newman advising of the claim. A copy of the Steve Newman letter is annexed hereto as Exhibit L. See also Mark Kanevsky's Affidavit annexed hereto.

94) Upon receipt of the Newman letter, FORTHRIGHT immediately faxed it to their insurance broker, Steven Bykovsky at BR Vital Brokerage. They also faxed the letter to WONDER WORKS. See copy of WONDER WORKS fax transmittal sheet annexed hereto as Exhibit M.

95) Then, on March 1, 2007, the Green Mountain Agency, acting on behalf of ATLANTIC CASUALTY, forwarded a letter to Steven Bykovsky and to FORTHRIGHT advising that the Aftousmis claim had been forwarded to American Claims for adjusting.  Copies of the March 1, 2007 letters are annexed hereto as Exhibit N.

96) Based on the above, it is clear that ATLANTIC CASUALTY had been notified in writing about the Aftousmis action within a very short time after FORTHRIGHT had received notice of the claim.

97) Indeed, in less than a month after FORTHRIGHT received the February 2, 2007 Newman letter, ATLANTIC CASUALTY was already taking action to investigate the claim through its adjusters, American Claims Service.

98) ATLANTIC CASUALTY, within just a few weeks of being notified of the underlying claim, had already begun investigating the claim, as evidenced by the March 1, 2007 Green Mountain Agency letters, (see Exhibit N), and by the April 10, 2007 letter from American Claims Service to FORTHIRGHT, (see Exhibit K).

99) In fact, the April 10, 2007 letter from American Claims Service, which informs FORTHRIGHT that "American Claims Service is an authorized representative for Atlantic Casualty Insurance Company ("Atlantic Casualty") with respect to this matter," also informs FORTHRIGHT that American Claims Service had already assigned the defense of the Aftousmis action to the law firm of Wade, Clark, Mulcahy.

100)    Furthermore, the Aftousmis action was not actually even commenced

until February 22, 2007, only one week before the Green Mountain letter advising of the claim being sent to plaintiff's adjuster.

101)    In addition, as is also discussed further in Mark Kanevsky's Affidavit and in his deposition transcript, no one believed there to be any liability on the part of FORTHRIGHT or any of the subcontractors for any alleged damage to the Aftousmis property. Any supposed damage to the Aftousmis property was preexisting and not caused by any of the construction work done on the Quentin Terrace project.

102)    In his deposition testimony of May 13, 2008, Mark Kanevsky was questioned about the damage to the structure at 97 Quentin Road, also known as the Aftousmis property. The relevant questions and Kanevsky's responses are as follows (page 60, lines 11-22, and page 61, lines 16-22):

Q. Did you observe any cracks that formed that were created on the structure 97 Quentin Road as a result of the underpinning being done?

A. No.

Q. Were there any preexisting cracks on the structure at 97 Quentin Road?

A. Yes.

Q. Where?

A. All over.

Q. Where?

A. All over on the wall.

Q. Prior to any excavation beginning, prior to demolition, did you notice any cracks on the outside of 97 Quentin Road?

A. Yes.

Q. Where were they?

A. Along this wall. All along the wall. All over.

103) In fact, even plaintiff does not believe that FORTHRIGHT or any of the subcontractors are liable for the property damage.

104) This is evidenced by the April 10, 2007 letter from American Claims Service (ATLANTIC CASUALTY's adjusters) denying coverage and states on page two that, "We understand that the allegations of the *Aftousmis Action* are unsubstantiated and, by addressing coverage issues herein, we do not mean to suggest that there is any merit to those claims." See Exhibit K.

105) It is clear that neither the insurance company plaintiff nor the insured defendant give any credence to the claims made in the underlying Aftousmis action regarding the cause of their property damage.

106) The Second Circuit has held: "(the insured) Riina Girardi was obliged to give National Grange notice to its insured when "the circumstances known to [it] at that time would have suggested to a reasonable person the possibility of a claim." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir.1995); *see Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 272 (2d Cir.1987)." **Garay v. National Grange Mut. Ins. Co.** 117 Fed.Appx. 785 C.A.2 (N.Y.), 2004.

