**EXHIBIT F**

# WONDER WORKS CONSTRUCTION CORP.
# SUBCONTRACTOR AGREEMENT

THIS AGREEMENT (the "Agreement") dated **February 19, 2004** is made by and between **Wonder Works Construction Corp.**, a New York Corporation ("Contractor" or "Wonder Works"), located at 392 Fifth Avenue, New York, New York, 10018 and **Forthright Construction , Inc.** located at 2240 McDonald Ave., Brooklyn, NY 11223 ("Subcontractor"). The Subcontractor and Wonder Works hereby agree as follows:

## ARTICLE I.  DESCRIPTION OF THE WORK

1.1     The Subcontractor shall perform and furnish all the work, labor, services, materials, plans, equipment, tools, scaffolds, appliances and all other things necessary for the completion of the Subcontractor's Work for the project known as QUENTIN TERRACE, located at 1671 west 10th Street /99-101 Quentin Road and 103-105 Quentin Road, Brooklyn , NY (the "Site" or the "Project"), which Subcontractor's Work is more particularly described herein and as is shown and described in the Project Manuals, Drawings and Specifications prepared by Karl Fisher Architecte, (the "Architect") and related contract documents as referred to in the Contract ("Owner's Contract") between Wonder Works Construction Corp. and   Quentin Condos II , LLC (the "Owner"), dated November 17, 2003 and in accordance with all of the Contract Documents more particularly described in Section 2 hereof (the "Contract Documents"). "Indemnitees", as referenced herein, shall refer to all parties which Subcontractor is required to indemnify pursuant to the Contract Documents.

1.2     The Subcontractor shall use its best care, skill and diligence in supervising, directing and performing the Subcontractor's Work.  The Subcontractor shall have responsibility and control over the performance of the Subcontractor's Work, including the construction methods, techniques, means and sequences for coordinating and completing the Subcontractor's Work, in full compliance with the Contract Documents, unless this Agreement gives other specific instructions concerning these matters.

1.3     Subcontractor represents that it has the level of expertise as would be expected in the construction industry from an experienced contractor in building construction in the State of the subject Project including construction of a facility of the type which is the subject of the Owner's Contract.

## ARTICLE II.  CONTRACT DOCUMENTS

2.1     The Contract Documents consist of this Agreement and the other documents listed below, which other documents are incorporated into this Agreement.  ALL CONTRACT DOCUMENTS REQUIRE THAT TIME IS OF THE ESSENCE.  FAILURE OF SUBCONTRACTOR TO MEET TIME OF THE

ESSENCE DEADLINES MAY RESULT IN DAMAGES, WHICH SHALL BE PAYABLE BY ALL
SUBCONTRACTORS CAUSING SUCH ASSESSMENT OF DAMAGES.

> **Exhibit A: Schedule of Value**
> **Exhibit B: AIA G-702/G703- Application for Payment**
> **Exhibit C: Hold Harmless Agreement**
> **Exhibit D: Drawing List**
> **Exhibit E: Certificate of Liability Insurance**
> **Exhibit F: Contract between Owner and Contractor**

2.2     The Contract Documents for the Project may be examined by the Subcontractor at any reasonable
time at Wonder Works offices. The Subcontractor represents and warrants that it has carefully examined
and understands the Contract Documents.   The Subcontractor represents and warrants that it has
investigated the nature and conditions and difficulties under which the Subcontractor's Work is to be
performed and that it enters into this Agreement based on its own examination, investigation, and
evaluation and not in reliance upon any opinions or representations of Wonder Works., the Owner, or
their respective officers, members, agents, or independent contractors.

2.3     With respect to the Subcontractor's Work, the Subcontractor agrees to be bound by every term
and provision of the Contract Documents, and to assume toward Wonder Works all of the duties,
obligations and responsibilities that Wonder Works  has assumed toward the Owner and Indemnitees.
Any provision required by the Owner's Contract to be included in any subcontract shall be deemed set
forth in full herein whether or not actually referenced in this Subcontract Agreement. The Subcontractor
agrees that Wonder Works has each and every right and remedy as against the Subcontractor in respect of
Subcontractor's Work as the Owner has against Wonder Works in the Owner's Contract. The terms and
provisions of this Agreement, with respect to the Subcontractor's Work shall be in addition to and not in
substitution of any of the terms and provisions of the Contract Documents, and in no event shall any of
the terms and conditions of this Agreement in any way modify or limit the obligation of the Subcontractor
to comply with the Contract Documents with respect to the Subcontractor's Work.

2.4     This Agreement and the Contract Documents are intended to supplement and complement each
other and shall be interpreted accordingly.  If, however, any provision of this Agreement conflicts with a
provision of another Contract Document, the provision imposing the greater duty or obligation on the
Subcontractor shall govern.

2.5    Although this Agreement has been drafted by Wonder Works, in the event that there is any dispute over its meaning or application, this Agreement shall be interpreted reasonably and neither for or against either Wonder Works or the Subcontractor.

2.6    Should inconsistencies or omissions appear in or among the Contract Documents or should the Subcontractor be aware that the work to be performed is contrary to any applicable laws, statutes, ordinances, building codes, rules or regulations, it shall be the duty of the Subcontractor to notify Wonder Works in writing within three business days of the Subcontractor's discovery thereof. Upon receipt of such notice, Wonder Works shall instruct the Subcontractor as to the measures to be taken and the Subcontractor shall comply with such instructions. If the Subcontractor performs work knowing, or if the Subcontractor reasonably should have known, that the performance of such work is contrary to any applicable laws, statutes, ordinances, building codes, rules or regulations or knowing there to be inconsistencies or omissions in or among the Contract Documents, without notice to Wonder Works , and advance written approval by appropriate parties, including Wonder Works , then the Subcontractor shall assume full responsibility for such work and shall bear all associated costs, charges, fees and expenses necessarily incurred to remedy the violation.

2.7    Subcontractor shall be responsible for compliance with the Contract Documents and all applicable governmental requirements within its Scope of Work.

## ARTICLE III.  TIME OF COMPLETION

3.1    The Subcontractor shall commence the Subcontractor's Work upon notice from Wonder Works. TIME IS OF THE ESSENCE FOR THE COMPLETION OF SUBCONTRACTOR'S WORK AND PUNCH LIST WORK. The Subcontractor shall continuously prosecute and complete the Subcontractor's Work in coordination and in accordance with the project schedule and any revision thereto as may be issued by Owner and Wonder Works. The Subcontractor's Work shall be substantially completed **NOT LATER THEN APRIL 1, 2005**. The date of Commencement of the Subcontractor's Work shall be the date when Subcontractor is given a notice to proceed. Subcontractor acknowledges and agrees that delays, disruptions, errors in the plans and specifications, and interferences commonly may arise in the construction process and has included compensation for the cost of these problems in its price and in agreeing to comply with the scheduling requirements or any adjustments thereto issued by Wonder Works, including reasonable extensions beyond the projected completion date; provided however that, except to the extent such occurrence(s) was caused by Subcontractor, any such occurrence(s) which is the result of suspension of Work shall be adjusted to the extent of direct cost of  Subcontractor for equipment and site logistics rentals.

3.2    · As part of this duty to complete the Subcontractor's Work in accordance with the project schedule, the Subcontractor shall supervise and coordinate all the trades under his contract or hired by the owner directly, shall participate in the development of the project schedule whenever and however requested by Wonder Works, shall continuously monitor the project schedule and its performance so as to be fully familiar with the timing of the Subcontractor's Work and of other work on the Project. Wonder Works shall have the right to determine and, if necessary, change the time, order and priority in which the various

portions of the work shall be performed and all other matters relative to the timely and orderly conduct of the Subcontractor's Work.

3.3    Should the progress of the Subcontractor's Work or of the Project be delayed through any fault, act, or failure to act by the Subcontractor or any of its officers, agents, subcontractors or suppliers and this fault, act, or failure to act causes any additional cost, expense (including legal expense), liability or damage, to Wonder Works, the Subcontractor hereby agrees to compensate and indemnify Wonder Works against all such claims, damages and injuries.

3.4    If Wonder Works deems it necessary, the Subcontractor shall work overtime and if Subcontractor has completely and fully complied with the requirements of the Contract Documents. Wonder Works will not pay the Subcontractor for the incremental additional wages paid, if any.

3.5    If, however, the overtime is required due to any fault, act, or failure to act by Subcontractor, its officers, agents, sub-subcontractors or suppliers, then the Subcontractor shall, in addition to any other obligation under this Agreement, and at its own cost and expense, institute such overtime or other acceleration measures as may be necessary to make up the time lost. Should the Subcontractor fail to make up for lost time, Wonder Works shall have the right to take whatever action it deems necessary to assure the timely completion of the Subcontractor's Work and of the Project. The cost and expense of such action, including legal fees and disbursements, together with any other costs incurred by Wonder Works to third parties including other subcontractors, resulting from the fault, act, or failure to act by Subcontractor, shall be borne by the Subcontractor.