107) Where the insured claims a good faith belief in nonliability, the issue is not whether the insured should have anticipated the possibility of a lawsuit, but rather whether a reasonable person could envision liability, Rondale Building

Corp. v Nationwide Property and Casualty Insurance Co., 1 AD3d 584, 769 NYS2d 46 (reasonable person would anticipate claim where insured aware of victim's hospitalization); Paramount Insurance Co. v Rosedale Gardens, Inc., 293 AD2d 235, 743 NYS2d 59 (duty to give notice arises when insured could glean a reasonable possibility of policy's involvement); Spa Steel Products Co. Inc. v Royal Insurance, 282 AD2d 864, 722 NYS2d 827 (insured's belief in non-liability reasonable as a matter of law); Vradenburg v Prudential Property & Casualty Ins. Co., 212 AD2d 913, 622 NYS2d 623 (insured could not be reasonably expected to know of potential tort liability for independent act of third party who was charged with criminal responsibility for the incident); see Agoado Realty Corp. v. United International Ins. Co., 288 A.D.2d 145, 733 N.Y.S.2d 407 (1st Dept. 2001), (insured landlord did not know that tenant's death was caused by intruder);

108) Pursuant to Agoado Realty Corp. v. United International Ins. Co., 288 A.D.2d 145, 733 N.Y.S.2d 407 (1st Dept. 2001), a failure to notify of an accident is reasonable if the insured possesses a reasonably held good faith belief that no liability exists. See also Kaur v. Travelers Indemnity Co., 2001 WL 1649292 (Sup. Ct. Putnam Co. 2001) (finding that "an insured's good faith belief in non-liability, when reasonable under the circumstances, may operate to excuse his failure to notify his insurer of an incident.")

109) As such, since FORTHRIGHT reasonably believed they were not liable for the property damage to the Aftousmis property because it was preexisting to the start of any construction work, they were not under any duty to notify

ATLANTIC CASUALTY until they were aware of the claim against them, i.e., when they received the February 2, 2007 letter from the Aftousmis' attorney Steve Newman advising of the property damage claim.

110) In order for the denial of coverage to be effective, and where there are no viable claims of "fraud" or "collusion", the Court of Appeals has held that the insurer must prove that it has been prejudiced by the failure to give timely notice.  See Brandon v. Nationwide Mutual Ins. Co., 97 N.Y.2d 53 (2002).

111) Although New York remains a "no prejudice" state, the Court of Appeals has drawn a distinction between "notice of claim" and a notice of legal action. In the instant case, and as demonstrated above, FORTHRIGHT notified the Plaintiff immediately upon learning of the claim against them. As such, they must demonstrate prejudice.

112) In order for the denial of coverage to be effective, the Court of Appeals has held that the insurer must prove that it has been prejudiced by the failure to give timely notice.  See Brandon v. Nationwide Mutual Ins. Co., 97 N.Y.2d 53 (2002).

113) Based on the above, ATLANTIC CASUALTY cannot possibly show that they were prejudiced in any manner.

114) Therefore, timely written notice was provided to plaintiff, and plaintiff was in no way prejudiced.  This allegation in the Complaint must fail.

### Work Performed By Subcontractors

115) Next, the Complaint makes essentially the same allegations in subdivisions g. and p. of the first cause of action, namely that the exclusion for property

damage arising out of work performed by subcontractors bars coverage in this case.

116) This allegation is based upon the Endorsement attached at the end of the policy, and is entitled **SUBCONTRACTORS – DEFINITIONS OF ADEQUATELY INSURED**. See Exhibit I.

117) I ask the Court to take specific note that this Endorsement page, in all capital letters, directs the reader to be aware that this Endorsement changes the policy, and modifies the insurance provided under the Commercial General Liability Coverage Part of the policy.

118) This Endorsement also provides that if all the conditions of the Endorsement are met, the subcontractor will be considered "adequately insured" and the Independent Contractor/Subcontractor exclusions detailed previously in the policy are deleted in their entirety.

119) Why is this important?  It is important because essentially the terms of the Endorsement prevail over any conflicting language elsewhere in the policy.

120) The Endorsement then goes on to state that "this insurance does not apply to any claim arising from subcontracted work unless:" and then enumerates four criteria to be met in order for the subcontractor exclusion not to apply.

121) First, the subcontractor must maintain insurance in force for his operations with at least $1,000,000 each in General Aggregate Limit, Products-Completed Operations Aggregate Limit, and Each Occurrence Limit; or the limits provided by this policy, whichever is less.

122) Secondly, the insured must maintain a current certificate of insurance for the

subcontractor.