## ARTICLE IV.  PRICE AND PAYMENTS

4.1    Wonder Works shall pay to Subcontractor, in accordance with Contract Documents out of funds received from the Owner, for the satisfactory performance and completion of the Subcontractor's Work and all requirements of the Contract Documents, subject to any additions or deductions as this Agreement or the Contract Documents may permit, the total amount (inclusive of all applicable taxes) of **($5,046,700 – FIVE MILLIONS FORTY SIX THOUSANDS SEVEN HUNDRED DOLLARS)** (the "Price").

4.2    The Price includes all taxes based upon labor, services, materials, equipment or other items acquired, performed, furnished or used in connection with the Subcontractor's Work, including without limitation sales, use, personal property taxes, fringe benefits to employees of Subcontractor or any sub-subcontractor for which the Owner, Wonder Works  or the Subcontractor may be liable.  Subcontractor shall be responsible for calculating and remitting all sales or other taxes due and payable on all goods and services which are subject to tax and all fringe benefits to employees of Subcontractor or any sub-subcontractor which are associated with the Subcontractor's Work.  All requisitions submitted must clearly identify sales tax, if applicable. Wonder Works has the right to withhold payment until such information is provided, but is not liable for the failure to do so.  Subcontractor shall indemnify, defend and hold harmless Wonder Works, Owner and Indemnitees from and against all claims, damages, loss and expenses, including but not limited to legal fees and disbursements arising from the failure of Subcontractor to comply with such sales tax obligation, if any or payment of such fringe benefits.

4  -

4.3    In order for Wonder Works to comply with the requisition procedure provided in the Contract Documents, the Subcontractor shall submit on about the first of each month, for work performed during the prior month, using a form and in accordance with such procedures as approved by Wonder Works , a requisition for payment showing the proportionate value of the Subcontractor's Work to that date from which shall be deducted:  (1) a retainage in accordance with the terms of the Owner's Contract; (2) all previous payments; (3) any offsets thereto; (4) all charges for chargeable items furnished by Wonder Works  to the Subcontractor and (5) any other amounts deducted or charged back to Wonder Works pursuant to the Contract Documents related to the work of the Subcontractor.  The net amount of such requisition shall be paid upon approval by Wonder Works , the Owner and the Architect, provided however that all such payments, whether partial or final, shall be conditioned on receipt of payment by Wonder Works  from the Owner pursuant to the Contract Documents and receipt of any required lien waivers and other documentation from Subcontractor.  Subject to the above express conditions precedent, payment to the Subcontractor shall be made by Wonder Works pursuant to the Contract Documents.

4.4    The obligation of Wonder Works to make any payment under this Agreement, whether a progress or final payment, or for extras or change orders, is subject to the filing of any required lien waivers, releases, affidavits or other documents by Subcontractor and/or its subcontractors and suppliers required by the Contract Documents.

4.5    The Subcontractor shall submit within ten (10) days of date hereof, a detailed schedule showing the breakdown of the Price into its various parts (Trade Payment breakdown) for use only as a basis of checking the Subcontractor's monthly requisitions, all of which shall be subject to the approval of Wonder Works  and as provided in the Contract Documents.

4.6    The Subcontractor shall promptly and expeditiously pay and satisfy all of its obligations to pay others in connection with the Subcontractor's Work and provide complete and full information and substantiation regarding all obligations incurred and payments made by the Subcontractor in connection with the Subcontractor's Work which Subcontractor shall make available to Wonder Works  if required or requested and provide such documentation as required by the Contract Documents for Subcontractor's Work.

4.7    Final payment to the Subcontractor shall be made subject to the following requirements which, in addition to the provisions in the General Conditions, are an express condition precedent to final payment: (1) completion and acceptance of the Subcontractor's Work by Wonder Works and Owner; (2) the Subcontractor provides evidence satisfactory to Wonder Works  that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred for or in connection with the Work; (3) execution and delivery by the Subcontractor, in a form satisfactory to Wonder Works  and Owner, of a Final Lien Waiver and General Release running to and in favor of Wonder Works  and Owner; (4) submission of required documentation including but not limited to all required sign-offs, As-Builts, Guarantees, maintenance manuals, punch list completion (5) final payment to Wonder Works  by the Owner. Should there be any claims, obligations or liens related to Subcontractor's Work after final payment is made to Subcontractor, the Subcontractor shall be under a continuing duty to compensate and indemnify Wonder Works  and Owner from all such expenses, costs, damages, or harm incurred by, or resulting from, any such claim, obligation or lien including legal fees and disbursements.

4.8     If any claim, demand, restraint or lien is made or filed or if there is evidence that same may be made or filed against Wonder Works, the Owner, the Project or the Site stating, alleging, or implying that the Subcontractor, or any subcontractor of any tier, has failed to make payments in connection with the Subcontractor's Work or if the Subcontractor or any sub-subcontractor of any tier damages any other work on the Project, or if the Subcontractor fails to perform any of its obligations under the Contract Documents, Wonder Works may, in its sole discretion, withhold payments as it deems necessary and may proceed to (1) satisfy, discharge and/or defend against any related claims, liens, judgments, or actions, (2) make good any such nonpayment, damage, failure or default, and (3) require Subcontractor to compensate Wonder Works and the Owner for and indemnify them against any and all losses, liability, damages, costs and expenses, including legal fees and disbursements, which may be sustained or incurred.  Wonder Works, shall have the right to charge all of the foregoing against the amount retained and if the amount is insufficient, the Subcontractor shall be liable for the difference and pay the same to Wonder Works.

4.9     No payment, final or otherwise, made in connection with this Agreement shall be conclusive evidence of the performance of the Subcontractor's Work or of this Agreement, in whole or in part.  No payment shall be construed to be an acceptance of defective, faulty or improper work or materials nor shall it release the Subcontractor from any of its obligations under this Agreement; nor shall entrance and use of the site by the Owner constitute acceptance of the Subcontractor's Work or any part thereof.

4.10    Any claims for time extension and/or increase in cost shall be made within seven (7) days of the basis for the claim.   The approval thereof shall be subject to Wonder Works obtaining such extension/increase from Owner, which shall be the subject of a Change Order, if approved.  Claims not made within this time period shall be deemed irrevocably waived.  Any Change Orders permitted shall be implemented and/or priced in accordance with the General Conditions. SUBCONTRACTOR IS ADVISED THAT THE CONTRACT BETWEEN OWNER AND Wonder Works SUBSTANTIALLY LIMITS THE ABILITY TO OBTAIN TIME EXTENSIONS AND/OR COST INCREASES.

4.11    In the event that a dispute arises in connection with payments to be made pursuant to this Agreement including any additional work ordered by Change Order or otherwise, the Subcontractor shall continue its Work during the pendency of such dispute as if no such dispute has arisen and shall maintain the Project Schedule. During the pendency of any dispute, Subcontractor shall be entitled to receive payments on account of non-disputed items and payments on account of disputed items shall be deferred until the final resolution of the dispute.

## ARTICLE V.  DELAYS AND DISRUPTIONS

5.1     Should the Subcontractor be delayed, disrupted, obstructed, hindered or interfered with in the commencement, prosecution or completion of the Subcontractor's Work for any reason (including without limitation, the acts, omissions, negligence or default of Wonder Works, another contractor or subcontractor, the Architect, the Owner or Owner's representatives under the Owner's Contract) or by any fires or other casualties not caused by any act or omission of Subcontractor or any of its sub-subcontractors, adverse weather conditions, strikes or other labor actions, governmental directives or orders, extraordinary conditions due to war or government actions, or any other cause outside of the control and responsibility of the Subcontractor, then the Subcontractor shall be entitled to an extension of time as is obtained by Wonder Works  from the Owner, and an extension of time only, and in no event shall Subcontractor be entitled to damages; provided, however, that the Subcontractor shall not be entitled

to any such extension unless the Subcontractor: (1) notifies Wonder Works in writing of the cause or causes of such delay, obstruction, disruption, hindrance or interference within forty-eight (48) hours of the commencement thereof and provides sufficient information to enable Wonder Works to request a time extension from Owner pursuant to the Contract Documents; (2) demonstrates that it could not have anticipated or avoided such delay, obstruction, hindrance or interference; and (3) has used all available means to minimize the consequences thereof.

5.2    In the event that, despite the preceding paragraph, the law permits the Subcontractor to be compensated for any such delays, obstructions, disruptions, interferences or hindrances, the Subcontractor agrees that, if and to the extent enforceable, it shall not be entitled to nor claim any form of compensation or damages for any such delay, obstruction, disruption, hindrance or interference to the Subcontractor's Work except and expressly limited to the extent that Wonder Works actually receives (the receipt of which is an express condition precedent) compensation or damages from the Owner on behalf of Subcontractor for the identical delay, obstruction, disruption, hindrance or interference.

5.3    No Change Orders or claims shall be recognized in this Subcontract for any damages occasioned by delays, obstructions, disruptions, interferences or hindrances in completion of the Project, including but not limited to requests for equitable adjustment, loss of productivity, Eichleay formula costs, extended overhead, loss of profit, direct, indirect or consequential damages or any other equitable adjustment theories.