123) Thirdly, a hold harmless agreement in favor of insured has been executed with the subcontractor, and/or the fourth criteria, which is that the insured is endorsed to the subcontractor's Commercial General Liability policy as an additional insured.

124) Exhibit J are the Certificates of Liaiblity Insurance for ATY Construction, MMG Design, and N&C Ironworks.

125) As can be seen from a review of these certificates of liability insurance, each of these subcontractors maintained insurance in effect with limits of at least $1,000,000 and in some cases, $2,000,000.

126) Furthermore, for each of them FORTHRIGHT was named as the certificate holder.

127) Additionally, the MMG Design certificate of liability insurance lists FORTHRIGHT as an additional insured.

128) The subcontract agreements for ATY and N&C Ironworks each contain hold harmless and indemnification clauses in favor of FORTHRIGHT. See Exhibit H.

129) Since all the criteria have been met as enumerated in the policy Endorsement pertaining to subcontractors, then, in accordance with the Endorsement, all of the subcontractors must be considered "adequately insured" and the Independent Contractor/Subcontractor exclusion of the policy is void.

130) This being the case, then subdivisions g. and p. of the first cause of action must necessarily fail.

131) In summary, based upon the foregoing discussion, none of the 24 allegations made in the first cause of action are valid and this part of the Complaint should be dismissed.

### The Complaint's Second Cause of Action

132) In the second cause of action, which begins with paragraph 33 on page 19 of the Complaint, plaintiff makes certain allegations regarding providing a defense to FORTHRIGHT in the underlying Aftousmis action, and indemnification in that action for all applicable indemnitees.

133) The essence of the allegations in the second cause of action is that plaintiff has been providing a so-called "courtesy interim defense" to FORTHRIGHT in the underlying Aftousmis action, and therefore, FORTHRIGHT has been unjustly enriched; and that FORTHRIGHT has also been unjustly enriched by any indemnity payments made by ATLANTIC CASUALTY, and therefore ATLANTIC CASUALTY is entitled to reimbursement for any such payments.

134) Thus, as a result of FORTHRIGHT's unjust enrichment at ATLANTIC CASUALTY's expense, so the Complaint further alleges, ATLANTIC CASUALTY is entitled to a money judgment as against FORTHRIGHT for all past and future sums, attorney's costs and fees, expenses, etc. plus interest.

135) The entire second cause of action is absurd. ATLANTIC CASUALTY, pursuant to the insurance policy they issued to FORTHRIGHT, is obligated to provide a defense in the underlying Aftousmis action at no cost to FORTHRIGHT, and to indemnify all applicable indemnitees. These are two of the main reasons for having insurance in the first place.

136) Just because the attorneys for ATLANTIC CASUALTY in this declaratory judgment action call it a "courtesy interim defense" does not make it so.

137) ATLANTIC CASUALTY did not retain expensive attorneys of their own choosing to defend FORTHRIGHT in the underlying action as a good will gesture.  They did so because they knew they were required to as contracted in the insurance policy they issued to their insured.

138) "We will have the *right and duty to defend the insured* against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply."  See Section I – COVERAGES, OVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, paragraph 1, subsection a. of the insurance policy annexed hereto as Exhibit D, emphasis added.

139) Although the second part of the above paragraph disclaims the duty to cover for suits seeking damages to which the insurance policy does not apply, clearly that is not the case here.

140) The underlying action essentially alleges property damage caused by demolition and excavation work performed by defendant FORTHRIGHT's subcontractors.

141) The insurance policy contains an exclusion for work performed by the subcontractors unless certain conditions are met and, as discussed above in relation to the first cause of action, those conditions have all been met.

142) Thus, the subcontractor exclusion in the insurance policy is not applicable to

the underlying action, and under the policy, ATLANTIC CASUALTY's duty to defend FORTHRIGHT in that suit and indemnify all relevant indemnitees remains intact.

143) This being the case, it follows that FORTHRIGHT has not been unjustly enriched and must not be compelled to reimburse ATLANTIC CASUALTY for any costs, fees, expenses, etc. incurred in their defense in the Aftousmis action or for any indemnification.

144) There being no material issues of fact, then the second cause of action must be dismissed as a matter of law.

## CONCLUSION

145) Defendant FORTHRIGHT gave timely written notice of the underlying claim to plaintiff ATLANTIC CASUALTY; denial of insurance coverage was improper; and there are no material issues of fact.