## ARTICLE VI. DIMENSIONS AND SHOP DRAWINGS

6.1    Notwithstanding the dimensions of the Plans, Specifications and other Contract Documents, it shall be the obligation and responsibility of the Subcontractor to take such measurements and coordinate with other subcontractors so as to insure the proper matching and fitting of the Subcontractor's Work covered by this Agreement with contiguous work.

6.2    The Subcontractor shall prepare and submit to Wonder Works such complete, accurate, coordinated and detailed shop drawings as may be necessary to describe completely the Subcontractor's Work for review, approval or other appropriate action by Architect. Review, approval of or other action taken with respect to such shop drawings by Wonder Works and/or the Architect shall not relieve the Subcontractor of its obligation to perform and complete the Subcontractor's Work in strict accordance with the Contract Documents, nor of its responsibility for the proper matching and fitting of the Subcontractor's Work with contiguous work and the coordination of the Subcontractor's Work with other work being performed.

## ARTICLE VII. PLANS AND SPECIFICATIONS

7.1    The Subcontractor's Work is to be performed and furnished under the direction and to the satisfaction of the Architect, Owner and Wonder Works. Decisions concerning the Contract Documents shall be made as provided therein, provided, however, decisions concerning this Agreement shall be made by Wonder Works. Wonder Works will furnish to the Subcontractor such additional information and Plans as may be prepared by the Architect and the Subcontractor shall conform to and abide by the same.

7 .

7.2    The Subcontractor shall not make any changes, additions and/or omissions in the Subcontractor's Work except upon written order of Wonder Works as provided in Article VIII below.

## ARTICLE VIII.  CHANGES, ADDITIONS AND DELETIONS

8.1    Wonder Works reserves the right to make changes, additions and/or deletions in the Subcontractor's Work as it may deem necessary, upon written order to the Subcontractor.  The value of the Subcontractor's Work to be changed, added or omitted shall be stated in said written order and shall be added to or deducted from the Price.  All Change Orders shall be marked up for profit and overhead at a cumulative percentage of EIGHT (8%) percent maximum. Premium time shall be performed at no mark-up.

8.2    The value of the Subcontractor's Work to be changed, added and/or deleted shall be determined by Wonder Works as either lump sum, time and material or unit prices, if any, as Wonder Works may decide. If Wonder Works  so requests, Subcontractor shall provide detailed estimates of cost and evidence of sums actually expended or saved by or as a result of such changed, added and/or deleted Subcontractor's Work. The Subcontractor shall comply with the provisions of the Contract Documents in order that Wonder Works makes timely submissions pertaining to changes, additions and deletions related to Subcontractor's Work. Should Wonder Works and the Subcontractor disagree as to the value of such Subcontractor's Work or should Wonder Works require that such Subcontractor's Work proceed before agreement on the Price, the Subcontractor shall proceed with the Subcontractor's Work promptly after receipt of the written order by Wonder Works and the value of such Subcontractor's Work shall be determined in accordance with the provisions established by the Owner in the accordance with the Contract Documents or by agreement of the parties

8.3    In the case of omitted or deleted work, Wonder Works shall have the right to withhold from payments due or to become due to the Subcontractor an amount which, in Wonder Work's opinion, is equal to the value of such Subcontractor's Work, together with the percentage of overhead and profit on such Subcontractor's Work, until such time as the value thereof is determined in accordance with the Contract Documents.

8.4    All changes, additions or deletions in the Subcontractor's Work ordered in writing by Wonder Works are a part of the Subcontractor's Work and shall be performed and furnished in strict accordance with the Contract Documents.

8.5    Any field claims by the Subcontractor for time and material must be countersigned by the Wonder Works Project Superintendent for the purpose of verification of the work performed and submitted within three (3) days of performance of the work. The Superintendent's signature shall not be an acknowledgment that the Subcontractor is entitled to compensation for such field claim.  Subcontractor shall not be entitled to payment for such claim if it is determined that such time and material is included in the Subcontract. Such determination shall be made by the Wonder Works Project Manager.

## ARTICLE IX.  INSPECTION AND DEFECTIVE WORK

9.1    The Subcontractor shall at all times provide for the sufficient, safe and proper inspection of the Subcontractor's Work in the field or any other place where materials or equipment for the Subcontractor's

Work may be, whether or not fully manufactured. The Subcontractor, at its own cost and expense, shall remove and properly replace all materials which the Architect, Owner or Wonder Works determines is in any way failing to conform with the requirements of the Contract Documents within twenty-four (24) hours after receiving written notice from Wonder Works. The Subcontractor, at its own cost and expense, shall replace and make good all Subcontractor's Work or any other work at the Project condemned or damaged or destroyed as a result of such removal or replacement thereof. The Subcontractor shall be liable for any damages incurred by reason of its failure to comply with such requirements.

## ARTICLE X. BREACH, FAILURE TO PROSECUTE, AND TERMINATION

10.1     Should the Subcontractor fail in any respect to prosecute the Subcontractor's Work with promptness and diligence, cause delay, disruption, hindrance or interference with or damage to the Subcontractor's Work or any other work on the Project, or fail to perform any of the terms and provisions of the Contract Documents; or should the Architect or Owner determine that the Subcontractor's Work or any portion thereof is not being performed in accordance with the Contract Documents; or should the Subcontractor petition for or be adjudicated a bankrupt, or go into liquidation or seek dissolution of any form, or make a general assignment for the benefit of creditors, or in any other way acknowledge insolvency; or fail to pay for labor, material or supplies, then the Subcontractor shall be in default under this Agreement and Wonder Works shall have the right, in addition to any other rights and remedies provided by the Contract Documents or by law, after three (3) days written notice to the Subcontractor mailed or delivered to the last known address, or by telephonically or telefax transmitted copy to the last known number: (a) to perform or furnish any such labor and materials for the Subcontractor's Work and to deduct the cost thereof from any monies due or to become due to the Subcontractor; and/or (b) to terminate the employment of the Subcontractor for all or any portion of the Subcontractor's Work and take possession of all materials to be incorporated into the project, rented, equipment, scaffolds, tools, appliances and other items of Subcontractor (which the Subcontractor hereby transfers, assigns, and sets over to Wonder Works , for such purpose) and employ any person or persons to provide all the labor, services, materials, equipment and other items required for the purpose of completing the Subcontractor's Work. If the Subcontractor's employment is terminated in accordance with this Subcontract Agreement, it shall not be entitled to receive any further payment under this Agreement until the Subcontractor's Work is wholly completed to the satisfaction of Wonder Works, Owner and the Architect. If the unpaid balance of the amount to be paid under this Agreement exceeds the cost and expense incurred by Wonder Works in completing the Subcontractor's Work, this excess shall be paid to the Subcontractor; but if the cost and expense of completing the Subcontractor's Work exceeds the balance unpaid, then the Subcontractor shall pay the difference to Wonder Works. Such cost and expense shall include not only the cost of completing the Subcontractor's Work but also Subcontractor's liability shall extend to warranty and re-work costs, Wonder Works 's liability, if any, to third parties, all losses, damages, including liquidated damages, if any, payable by Wonder Works pursuant to the Owner's Contract, and such other costs and expenses, including legal fees and disbursements, resulting from the Subcontractor's default, or incurred by Wonder Works in any proceeding against Subcontractor or its sureties to enforce any of Wonder Work's right as provided herein.

## ARTICLE XI. DAMAGE TO WORK

11.1    Regardless of cause, Wonder Works shall not be responsible for any loss or damage to the Subcontractor's Work until after final acceptance thereof by Wonder Works, Owner and the Architect. Wonder Works shall not be responsible for loss or damage of materials, tools, equipment, appliances or other personal property owned, rented, or used by the Subcontractor or anyone employed by the Subcontractor in the performance of the Subcontractor's Work.

## ARTICLE XII.  SITE MAINTENANCE

12.1    The Subcontractor shall, at its own cost and expense:  (1) keep the Site free at all times from all waste, packaging materials and rubbish and shall collect and deposit these materials and rubbish in the locations or containers designated by Wonder Works ; (2) clean and remove from the Premises affected by Subcontractor's Work and contiguous work any soiling, staining, mortar, plaster, concrete or dirt and make good all defects resulting there from; (3) at the completion of Subcontractor's Work perform such cleaning as may be required to leave the area "broom clean"; and (4) at the entire completion of Subcontractor's Work, remove all of its tools, equipment, scaffolds, shanties, and surplus materials.    Should the Subcontractor fail to perform any of the foregoing to Wonder Work's satisfaction, Wonder Works shall have the right to perform and complete such Subcontractor's Work and charges the cost to the Subcontractor.

## ARTICLE XIII.  PERMITS, VIOLATIONS AND LICENSES

13.1    The Subcontractor hereby represents that it and its subcontractors which may require licenses in the performance of their duties are duly licensed to the fullest extent necessary under applicable law to perform its obligations under the Contract Documents.