146) Therefore, for all the above reasons, defendant FORTHRIGHT CONSTRUCTION is entitled to an order granting them summary judgment and dismissing plaintiff's Complaint, and compelling plaintiff ATLANTIC CASUALTY to represent and defend them in the underlying Aftousmis action, and to indemnify all applicable indemnitees pursuant to the insurance policy.

**WHEREFORE**, affirmant respectfully requests that the within motion be in all respects granted, together with such other, further, and different relief as to this Court seems just and proper.

DATED:     Brooklyn, New York
             July 31, 2008

                                      *Rachel L. Kaylie*
                                   RACHEL L. KAYLIE

Our File No: 1655

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

ATLANTIC CASUALTY INSURANCE COMPANY,

                          Plaintiff,

              v.

FORTHRIGHT CONSTRUCTION, INC., WONDER
WORKS CONSTRUCTION CORP., AND
VASILIS AFTOUSMIS and CONSTANTIA AFTOUSMIS

                          Defendants.

------------------------------------------------X

*Case No. 07 CV 4098*

*AFFIDAVIT
IN SUPPORT*

STATE OF NEW YORK    )
                     ) SS:
COUNTY OF KINGS      )

1. My name is Mark Kanevsky and I am an officer of FORTHRIGHT
   CONSTRUCTION, INC., a defendant in the above action.

2. I make this Affidavit in support of the motion for summary judgment in favor
   of FORTHRIGHT.

3. FORTHRIGHT is a general contractor that contracted in February 2004 with
   WONDER WORKS, also a general contractor, to oversee the construction of a
   project known as the Quentin Terrace project.

4. As part of FORTHRIGHT's duties as a general contractor, we hired the services
   of various subcontractors to perform different work on several stages of the
   construction project.

5. I hired MMG Design to do demolition and excavation work, ATY Construction
   to do excavation work, N&C Ironworks to do structural steel work, and OMI to
   do brick work and masonry.

6. As a condition to my hiring of these subcontractors, they had to obtain
   insurance with a minimum amount of coverage at $1,000,000. FORTHRIGHT

had to be an additional insured, and FORTHRIGHT was to be the holder of the Certificates of Liability Insurance.

7. Furthermore, the subcontractors had to agree to a hold harmless and indemnification clause in the contracts in favor of FORTHRIGHT.

8. All of the subcontractors met these criteria.

9. In addition to hiring subcontractors, I did daily inspections of the work as it was being done, and prior to the work beginning, I did an inspection of the surrounding properties.

10. Pursuant to the Agreement between WONDER WORKS and FORTHRIGHT dated February 19, 2004, FORTHRIGHT purchased an insurance policy from ATLANTIC CASUALTY.

11. Our broker Steve Bykovsky at BR Vital Brokerage brokered the deal for us with the knowledge that FORTHRIGHT is a general contractor and would be hiring the services of subcontractors to perform the work on this project.

12. My attorney informs me that ATLANTIC CASUALTY has commenced this declaratory judgment action seeking a Court Order declaring that they do not have to provide coverage and a defense to my company in the underlying Aftousmis action, nor do they have to indemnify WONDER WORKS.

13. My attorney also informs me that in their Complaint, ATLANTIC CASUALTY alleges, amongst other things, that FORTHRIGHT did not provide timely written notice of the underlying property damage claim.

14. This is simply not true.

15. On or about February 7, 2007, my office received a letter dated February 2, 2007 from Steve Newman, the attorney for Mr. and Mrs. Aftousmis, informing us that they sustained damage to their property at 97 Quentin Road, Brooklyn.

16. The letter further states that faulty excavation and construction work supposedly caused this damage to their property, and the letter advises us to notify our insurance company of this claim.

17. The same day FORTHRIGHT received this letter, we immediately faxed it to our insurance broker, Steve Bykovsky at BR Vital Brokerage, Inc.

18. Upon information and belief, Mr. Bykovsky had the Newman letter forwarded

to ATLANTIC CASUALTY or an agent of theirs.

19. We also faxed the letter the same day to WONDER WORKS.

20. This letter from Steve Newman is the first time FORTHRIGHT had any knowledge of the Aftousmis' underlying claim for property damage.

21. In fact, when I read this letter, I was quite surprised.

22. Back in early 2004, prior to any demolition or excavation work being done on the Quentin Terrace project, I had personally done an inspection of the surrounding properties, including the building at 97 Quentin Road.