13.2    The Subcontractor shall obtain and pay for all necessary permits and licenses, except the Building Permit which shall not be the Subcontractor's responsibilities needed in connection with the Subcontractor's Work and shall comply with the Contract Documents and all applicable Federal, State, Municipal and local laws without additional charge or expense to Wonder Works. The Subcontractor shall also be responsible for correcting, at its own cost and expense, any violations thereof resulting from or in connection with the performance of the Subcontractor's Work including any associated fines and penalties. The Subcontractor shall upon demand furnish such proof as Wonder Works may require showing such compliance with applicable law and the correction of violations of applicable law.  The Subcontractor agrees to hold harmless and indemnify Wonder Works and all Indemnitees from and against any and all losses, injuries, fines, penalties, costs and expenses, including legal fees and disbursements, caused directly or indirectly by the Subcontractor's failure to comply with the Contract Documents and any applicable laws or from any failure to correct such violations.

## ARTICLE XIV.  WORK FORCE

14.1    The Subcontractor shall not employ workers, means, materials or equipment or take any action which may cause strikes, work stoppages, or any other disturbances to the Subcontractor's Work or the Project or the Premises.  The Subcontractor agrees that all disputes as to jurisdiction of trades shall be adjusted and resolved in accordance with any plan for the settlement of jurisdictional disputes which may be in effect in the locality in which the Subcontractor's Work is being done. Should the Subcontractor fail to carry out or comply with any of the foregoing provisions, Wonder Works, upon three (3) days written

notice to the Subcontractor, may terminate this Agreement or any part thereof or the employment of the Subcontractor for all or any portion of the Subcontractor's Work, and may complete the Subcontractor's Work upon the same terms and conditions as set forth in Article X of this Agreement.

14.2    The Subcontractor assumes sole liability for payment of any union benefits payable to employees of the Subcontractor and those of any of its sub-subcontractors, suppliers or other third parties retained by the Subcontractor under or in connection with this Agreement. The Subcontractor agrees to indemnify and hold harmless Wonder Works and the Indemnitees from all claims and liability for payment of these benefits. The Subcontractor shall promptly furnish proof of payment, if required by Wonder Works.

## ARTICLE XV.  PATENT INFRINGEMENT

15.1    The Subcontractor hereby agrees to indemnify, protect and hold harmless Wonder Works and the Indemnities from and against any and all cost and liability, loss or damage and to reimburse Wonder Works and the Owner for any expenses, including legal fees and disbursements, which Wonder Works and the Indemnitees incur because of claimed infringement or litigation on account of infringement or alleged infringement of any letters patent or patent rights by reason of the Subcontractor's Work or materials, equipment or other items used by the Subcontractor in its performance.

## ARTICLE XVI.  LIENS OR CLAIMS

16.1    If any person or entity files or maintains any form of a lien or claim, whether a mechanics' lien or otherwise against the Project, or the Premises, or any part thereof in connection with the Subcontractor's Work, the Subcontractor agrees to cause such liens and claims to be satisfied, removed, or discharged at its own expense by bond, payment, or otherwise within ten (10) days from the date of the filing.  If the Subcontractor fails to do so, Wonder Works shall have the right, in addition to any other rights under the Contract Documents, or law, to cause such liens or claims to be satisfied, removed or discharged by whatever means Wonder Works chooses, at the entire cost and expense of the Subcontractor including legal fees and disbursements. The Subcontractor agrees to indemnify, protect and hold harmless Wonder Works and the Indemnitees from and against any and all such liens and claims and from and against any and all loss, damages, liability, costs, and expenses, including legal fees and disbursements, which Wonder Works and/or the Indemnitees may sustain or incur.

## XVII. ASSIGNMENT AND SUBCONTRACTING

17.1    To the fullest extent permitted by law, neither this Agreement, nor any monies due or to become due hereunder shall be assignable or sublet without the prior written consent of Wonder Works and Owner. Wonder Work's and Owner's consent to any assignment or subletting shall not relieve the Subcontractor of any of its agreements, duties, responsibilities or obligations under the Contract Documents, and the Subcontractor shall be and remain as fully responsible and liable for the defaults, negligence, acts and omissions of its assignees and subcontractors and all persons directly or indirectly employed by them as it is for its own defaults, neglects, acts and omissions.

17.2    The Subcontractor shall bind each of its sub-subcontractors to all of the terms and provisions of the Contract Documents with respect to any sub-subcontracted Subcontractor's Work.  Consent to any subcontracting shall not be deemed to create any contractual relationship between Wonder Works and any

sub-subcontractor to whom the Subcontractor's Work or any portion thereof is contracted and shall not vest any right or right of action in such sub-subcontractor against Wonder Works or Owner.

## ARTICLE XVIII.  TERMINATION FOR CONVENIENCE

18.1    Wonder Works shall have the right at any time by written notice to the Subcontractor to terminate this Agreement and require the Subcontractor to cease all or any portion of the Subcontractor's Work. Subcontractor shall not be entitled to or receive anticipated profits on work unperformed or on materials or equipment unfurnished, nor shall Subcontractor be entitled to any cancellation fee or percentage of the balance of the Price.  In the event of termination under this paragraph, the Subcontractor shall have the right, as its sole and exclusive remedy, to recover from Wonder Works payments for all Subcontractor's Work completed, less payments already made to the Subcontractor on account thereof, subject to any other rights provided to Wonder Works under this Agreement.  All warranties shall survive the termination of this Agreement.

## ARTICLE XIX.  GUARANTEES AND WARRANTIES

19.1    The Subcontractor hereby guarantees the Subcontractor's Work to the full extent provided by the Contract Documents and shall submit reasonable documentation of such guarantees and warranties as required by Wonder Works and Owner prior to final payment.

19.2    The Subcontractor shall remove, replace or repair, as required, at its own expense and at the convenience of the Owner, any faulty, defective or improper work, materials, or equipment discovered within one (1) year from the date the Architect and the Owner accept the Project as a whole, or such longer period as may be required by the Contract Documents.

19.3    Without being limited by the foregoing, the Subcontractor shall pay for all damage resulting from defects in the Subcontractor's Work, and all costs and expenses associated with the correction, replacement, removal and/or repair of the Subcontractor's Work and any other work or property which may have been damaged by the defect.

## ARTICLE XX.  SAFETY

20.1    The Subcontractor agrees that the prevention of accidents to workmen engaged upon or in the vicinity of the Subcontractor's Work is its responsibility.  The Subcontractor agrees to comply with all legal and industry safety laws and standards and to maintain a safety program in accordance with such requirements, as well as with such safety standards or safety programs as Wonder Works may require. Upon request, Subcontractor shall furnish a copy of such safety program to Wonder Works.  The Subcontractor agrees that it shall make no claim for damage caused by delays or stoppages caused by compliance with Wonder Work's safety plan requirements.  Wonder Works may remedy any failure of Subcontractor under this Article XX at the cost and expense of the Subcontractor, which may be deducted from any payment due or to become due to the Subcontractor. Failure of Wonder Works to do so shall not relieve the Subcontractor of its sole responsibility to prevent accidents in the work place.

20.2    The Subcontractor shall immediately report any accidents occurring on the Project to Wonder Works and shall submit any accident reports, photographs or other documentation as required by Wonder Works concerning such accident.

## ARTICLE XXI. INDEMNITY

21.1    To the fullest extent permitted by law, the Subcontractor agrees to indemnify, defend and hold harmless Wonder Works , Owner, the Site Logistics Subcontractor (to the extent the Subcontractor or its sub subcontractor utilize such hoist, scaffolding or bridging equipment) and Indemnitees, their officers, members, directors, agents employees and partners, from any and all losses, claims, suits, damages, liabilities, attorney fees and costs (whether for defense of any underlying claim, in the enforcement of this Agreement, in the prosecution of any claims for indemnification or in the pursuit of any claim for insurance coverage required by this Agreement) and the deductible amount of any insurance coverage, arising out of or in connection with or as a consequence of the performance of the Work of the Subcontractor pursuant to this Agreement, including any additional work performed by Subcontractor as required by this Agreement by Change Order or otherwise, provided that any such loss, claim, suit damage or liability (i) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Subcontractor's Work itself) including loss of use there from, or (ii) arises by reason of the Subcontractor's and/or its sub-subcontractors failure to comply with any laws, rules, regulations, orders, codes, ordinances, statutes or other requirements of governmental authorities having jurisdiction over the Project or (iii) is caused in whole or in part by any act or omission of Subcontractor, sub-subcontractors or anyone for whose acts the Subcontractor or its sub-subcontractors may be liable or (iv) is caused by any failure of Subcontractor to fulfill its obligations under the Contract Documents, except to the extent it is caused by a party indemnified.  Where partial indemnity is required pursuant to this Agreement, the aforesaid attorney fees and costs be indemnified on the same proportional basis.

21.2    Wonder Works, at its discretion, may withhold payment and may require the Subcontractor to furnish a surety bond satisfactory to Wonder Works guaranteeing the protection granted by this Agreement as to the obligation to indemnify and defend, which bond shall be furnished by the Subcontractor within five (5) days after written demand has been made therefore.