23. It is standard practice to inspect surrounding properties before beginning any construction project.

24. At that time, I had found many cracks in the walls and floors already in existence to that building.

25. It had even been determined that much of the damage that we saw was due to vibrations from the continuous long-term use in the basement of the washing machines.

26. Upon information and belief, a representative from WONDER WORKS, who had also inspected the 97 Quentin Road property, took multiple photos of the preexisting damage.

27. Knowing full well that any damage to the 97 Quentin Road property existed prior to construction beginning on the Quentin Terrace project, it never occurred to me that FORTHRIGHT or any of its subcontractors were responsible for this damage.

28. In fact, throughout the entire construction project on Quentin Terrace, I personally had done regular and routine inspections of the work being performed by the subcontractors and of the surrounding properties.

29. I never once during the years of construction had reason to believe that there was any further damage done to 97 Quentin Road at all, whether caused by FORTHRIGHT, the subcontractors, or anyone.

30. Furthermore, FORTHRIGHT has always cooperated with ATLANTIC CASUALTY's investigation of the underlying claim and with the defense of that action.

31. FORTHRIGHT acted within the limits imposed by the ATLANTIC
    CASUALTY insurance policy.  Therefore, the insurance policy should remain
    in full force and effect and FORTHRIGHT should be granted summary
    judgment.

32. Allowing ATLANTIC CASUALTY to deny coverage, and to compel
    FORTHRIGHT to reimburse them for expenses incurred defending us in the
    Aftousmis action would be an injustice.

33. No request has heretofore been made for the relief requested herein.



MARK KANEVSKY

Sworn to before me this
31 day of July, 2008

KING COUNTY, STATE OF NEW YORK
THIS IS TO CERTIFY THAT
ZAMSHTEYN YEVGENIYA
REGISTRATION No 1245032423
AS AN OFFICIAL NOTARY PUBLIC
VALID 08/23/10
SIGNATURE

_____
Notary Public

AFFIDAVIT OF SERVICE

STATE OF NEW YORK, COUNTY OF KINGS ss.:

Tatiana Mirochnik being duly sworn, deposes and says:

I am over 18 years of age, I am not a party to the action, and I reside in Kings County in the State of New York.

I served a true copy of the annexed

NOTICE OF MOTION FOR SUMMARY JUDGMENT

on August 1, 2008

by mailing the same in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last known address of the addressee as indicated below:

CYRIL E. SMITH, ESQ.
NIXON PEABODY, LLP
Attorneys for Plaintiff
ATLANTIC CASUALTY INSURANCE CO.
437 Madison Avenue
New York, NY 100022

MICHAEL L. SMAR, ESQ.
MCCABE, COLLINS, MCGEOUGH & FOWLER, LLP
Attorneys for Defendant
WONDER WORKS CONSTRUCTION CORP.
346 Westbury Avenue, P.O. Box 9000
Carle Place, NY 11514

VASILIS AND CONSTANTIA AFTOUSMIS
97 Quentin Road
Brooklyn, NY 11223

_____
Tatiana Mirochnik

Sworn to before me August 1, 2008

_____
Notary Public

WILLIAM PAGER
Notary Public, State of New York
No. 02PA5023605
Qualified in Kings County
Commission Expires Feb. 7, 20__

Case No. 07CIV4098 (DC)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ATLANTIC CASUALTY INSURANCE COMPANY,

Plaintiff,

V.

FORTHRIGHT CONSTRUCTION, INC., WONDER WORKS CONSTRUCTION CORP.,
AND VASILIS AFTOUSMIS and CONSTANTIA AFTOUSMIS,

Defendants.

## NOTICE OF MOTION FOR SUMMARY JUDGMENT AND AFFIRMATION IN SUPPORT

## Law Offices of William Pager
**Attorneys for Defendant Forthright Construction, Inc.**
**470 Kings Highway**
**Brooklyn, New York 11223**
**Phone: 718-998-1010**
**Fax: 718-998-8046**

*PLEASE TAKE NOTICE*

That the within is a true copy of a                     entered in the office of the clerk of the within
        named Court on

That a        of which the within is a true copy will be presented for settlement to the Hon.
        One of the Judges of the within named Court at                     on
        at 9:30 a.m.

Due and timely service of the within                     is hereby admitted

Dated:

X _____