21.3    In claims against any person or entity indemnified under this Article 21 by an employee of Wonder Works , a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this Article shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for Wonder Works or a Subcontractor under workers compensation acts, disability benefit acts or other employee benefit acts.

21.4    The obligations of the Subcontractor under Article XXI shall not extend to the liability of the Architect, the Architect's consultants, and agents and employees of any of them arising out of (1) the preparation, review or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving of or the failure to give directions or instructions by the Architect, the Architect's consultants, and agents and employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

## ARTICLE XXII. INSURANCE

13

22.1     Before commencing the Subcontractor's Work, the Subcontractor shall procure and maintain, at its own expense, insurance as provided in Exhibit ?. Subcontractor shall provide Subcontractor's protective liability insurance if the Subcontractor subcontracts to another all or any portion of the Subcontractor's Work. In addition, to the extent that the Subcontractor's Work requires design-build, engineering or other professional services, Subcontractor shall provide to Wonder Works for the benefit of Wonder Works, Owner and Indemnitees Professional Liability insurance in the amount specified in the Insurance Requirements, but not less than $2,000,000 per occurrence.

22.2     Before commencing the Subcontractor's Work, the Subcontractor shall furnish a certificate, satisfactory to Wonder Works  from each insurer showing that the above insurance is in force, stating policy numbers, dates of expiration, and limits of liability there under, and further providing that the insurance will not be canceled or changed until the expiration of at least thirty (30) days after written notice of such cancellation or change has been mailed to others and received by Wonder Works . Wonder Works , the Site Logistics Subcontractor (to the extent the Subcontractor or its sub subcontractor utilize such hoist, scaffolding or bridging equipment) and Indemnitees shall be named as additional insured on a primary basis under these policies of insurance and proof thereof shall be furnished to Wonder Works , the Site Logistics Subcontractor and Indemnitees as required by the Contract Documents.

22.3     If the Subcontractor fails to procure and maintain such insurance, Wonder Works  shall have the right, but not the obligation, to procure and maintain the said insurance for and in the name of the Subcontractor, and the Subcontractor shall pay the cost thereof and shall furnish all necessary information to make effective and maintain such insurance.

## ARTICLE XXIII.  SUBCONTRACTOR'S ADDITIONAL OBLIGATIONS

23.1     The Subcontractor shall furnish all of the labor, materials, equipment, and services, including, but not limited to, competent supervision, shop drawings, samples, tools, and scaffolding as are necessary for the proper performance of the Subcontractor's Work in accordance with and reasonably inferable from the Contract Documents.  The Subcontractor shall provide to Wonder Works a list of its proposed sub-subcontractors and suppliers for review and approval. The Subcontractor shall be responsible for taking field dimensions, providing tests, ordering of materials and all other actions as required to perform the Subcontractor's Work and to comply with the Schedule of work annexed to this Agreement

23.2     The Subcontractor shall (a) cooperate with Wonder Works  and all others whose work may interfere with the Subcontractor's Work; (b) specifically note and immediately advise Wonder Works  of any interference with the Subcontractor's Work; (c) participate in the preparation of coordination drawings and work schedules involving the Subcontractor's Work; and  (d)  coordinate and schedule all material, equipment and supplies delivered to the Site with on-site personnel for the monitoring of such deliveries. Failure to properly coordinate such deliveries with Wonder Works may result in cancellation of deliveries or overtime costs which shall be borne by Subcontractor.

23.3     The Subcontractor shall designate one or more persons who shall be the authorized Subcontractor's representative(s) on-site and off-site.

23.4     Unless otherwise provided in the Contract Documents, Subcontractor communications by and with the Owner should be through Wonder Works. The Subcontractor's communications with the Architect,

separate contractors and/or other subcontractors and suppliers of Wonder Works, regardless of tier, shall be copied to Wonder Works.

23.5   Every part of the Subcontractor's Work shall be executed in accordance with the Contract Documents in a workmanlike and substantial manner. All materials used in the Subcontractor's Work shall be furnished in sufficient quantities to facilitate the proper and expeditious execution of the Subcontractor's Work, and shall be new except such materials as may be expressly provided in the Contract Documents to be otherwise.

23.6   In the event the scope of the Subcontractor's Work includes installation of materials or equipment furnished by others, it shall be the responsibility of the Subcontractor to receive, check, count, sign for, unload, distribute, store, handle and install the items so provided, unless otherwise provided in the Contract Documents, with such skill and care as to ensure a satisfactory and proper installation in accordance with the Contract Documents. Loss or damage due to acts of the Subcontractor shall be deducted from any amounts due or to become due the Subcontractor under this Agreement.

23.7   No substitutions shall be made in the Subcontractor's Work unless permitted in the Contract Documents and only then upon the Subcontractor first receiving all approvals required under the Contract Documents for substitutions.

23.8   Should the Subcontractor encounter asbestos, polychlorinated biphenyl (PCB) or other hazardous substances at the site which potentially are harmful to persons or property, then the Subcontractor shall take all steps required by the Contract Documents and by law to protect persons and property from injury or damage, including stopping the Subcontractor's Work in the affected areas and promptly advising Wonder Works in writing of the conditions encountered at the site. Should the Subcontractor be required to stop work in any area of the Project as a result of hazardous substances located at the site, then the Subcontractor shall not resume its Subcontractor's Work in the affected area until (a) the hazardous substances have been removed or made harmless, (b) Wonder Works and Subcontractor agree in writing to commence work in all or a portion of the area, or (c) the Owner orders the work to proceed in the affected area and the parties agree.

23.9   Subcontractor shall not provide, use or install any materials which are considered to be hazardous substances. Material Safety Data (MSD) sheets as required by law and pertaining to materials or substances used or consumed in the performance of the Subcontractor's Work shall be submitted to the Wonder Works by the Subcontractor. MSD sheets obtained by Wonder Works from other Subcontractors or other sources shall be made available to the Subcontractor by Wonder Works.

23.10   Subcontractor shall not take or fail to take any action that would interfere with the use, operation and enjoyment of adjoining property or any rights appurtenant thereto. With respect to any Subcontractor's Work to be performed at such landowner's property, specific schedules for such Subcontractor's Work shall be agreed upon among Subcontractor, Wonder Works, Owner and the particular landowner.

23.11   In the event that Wonder Works shall be terminated by Owner, the Subcontractor shall continue performance under this Agreement in accordance with the terms hereof for the benefit of Owner and Owner's Lender, if any. Owner and Owner's Lender, if any, shall be deemed to be third party beneficiaries of this provision.

23.12    Subcontractor and its sub-subcontractors and their agents and employees, agree that they will not, without the express written consent of the Site Logistics Subcontractor (i) use the hoist, scaffolding or bridging equipment provided by the Site Logistics Subcontractor for any purpose not intended or in any manner for which it was not intended; (ii) alter or modify the hoist, scaffolding or bridging equipment provided by the Site Logistics Subcontractor (iii) alter, remove, adjust or in any way change the equipment provided by the Site Logistics Subcontractor; (iv) use or operate the equipment provided by the Site Logistics Subcontractor in an unsafe manner or in violation of any governmental codes, rules or regulations.

23.13    Subcontractor, in consideration of the granting by Contractor of the use by Subcontractor of the hoist, scaffolding or bridging equipment provided by the Site Logistics Subcontractor for Contractor, hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting there from) to all persons, whether your employees or employees of others employed at the site or otherwise, and to all property caused by, resulting from, arising out of, or occurring in connection with the use of or operation of said scaffolding while in your use or under your control or resulting from the condition of the said scaffolding, and should any claims for such damage or injury (including death resulting there from) be made or asserted, whether or not such claims are based upon Contractor=s alleged active or passive negligence or participation in the wrong or upon any breach of any statutory duty or obligation on the part of Contractor, we agree to indemnify and save harmless Contractor and the Site Logistics Contractor, their officers, agents, servants or employees from and against any and all such claims, and further from and against any and all loss, cost, expense, liability, damage or injury including legal fees and disbursements, that Contractor or the Site Logistics Contractor, their officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof and we agree to and do hereby assume, on behalf of Contractor and the Site Logistics Contractor, their officers, agents, servants and employees, the defense of any action at law or in equity which may be brought against Contractor or the Site Logistics Contractor, their officers, agents, servants and employees upon or by reason of such claims and to pay on behalf of Contractor or the Site Logistics Contractor, their officers, agents, servants and employees, upon demand, the amount of any judgment that may be entered against them or their officers, agents, servants or employees in any such action.

23.14    Subcontractor shall notify in writing Contractor and the Site Logistics Contractor at the address stated above of any and all incidents, accidents, complaints damage to property or other occurrence that could reasonably give rise to a claim or suit of any kind.

24.15    Subcontractor shall name the Site Logistics Contractor as an additional insured on all insurance that Subcontractor is required to maintain pursuant to the Subcontract and shall furnish evidence thereof the Contractor.

## ARTICLE XXIV.  SEVERABILITY

24.1    In the event that any provision or any part of a provision of this Agreement shall be finally determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable law, such determination shall not impair or otherwise affect the validity, legality, or enforceability of the remaining provisions of this Agreement.

## ARTICLE XXV. ENTIRE AGREEMENT

25.1    This Agreement constitutes the entire agreement between the parties.  No oral representations or other agreements have been made by Wonder Works except as stated in this Agreement.  This Agreement may not be changed in any way except as herein provided, and no term or provision hereof may be waived by Wonder Works except in writing.

## ARTICLE XXVI. APPLICABLE LAW

26.1    This Agreement shall be governed by, and construed under, the laws of the State in which the Project is located.

## ARTICLE XXVII. BONDS

Intentionally omitted

## ARTICLE XXVIII. COMPLIANCE WITH LENDER'S REQUIREMENTS

28.1    Subcontractor agrees to execute such documentation as is reasonably required by the Owner's Lender.

IN WITNESS WHEREOF the parties to these presents have hereunto set their hands as of the day and year first above written.

**WONDER WORKS CONSTRUCTION CORP.:**

By: Joseph Klaynberg
Title: President
Date:

**SUBCONTRACTOR:**

By: Rinat Yaborisov
Title: VicePresident
Date:

Subcontractor's State Unemployment Insurance No.
(Insert State and Register No. for State in which the Work is to be performed)

Subcontractor's License No. _1034880/83_

17

Insert License No., if any, for State or locality in which the Work is to be performed)

Subcontractor's _ State Sales Tax ————————————————————

(Job Location)

Registration No.————————————————————

*Exibit „ A"*

**QUENTIN TERRACE**
SCHEDULE OF VALUES

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | EXIBIT "A" | |
| 2 | | QUENTIN TERRACE (1671 WEST 10TH STREET/99-105 QUENTIN ROAD) | | | | | |
| 3 | | | | | | | |
| 4 | | | Schedule of Values | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | 01001 | General Condition | $220,000.00 | | | | |
| 9 | | a. Laborers | | | | | |
| 10 | | b. Field Office | | | | | |
| 11 | | c. Temporary Utilities | | | | | |
| 12 | | d. Rubbish Removal | | | | | |
| 13 | | e. Small Tools and Supply | | | | | |
| 14 | | f. Safety and Protective Equipment | | | | | |
| 15 | | g. Scaffolding | | | | | |
| 16 | | h. Temporary Barricades/Protection | | | | | |
| 17 | | i. Fencing/Sidewalk Bridge | | | | | |
| 18 | | j. Equipment Rental | | | | | |
| 19 | | k. Final Clean-up | | | | | |
| 20 | | l. Unloading and installation of sleeves and HVAC units | | | | | |
| 21 | | m. Installation of items supplied by Owner | | | | | |
| 22 | 02050 | Demolition | $53,000.00 | | | | |
| 23 | | | | | | | |
| 24 | 02700 | Site Work | $20,000.00 | | | | |
| 25 | | a. New concrete sidewalk including new curb | | | | | |
| 26 | | b. Ramp and parking spaces | | | | | |
| 27 | | c. Walkway including outside stairs | | | | | |
| 28 | | d. Exterior Landscape | | | | | |
| 29 | | | | | | | |
| 30 | | | | | | | |
| 31 | 02200 | Earthwork / Excavation / Backfill | $175,000.00 | | | | |
| 32 | | a. General Earth | | | | | |
| 33 | | b. General Rock | | | | | |
| 34 | | c. Backfill as directed by Arch/Struct. engineer | | | | | |
| 35 | | d. Shoring sheeting bracing as required | | | | | |
| 36 | | e. Monitor "reading" on adjacent building | | | | | |
| 37 | | f. Pumping for duration of excavation only | | | | | |
| 38 | | g. Underpinning | | | | | |
| 39 | | h. All required excavation permits | | | | | |
| 40 | | | | | | | |
| 41 | 03300 | CONCRETE | $620,000.00 | | | | |
| 42 | | a. Spread and Column footing | | | | | |
| 43 | | b. Slab on grade | | | | | |
| 44 | | c. Mechanical trenches | | | | | |
| 45 | | d. Foundation walls | | | | | |
| 46 | | e. Stair walls | | | | | |
| 47 | | f. Retaining walls | | | | | |
| 48 | | g. Reinforcing rods | | | | | |
| 49 | | h. Concrete slabs | | | | | |
| 50 | | i. Concrete fill over metal decks | | | | | |
| 51 | | j. Stair landing and treads | | | | | |
| 52 | | k. Shop drawings | | | | | |
| 53 | | | | | | | |
| 54 | 04400 | Masonry/Precast Concrete/Exterior Stone | $497,000.00 | | | | |
| 55 | | a. CMU's | | | | | |
| 56 | | b. Exterior Bricks | | | | | |
| 57 | | c. Stucco | | | | | |
| 58 | | d. Precast Window Sills and Headers | | | | | |
| 59 | | e. Stone | | | | | |
| 60 | | f. Miscellaneous Patching | | | | | |
| 61 | | | | | | | |
| 62 | | | | | | | |

**QUENTIN TERRACE**
SCHEDULE OF VALUES

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 63 | 05120 | **Structural Steel** | | | | | |
| 64 | | a. Steel columns and t beams | | | | | |
| 65 | | b.Steel reinforcing and bracing | | | | | |
| 66 | | c. Metal decks (include deck stops) | $825,000.00 | | | | |
| 67 | | d.Loose lintels | | | | | |
| 68 | | | | | | | |
| 69 | 05500 | **Metal Fabrications** | | | | | |
| 70 | | a. Metal railing | | | | | |
| 71 | | b. Ladders to mechanical equipment | | | | | |
| 72 | | c. Wrought iron/balconies/railing/fences | | | | | |
| 73 | | d. Wrought iron entrances/gates | | | | | |
| 74 | | e.Dunnage for mechanical equipment | | | | | |
| 75 | | | | | | | |
| 76 | 06100 | **Rough Carpentry** | $177,000.00 | | | | |
| 77 | | a. Blocking for casework, millwork, plumbing, | | | | | |
| 78 | | fixture and accessories | | | | | |
| 79 | | b.Blocking back boards for electrical, mechanical, | | | | | |
| 80 | | panel and equipment | | | | | |
| 81 | | c. Roof blocking | | | | | |
| 82 | | d.Pressure treated wood decking | | | | | |
| 83 | | e.Pressure treated fences | | | | | |
| 84 | | d.C-joists and bracing | | | | | |
| 85 | | | | | | | |
| 86 | 06200 | **Drywall** | $549,000.00 | | | | |
| 87 | | a. Drywall Partitions | | | | | |
| 88 | | b.Sheetrock ceiling(soffits and fascias) | | | | | |
| 89 | | c.Access doors | | | | | |
| 90 | | d.Pipes enclosures | | | | | |
| 91 | | | | | | | |
| 92 | 06400 | **Architectural Millwork and Finish Carpentry** | $131,000.00 | | | | |
| 93 | | 1a. Kitchen cabinetry and vanities(labor and inst) | | | | | |
| 94 | | 1b. Kitchen cabinetry and vanities(const.allow) | | | | | |
| 95 | | 2a. Wood base (labor and install) | | | | | |
| 96 | | 2b. Wood base (supply cost allowance) | | | | | |
| 97 | | 3. Closet shelving and poles(labor+materials) | | | | | |
| 98 | | 4. Toilet wood trim and cap | | | | | |
| 99 | | | | | | | |
| 100 | 07250 | **Fireproofing** | $33,000.00 | | | | |
| 101 | | | | | | | |
| 102 | 07420 | **Thermal and moisture** | $15,000.00 | | | | |
| 103 | | | | | | | |
| 104 | 07350 | **Roofing and Waterproofing** | $67,000.00 | | | | |
| 105 | | | | | | | |
| 106 | 07900 | **Joint Sealers** | $12,000.00 | | | | |
| 107 | | | | | | | |
| 108 | 08819 | **Hollow metal doors and frames** | $8,000.00 | LABOR ONLY | | | |
| 109 | | a.Labor for installation | | | | | |
| 110 | | b.Cost allowance to supply | | | | | |
| 111 | | | | | | | |
| 112 | 08200 | **Wood doors** | $24,000.00 | LABOR ONLY | | | |
| 113 | | a. Labor for installation | | | | | |
| 114 | | b.Cost allowance for supply | | | | | |
| 115 | | | | | | | |
| 116 | 08700 | **Finish Door Hardware** | $22,000.00 | LABOR ONLY | | | |
| 117 | | a. Labor for installation | | | | | |
| 118 | | b.Cost allowance for supply | | | | | |
| 119 | | | | | | | |
| 120 | 08250 | **Windows and glazing** | NIC | INCLUDES | | | |
| 121 | | a. Entrance glazing | | COORDINATION | | | |
| 122 | | b.Windows with insulated glass as specified | | WITH ALL CITY GLASS | | | |
| 123 | | c. Glass doors at balconies | | AND SUPERVISION | | | |
| 124 | | d. Skylights | | | | | |
| 125 | | | | | | | |
| 126 | 09650 | **Tiles and Stones at walls and floors** | $145,000.00 | ALLOWANCE | $ 5.50 PER SQ.FT M-L | | |
| 127 | | a. Stone tiles (supply and install) | | | | | |
| 128 | | b. Stone saddles(supply and install) | | | | | |
| 129 | | c.Kitchen counter tops(supply and install) | | | | | |

QUENTIN TERRACE
SCHEDULE OF VALUES

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 130 | | | | | | | |
| 131 | 09700 | Floor (pre-engineered) | $140,000.00 | ALLOWNCE $3.50 PER SQ.FT FOR M-L | | | |
| 132 | | a. Labor to install | | | | | |
| 133 | | b.Cost allowance for supply | | | | | |
| 134 | | | | | | | |
| 135 | 09880 | Floor covering-carpet including carpet base | $8,000.00 | | | | |
| 136 | | | | | | | |
| 137 | 09690 | Resilient floors | included | | | | |
| 138 | | | | | | | |
| 139 | 09900 | Painting | $75,000.00 | | | | |
| 140 | | | | | | | |
| 141 | | | | | | | |
| 142 | 10550 | Postal accessories | $1,600.00 | | | | |
| 143 | | | | | | | |
| 144 | 10810 | Toilets accessories | $2,200.00 | LABOR ONLY | | | |
| 145 | | 1.Labor to install | | | | | |
| 146 | | 2. Toilet paper holder | | | | | |
| 147 | | 3.Towel bar | | | | | |
| 148 | | 4.Shower Curtain Road | | | | | |
| 149 | | | | | | | |
| 150 | 10820 | Mirrors | $10,000.00 | | | | |
| 151 | | a  Bathrooms | | | | | |
| 152 | | c. Elevator lobbies | | | | | |
| 153 | | | | | | | |
| 154 | | | | | | | |
| 155 | | | | | | | |
| 156 | 11450 | Residential Appliances | $3,200.00 | LABOR ONLY | | | |
| 157 | | a. Labor to unload and install | | | | | |
| 158 | | b.Refrigerator - cost | | | | | |
| 159 | | c. Cook Tops - cost | | | | | |
| 160 | | d. Dishwasher - cost | | | | | |
| 161 | | e. Microwaves - cost | | | | | |
| 162 | | f. Washer and dryer - cost | | | | | |
| 163 | | g. Ovens - cost | | | | | |
| 164 | | | | | | | |
| 165 | | | | | | | |
| 166 | 15300 | Sprinklers | NIC | INCLUDED | | | |
| 167 | | | | COORDINATION | | | |
| 168 | 15400 | Plumbing | NIC | AND SUPERVISION | | | |
| 169 | | a. Roughing, piping, installation | | OF WORK | | | |
| 170 | | b. Gas | | PERFORMED BY | | | |
| 171 | | c. Fixtures and faucets (cost allowance) | | STARLITE | | | |
| 172 | | e. Water, sewer, sprinkler mains | | PLUMBING | | | |
| 173 | | | | | | | |
| 174 | 15500 | HVAC | $200,000.00 | | | | |
| 175 | | a. Heating | | | | | |
| 176 | | b. Mechanical Ventilation | | | | | |
| 177 | | c. Air conditioning units ( supplied by others) | | ~C~~~ | | | |
| 178 | | | | | | | |
| 179 | 16000 | Electrical | $360,700.00 | | | | |
| 180 | | a. General electrical ( including exit/emergency light fixtures) | | | | | |
| 181 | | b.Light fixtures(supply cost allowance $ 25,000 included) | | | | | |
| 182 | | c.Fire and smoke alarm | | | | | |
| 183 | | d.Telephone and TV wiring and outlets | | | | | |
| 184 | | e.CCTV and intercom ( not included) | | | | | |
| 185 | | | | | | | |
| 186 | 14200 | Elevators | NIC | INCLUDES | | | |
| 187 | | | | COORDINATION | | | |
| 188 | | | | AND SUPERVISION | | | |
| 189 | 11000 | Specialties | $36,000.00 | | | | |
| 190 | | a. Motorized garage doors with controles | INCLUDED | | | | |
| 191 | | b. Chute and compactors | INCLUDED | | | | |
| 192 | | c.Signs and graphics | INCLUDED | 3,000.00 | ALLOWANCE | | |
| 193 | | d. Tenant Storage partitions | INCLUDED | 11,000.00 | ALLOWANCE | | |
| 194 | | | | | | | |
| 195 | | Subtotal | $4,429,700.00 | | | | |
| 196 | | | | | | | |
| 197 | | Overhead and Profit | $617,000.00 | | | | |
| 198 | | | | | | | |
| 199 | | Total | $5,046,700.00 | | | | |

2/19/2004SCHEDULE OF VALUES FORTHRIGHT CONSTRUCTION

Finish/Appliance/Fixture Schedule

QUENTIN TERRACE
Brooklyn, NY

## 1st. to 7th. Typical Apartment

| Room | Item | Material/Finish Type | Manufacturer | Style | Color | Notes/Price |
|---|---|---|---|---|---|---|
| Living Room (Typ) | Flooring | Wood/(re-engineered) | Wood/ Custom mf,zd | Prefinished 3-Ply Parquet | Stained Oak-prefinished | Wood species-oak/83.50/SF M-L matered cost |
| | Base | Wood | Custom mf,zd | mdf/pezint | trim color 8211W Sandy Lane | 1/2"x5-1/2"w/score/3.55 LI matered cost |
| | Walls | Paint | Benjamin Moore | Latex Flat | White Dove | |
| | Ceiling | Concrete Slab | Benjamin Moore | Latex Flat | White Dove | |
| | Doors/Frame | 1 3/4" Solid Core/HM 45-0"high | customipaint grade | custom 16" scoring | 8211W Sandy Lane | |
| Master Bedroom (Typ) | Flooring | Wood/(re-engineered) | Wood | Prefinished 3-Ply Parquet | Stained Oak-prefinished | Wood spcdes-oak/83.50/SF M-L COST |
| | Base | Wood | Custom mf,zd | mdf/pezint | trim color 8211W Sandy Lane | 1/2"x5-1/2"w/score/3.55 LI |
| | Ceiling | Stainode | Benjamin Moore | Latex flat | White Dove | |
| | Doors/Frame | 1 3/4" Solid Core/HM | custom/paint grade | custom 16" scoring | 8211W Sandy Lane | 8-0'/2"frame/ |
| Bedroom (Typ) | Flooring | Wood/(re-engineered) | Wood | Prefinished 3-Ply Parquet | Stained Oak-prefinished | Wood species-oak/83.50/SF M-L COST |
| | Base | Paint | Benjamin Moore | mdf/pezint | trim color 8211W Sandy Lane | 1/2"x5-1/2"w/score/3.55 LI |
| | Ceiling | Concrete Slab | Benjamin Moore | Latex flat | White Dove | |
| | Doors/Frame | 1 3/4" Solid Core/HM 45-0"high | customipaint grade | custom 16" scoring | 8211W Sandy Lane | 8'-0"/2"frame/ |
| | Closet Interiors | Wood/Veneer | | Birch or Maple | | 16" shelf w/dokbar and 1 1/4 chromo rod |
| Kitchen (Typ) | Flooring | Wood/(re-engineered) | Wood | Prefinished 3-Ply Parquet | Stained Oak-prefinished | Wood species-oak/83.50/SF M-L COST |
| | Base | Wood | Custom milled | mdf/pezint | trim color 8211W Sandy Lane | 1/2"x5-1/2"w/score/3.55 LI |
| | Walls | Paint | Benjamin Moore | Latex Eggshel | White Dove | |
| | Ceiling | Gyp.Bd | Benjamin Moore | Latex flat | White Dove | |
| | Doors/Frame | 1 3/4" Solid Core/HM 45-0"high | customipaint grade | custom 16" scoring | 8211W Sandy Lane | 8'-0"/2"frame/ |
| | Lighting | Pendant Fixtures | IKEA | Enfarm | Frosted Candelabra | 3x40W/T5F bow/650.00 each |
| | Millwork | Wood veneer | Cabinets custom | flush doors | dark mahogany | 82,000 Installed |
| | Counters | | slate custom | honed | black | 1 1/4" thick |
| | Appliances | Dishwasher | GE | GLD4108J0CSS | Stainless/Stess | Triton BuiltIn $300.00 each |
| | | Refrigerator | GE | PTG22SBM | Stainless Steel | Trimless non Disposer $1,200.00each |
| | | Microwave | GE | JVM1850SN8 | Stainless Steel | Microwave Oven w/Sensor/$250.00 each |
| | | Gas stove | GE | TBD | Stainless Steel | Allowance $500.00 |
| | Kitchen Sink | | Steel Numered | US 1025/10 U/E | Stainless Steel/St. Steel | Undermount sink $104.00each |
| | | Faucet | Delta | 172VW | | Single Loop HD/H5*47.80 each |
| | | Food Waste Disposer | GE | GFC1020F | Stainless Steel | $135.00 each |
| Master Bathroom (Typ) | Flooring | Marble | | 12"x12" tiles/honed | Haltsa w/finished edges | |
| | Walls | Marble | | 6"x12" | full height @ shower / Alf wainscot w/painted wood cap on top of the wainscot | |
| | Ceiling | Gyp.Bd | Benjamin Moore | Latex flat | White Dove | |
| | Doors/Frame | 1 3/4" Solid Core/HM 45-0"high | customipaint grade | custom 16" scoring | 8211W Sandy Lane | |
| | Lighting | Downlights | Halo | HJ717 IPS | | $30.00 each/above bulb tub |
| | | Pendant Fixtures | Rico | Espciel | | $65.00 each/Located cent/ries of mirror/ |
| | Millwork | Cabinets | Wood veneer | flush doors | dark mahogany | |
| | Counters | custom | | honed w/eased edges | Hafnal | 2" marbla slab |
| | | Mirror | custom | wall to wall | clear w/dark mahogany frame | approx. 7'x1'2" |
| | Shower | Faucet | Kohler | K0SR2PK-CP | brushed chrome | Toboret FCT. LVR/6100.00 each |
| | Vanity | Lavatory/Sink | Kohler | K-2215-0/Ladena | White | $103.00 each |
| | | Faucet | Kohler | K9215-4-CP | Polished Chrome | Toboret FCT. Pop-up/req'trim/$152.00 each |
| | Toilet | Faucet HDL | Kohler | K-16070-4-CP | | Toboret LVR HDL |
| | | | Toto | K-3322-0/Santa Rosa | White | $182.75 each |
| | Accessories | Twel ban/set hoard/TP total of 3 pieces | | | polish chrome | $60.00 each/set |
| Bathroom (typ) | Flooring | Marble | | 12"x12" tiles/honed | Haltsa w/finished edges | |
| | Walls | Marble | | 6"x12" | full height @ tub/Alf wainscot w/painted wood cap on top of the wainscot | |
| | Ceiling | Gyp.Bd | Benjamin Moore | Latex flat | White Dove | |
| | Doors/Frame | 1 3/4" Solid Core/HM 45-0"high | customipaint grade | custom 16" scoring | 8211W Sandy Lane | |
| | Lighting | Downlights | Halo | HJ717 IPS | | $30.00 each/above bulb tub |
| | | Pendant Fixtures | Rico | Espciel | | $65.00 each/Located cent/ries of mirror |

| Area | Element | Detail | Manufacturer/Material | Model/Type | Finish/Color | Notes |
|---|---|---|---|---|---|---|
| Bathtub | | Tub | Kohler | K715LH/K718RH | | Villager/ |
| | | Faucet | Kohler | KT8224-4-CP | Polished Chrome | Taboret B&S Fct Lvr/$119.10 each |
| | Millwork | Cabinets | Wood veneer | flush doors | dark mahogany | |
| | | Counters | custom | honed w/eased edges | Halceal | 2" marble slab |
| | | Mirror | | wall to wall | clear w/dark mahogany frame | 2"x 1/2" |
| | Vanity | Lavatory/Sink | Kohler | K-2215-0/Ladena | White | $103.00 each |
| | | Faucet | Kohler | K8215-K-CP | Polished Chrome | Taboret FCT. Pop-up/req.trim/$152.00 each |
| | | Faucet HDL | Kohler | K-16070-4-CP | | Taboret LVR HDL |
| | Accessories | Twel bar/twl hook/TP Hldr | total of 3 pieces | | poSah chrome | $60.00 each set |
| | | | | | | |
| Walk In Closet (Typ) | Flooring | Wood(pre-engineered) | | Prefinished 3-Ply Parquet | Stained Oak-prefinished | Wood species-oak/$3.50/Sf |
| | Base | Wood | Custom milled | mdf/paint | trim color 8211W Sandy Lane | 1/2"x51/2"w/score/5.55 Lf |
| | Walls | Paint | Benjamin Moore | Latex eggshell | White Dove | Gyp.Bd. |
| | Ceiling | Gyp.Bd | Benjamin Moore | Latex flat | White Dove | |
| | Doors/Frame | 1 3/4" Solid Core/HM -6'-0"high | custom/paint grade | custom 1/8" scoring | 8211W Sandy Lane | |
| | | | | | | |
| Corridors, Lobby | Flooring | Stone slate (lobby only) | | 16"x16" | | $5.00/SF(including base) |
| Misc.areas(Typ) | | Carpet | Shaw | 21st Century-45505 | Global 50645 | direct glued down/$18.00sf. installed |
| | Base | Stone slate (lobby only) | | 4"x16" | | see lobby floor |
| | | Carpet | Shaw | 21st Century-45505 | Global 50645 | 4"w/bound top edge/$1.50f.installed |
| | Walls | Wall Paper | Wolf Gordon | 52" Wide Vinyl | Metallic Papyrus | G2468094/$9.00sf |
| | Ceiling | Gyp.Bd | Benjamin Moore | Latex flat | White Dove | |
| | Doors/Frame | Solid Core/HM | custom/paint grade | custom 1/8" scoring | 8211W Sandy Lane | 9'-0"/2"frams/ |
| | | Saddles | | | stone | |
| | Lighting | Pendant Fixtures | IKEA | 18"glass bowl/Erbium | Frosted Candelabra | 3x40Watts/$40.00 each |
| | In WIC and W/D | Wall Mounted | Eghteller | Discus | 2x13W flour. 3000K | 6700/AS213N1 /controled by switch outside room/$15.00 allownce. |
| | Security System | Unione 1000 | Unione | CCTV/card access | Multiple views,automatic on screen viewing/$19,448.00 total | |
| | | | | | | |
| Hardware | Entrance doors | Lock | Advance Hardware | ML - 20-53 | US26D | Master keyed $120.00 Each |
| | | hinges | Ultra | Spring hinges | SH45DC | 2 pairs/4 1/2"x4" |
| | Interior Doors | | Cal - Royal | RL- 30 (passage) | US26D | $37.00 Each |
| | | | Cal - Royal | RL - 20 (privacy) | US26D | $40.00 Each |
| | | | Cal - Royal | RL - (dummy) | US26D | $15.00 Each |
| | | hinges | 2 pairs | Cal - Royal | 4 1/2"x4" | US26D |
| | | door chime | | | | $25.00 |
| | | Panic Bar | | | | $115.00 |
| | | door stop | | | | $2.50 |




*Ex „ C*

Wonder Works Construction
392 Fifth Ave. – Suite 300
New York, NY 10018

2/19/2004
JK-3060
Quentin Terrace

## EXHIBIT "D"

## HOLD HARMLESS AGREEMENT

To the fullest extent of the law, Subcontractor agrees to indemnify, defend, save, and hold the Owner – Quentin Condos II, LLC,; Contractor – Wonder Works Construction Corp., and their respective partners, officers, directors, employees, and anyone else acting for or on behalf of any of them (herein collectively called "Indemnities") harmless from and against all liability, demands, and actions of any nature whatsoever (including attorney's fees and disbursements) which arise out of or are connected with, or any act or omission of Subcontractor:

1. The performances of the Work by the subcontractor, or any act or omission of Subcontractor;
2. Any accident or occurrence which happens, or is alleged to have happened, in or about the place where the Work is being performed or in the vicinity thereof (a) while the Subcontractor is performing the Work, either directly, or indirectly through a subcontractor or material agreement or (b) while any of the Subcontractor's property, equipment or personnel are in or about such place or the vicinity thereof by reason of or as a result of the Performance of the Work; or
3. The use, misuse, erection, maintenance, operation of or failure of any machinery or equipment (including but not limited to scaffolds, derricks, ladders, hoists, rigging supports, etc.) whether or not such machinery or equipment was furnished, rented, or loaned to the subcontractor by the Owner or their officers, employees, agents, servants, or others.
4. Notwithstanding the above, whether there is a provision in the applicable law governing this subcontract making void and enforceable any such indemnification of an Indemnitee hereunder where an Indemnitee is negligent ort at fault, in whole or in part, then and any event such indemnification shall apply only to the extent permitted by such applicable law but nothing herein set forth shall be deemed to preclude the indemnification of an Indemnitee hereunder from any of the foregoing damages caused by, arising out of, resulting from, or occurring in connection with the negligence or any other fault of a party other then the Indemnitee, whether or not the Indemnitee is partially negligent or at fault. Subcontractor's obligation hereunder shall not be limited by the provision of any workmen's compensation act.

Notary

Subcontractor: *Forthright constr.*

By: _____
(Signature)

*Rinat Yanborisov*
(Print Name and Title)

MARGARITA KOLOMENSKY
Notary Public, State of New York
No. 01KO5055384
Qualified in Kings County
Commission Expires February 5, *2006*