**EXHIBIT H**

# FORTHRIGHT CONSTRUCTION, INC.
## 2240 McDonald Ave., Brooklyn, NY 11223

Date: June 1, 2004                                                                                                    Subcontract No. _____

SUBCONTRACTOR:                ATY Construction
                              4108 13th Avenue
                              Brooklyn, NY 11219

SUBCONTRACT FOR:              Cast in Place Concrete, Sheeting, Excavation       Subcontract Amount: $500,000

PROJECT:                      Quentin Terrace, 1671 West 10th Street & 103 Quentin Rd.
                              Brooklyn, NY

OWNER:                        Quentin Condos, LLC

ARCHITECT/ENGINEER:           _____

GENERAL CONTRACT DATE:        _____

_____(The foregoing terms are incorporated into and more fully explained in the provisions that follow.)_____

Forthright Construction, Inc., a "Contractor", ATY Construction, a Cast in Place Concrete, Sheeting, Excavation "Subcontractor", with offices at the addresses shown above, agree as follows:

1. **WORK:** The said Subcontractor hereby agrees to furnish all materials; required shop and erection drawings; required samples; all tools and equipment together with all labor under supervision satisfactory to the Architect, Engineer, Owner and the Contractor, to complete the following part or parts of the work of the Contract in all respects as therein required of the Contractor, and all work incidental thereto including cost of all water and electric current used by the Subcontractor and proportionate cost of operating hoisting equipment furnished by Contractor, if used by Subcontractor, namely: This agreement is hereinafter referred to as "the Subcontract". All listed below is in accordance with drawings for 103 Quentin Road and 1671 W. 10th Street, New Residential Projects, dated 03/24/04.
   - Sheeting
   - Excavation
   - Concrete (foundation, decking, and basement slab)
   - Underpinning

2. **CONTRACT DOCUMENTS:** The Subcontractor hereby certifies that he has carefully examined all the applicable plans and specifications prepared for the entire work, of which the work covered by this Subcontract is a part. Said plans and specifications are hereby referred to and made a part of this Contract. The Subcontractor and his subcontractors will be and are bound by said plans and specification insofar as they relate to the work undertaken herein.

   **Insurance Exhibit and Hold Harmless Agreement must be included with this document.**

3. **PRICE:** It being mutually understood by the Contractor and Subcontractor that this Contract is a **Lump Sum** Subcontract and the said Contractor hereby agrees to pay the said Subcontractor for such labor and material herein undertaken to be done and furnished for the work as mentioned above the fixed sum of **$500,000 (Five hundred thousand, 00/100)**

   Progress payments shall be paid by the Contractor to the Subcontractor for work properly performed and accepted pursuant to this contract.

   **Release and Partial Waiver of Liens must be provided to the Contractor after each payment.**

4. **DEFAULT:** Should the Subcontractor at any time refuse or neglect to supply a sufficient number of properly skilled workmen, or a sufficient quantity of materials of proper quantity, or fail in any respect to prosecute the work covered by this subcontract, with promptness and diligence, or fail in the performance of any of the agreements herein contained, the Contractor may, at his option, after forty-eight written notice to the subcontractor, provide any such labor and materials and deduct the costs thereof from any money then due or thereafter to become dues the Subcontractor under this Subcontract; or the Contractor may at his potion, terminate the employment of the Subcontractor for the said work, and shall have the right to enter upon the premises and take possession, for the purpose of completing the work included under this Contract, of all the materials, tolls, and appliances thereon, and may employ any other person or persons to finish the work and provide the materials therefore; and in cast of such discontinuance of the employment by the said Contractor, said Subcontractor shall not be entitled to receive any other payments under this Subcontract until the work shall be wholly finished; at which time, if the unpaid balance of the amount to be paid under this Subcontract exceeds the expenses incurred by the Contractor in finishing the work, such excess shall be paid by the Contractor to the Subcontractor, but, if such expenses exceed the unpaid balance, the Subcontractor shall pay the difference to the Contractor. The expense incurred by the Contractor, as herein provided,

either for furnishing or for finishing the work and any damaged incurred by such default shall be chargeable to, and paid by, said Subcontractor, and the Contractor shall have a lien upon all materials, tools, and appliances, taken possessions on an aforesaid to secure the payment thereof.

5. **INDEMNITY:** To the fullest extent permitted by law, Subcontractor shall indemnify, defend, save, and hold the Owner, Contractor, and their respective partners, officers, directors, employees and anyone else acting for or on behalf of any of them (herein collectively called "Indemnitees") harmless from and against all liability, demands and actions of any nature whatsoever (including attorneys' fees and disbursements) which arise out of or are connected with, or any act or omission of Subcontractor;

1. The performances of the Work by the subcontractor, or any act or omission of Subcontractor;
2. Any accident or occurrence which happens, or is alleged to have happened, in or about the place where the Work is being performed or in the vicinity thereof (a) while the Subcontractor is performing the Work, either directly, or indirectly through a sub-subcontractor or material agreement or (b) while any of the Subcontractor's property, equipment or personnel are in or about such place or the vicinity thereof by reason of or as a result of the Performance of the Work; or
3. The use, misuse, erection, maintenance, operation of or failure of any machinery or equipment (including but not limited to scaffolds, derricks, ladders, hoists, rigging supports, etc.) whether or not such machinery or equipment was furnished, rented or loaned to the subcontractor by the Owner or the Contractor or their officers, employees, agents, servants or others.
4. Notwithstanding the above, wherever there is a provision in the applicable law governing this Subcontract making void and unenforceable any such indemnification of an Indemnitee hereunder where such Indemnitee is negligent or at fault, in whole or in part, then and in any event such indemnification shall apply only to the extent permitted by such applicable law but nothing herein set forth shall be deemed to preclude the indemnification of an Indemnitee hereunder from any of the foregoing damages caused by, arising out of, resulting from, or occurring in connection with the negligence or any other fault of a party other than the Indemnitee, whether or not the Indemnitee is partially negligent or at fault. Subcontractor's obligation hereunder shall not be limited by the provisions of any workmen's compensation or similar act.

6. **INSURANCE:**
1. The Subcontractor, at its own expense, shall obtain and submit to the Contractor, before undertaking any part of the Work, policies and certificates with receipts for the payment of premiums from the Subcontractor's insurance carriers indication coverage from companies, in amounts and on such other terms as provided for hereinafter and in the "Insurance Schedule" attached to this Agreement as Exibit A. Any "deductible" with respect to such coverage shall be submitted to, and approved in writing by, the Contractor, provided that any costs or damages not covered due to the approved deductible shall be borne solely by Subcontractor. All such insurance shall be maintained by Subcontractor, at its expense, until the Work has been completed and all obligations of Subcontractor under the Contract Documents have been satisfied. Any policy of insurance covering the subcontractor's tools, equipment, or facilities against loss of physical damage, shall provide a complete waiver of subrogation against the Contractor, the Owner, and their respective members, officers, directors, employees, agents and servants.
2. All policies required of Subcontractor hereunder shall provide for notice to the Contractor thirty (30) before any change in or cancellation of such insurance, and shall otherwise be acceptable to the Contractor. Upon request, the Subcontractor shall furnish the Contractor with evidence of insurance satisfactory to the Contractor for each Subcontractor employed by it. The insurance required herein shall in any event include blanket (broad form) Contractual liability insurance. The existence of insurance shall not be construed to limit the Subcontractor's liability under this Subcontract.
3. The Subcontractor hereby waives all rights which arise by subrogation or otherwise that it may have against the Owner or Contractor for damages caused by fire or other perils covered by insurance referred to in this Trade Subcontract Article 7 or in the Insurance Schedule.
4. The provisions of this Trade Subcontract Article 7 and obligations of the Subcontractor hereunder shall survive Final Completion and any termination hereof.

7. **LIENS:** The said Subcontractor agrees to turn said work over to the Contractor in good condition, and clear from all claims, encumbrances, patent royalties and liens growing out of the performance of this Subcontract. Said Subcontractor shall, as often as requested in writing by the Owner or by the Contractor, make out and give to said Owner or Contractor a sworn statement of persons furnishing labor or materials to the Subcontractor or his Subcontractors, giving their names and how much, if any, is due to each.

8. **TAXES:** It is hereby specifically and expressly agreed that with respect to labor requirements and wage scales, the Subcontractor will comply with all statutory and specification requirements, will pay all taxes assessed against his labor, and materials, and will also comply with all statutory and specification requirements as to labor reports, payroll taxes, and the like, Subcontractor agrees to conform with all State and Federal Labor Laws and to the labor policy of the Contractor. The Subcontractor agrees to pay any fines assessed against the Contractor on account of labor law violation by the Subcontractor or his Subcontractors.

9. **EXTENSION OF TIME:** Should the Subcontractor be delayed in the prosecution or completion of the work by the act, neglect, or default of Architect, Engineer, or the Contractor, or by damage caused by fire or other casualty for which the Subcontractor is not responsible, then the time agreed upon for the completion of the work shall be extended the number of days that Subcontractor has been delayed, but no allowance or extension shall be made unless the claim therefore is presented in writing to the Contractor within forty-eight hours of the occurrence of such delay.

10. **FINAL PAYMENT:** Final payment shall be made after satisfactory completion of the work included in this Subcontract. Payment of any installment or final payment shall be withheld until Subcontractor furnishes satisfactory proof of payment of all bills for labor, materials, taxes, services and other expenses with this Subcontract.

11. **ACCEPTANCE:** It is further mutually agreed between the parties hereto that no payment made under this Subcontract, except the final payment, shall be conclusive evidence of the performance of this Subcontractor, either in whole or in part, and that no payment shall be construed to be an acceptance

of defective work or improper materials.

12. **MISCELLANIOUS:** Subcontractor shall, at its own expense:
    (a) Obtain all necessary permits and licenses and comply with all statutes, ordinances, rules, regulations and orders, of any governmental or quasi-governmental authority, applicable to the performance of the Work; and be responsible for any correct any violations thereof.
    (b) Conform to the basic safety policy of Contractor, and comply with all specific safety requirements promulgated by the Owner or Contractor including Occupational Safety and Health Act of 1970.

13. **GUARANTEE:** Subcontractor guarantees that the Work shall be free from defects and shall conform to and meet the requirements of the Contract and the Contract Documents; and shall furnish any separate guarantee for the Work, or portions thereof, required under the Contract or Contract Documents. Subcontractor agrees to make, good to the satisfaction of the Owner, any portion of the Work which prove defective within one year (or such longer period as may be specified in the Contract or Contract Documents) from the sate of acceptance of the Project by Owner.

14. **ASSIGNMENT:** The Subcontractor will not sublet, assign, or transfer this contract or any part thereof without the written consent of the Contractor, nor will the Subcontractor assign any moneys to become due him (them, it) hereunder, without prior written consent of the Contractor.

15. **AGREEMENT:** This writing compromises the full and entire agreement between the parties affecting the work provided for herein. No other agreements or understanding of any nature concerning the same has been entered into or will be recognized. Contractor has made no inducements or representations to Subcontractor whatsoever except as expressly stated in this contract. No oral modification of this Subcontract shall have any force or affect.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first written above, this instrument being executed in duplicate each party retaining a copy.

Witness: _____

Witness: _____

Forthright Construction, Inc,
Contractor
By: _____
President

ATY Construction
Subcontractor
By: _____
President

## MMG DESIGN INC.

### CELLARS CLEANED * RUBBISH REMOVAL
### APARTMENT BUILDINGS * DEMOLITION

86 MEADE LOOP
STATEN ISLAND, NY 10309

February 19, 2004

Forth Right Construction
2240 McDonald Avenue
Brooklyn, NY 11223

Attn: Rinat Yanborisov

Office No.: 718-996-2300

Fax No. 718-996-2400
(2 Pages)

Reference: 1671 West 10th Street
Brooklyn, New York

99, 101 and 103 Quentin Rd.
Brooklyn, New York

Provide Complete Excavation as per plans included digging for under pinning and one face wall.

**The following is included in the Scope of Work:**
- Excavate an 80' x 100' x 10'
- Underpin an 80' x 2' x 3' area
- Excavate an 60' x 100' x 10'
- Underpin an 20' x 2' x 3' area
- All back fill included
- The above cuts are all from plans

**The Owner Shall Provide the Following:**
- MMG Inc. will install a fence around the property
- All Permit for construction

The total sum for the above work is One Hundred Thousand Dollars ($100,000.00).

FROM : M GRASSO DEMOLITION INC    FAX NO. : 7183560340    Feb. 19 2004 02:38PM P2

Tele: 718-356-8863
718-356-8847

Cell # 917-968-4990
Fax # 718-356-0340

# MMG DESIGN INC.

<u>Payment Schedule:</u>1671 West 10th St, 99 Quentin Rd, 101 Quentin Rd and 103 Quentin Rd
Excavation

| | |
|---|---|
| Job Deposit | $ ~~12,000.00~~  10,000 |
| 2nd Payment | $ 12,000.00 |
| 3rd Payment | $ 12,000.00 |
| 4th Payment | $ 12,000.00 |
| 5th Payment | $ 12,000.00 |
| 6th Payment | $ 12,000.00 |
| 7th Payment | $ ~~10,000.00~~  12,000 |
| 8th Payment | $ 6,000.00 |
| Completion of Job | Total <u>$100,000.00</u> |

Very truly yours,

MMG DESIGN INC.

*Marie Grasso* (signature)
Marie Grasso

ACCEPTED BY
Forth Right Construction

*(signature)*    04/21/04
Mr. Rinat Yanborisov    Dated

Attn: Rinat Yankorsov

Office No.: 718-996-2300

Fax No. 718-996-2400
(2 Pages)

Reference:  1671 West 10th Street       99, 101 and 103 Quentin Rd
            Brooklyn, New York          Brooklyn, New York

*Complete Demolition of House and two garages, two showrooms two levels high and one showroom one level high.*

Provide complete demolition of brick house two garages, (2) two level brick showrooms and (1) one level brick showroom (approximately 1671 W10 St.= 20' x 35'and showroom 99= 20'x 80' 101=20' x 80' 103= 40' x 60') Foundations not included

### The following is included in the Scope of Work:
- All permits supplied by MMG Design
- Complete demolition of one level and basement
- Demolish two garages and removed
- All showrooms will be demolish by hand and removed
- Will remove all metal from basement, boilers and etc.
- Block garage to be demolished and removed
- A Certified Notification Letter to adjacent properties

### The Owner Shall Provide the Following:
- MMG Inc. will install a fence around the property, (plywood supplied by Contractor)
- All cut off Letters to obtain permits

The total sum for the above work is Forty Seven Thousand Dollars ($47,000.00).

FROM : M GRASSO DEMOLITION INC  FAX NO. : 7183569343  Jan. 15 2004 11:29PM P2

Cell # 917-968-4990  
Fax # 718-356-0340

Tele: 718-356-8863  
718-356-8847

# MMG DESIGN INC.

**Payment Schedule:** 1671 West 10th St, 99 Quentin Rd, 101 Quentin Rd and 103 Quentin Rd.

| | |
|---|---|
| Job Deposit for permits | $ 7,000.00 |
| Windows and roof removed | $ 9,000.00  7,000 |
| 3rd Payment | $ 8,000.00 |
| 4th Payment | $ 8,000.00 |
| 5th Payment | $ 8,000.00 |
| 6th Payment | $ 6,000.00  7,000 |
| Completion of Job | $ 2,000.00 |
| Total | $47,000.00 |

Very truly yours,  
MMG DESIGN INC.  
*Marie Grasso*  
Marie Grasso

ACCEPTED BY  
Forth Right Construction  
_____  
Mr. Rinat Yanborisov    Dated

# FORTHRIGHT CONSTRUCTION, INC
## 2240 McDonald Ave., Brooklyn, NY 11223
### Ph. 718 226-7300  Fax 718 266-7308

Date: March 29, 2005 _____ Subcontract No. _____

SUBCONTRACTOR:    N & C Iron Works, Inc.
                  1117-60th Street
                  Brooklyn, NY 11219

SUBCONTRACT FOR:    Structural Steel          Subcontract Amount: &805,000

PROJECT:            Quentin Terrace
                    Brooklyn, NY

OWNER:              Quentin Condos LLC

ARCHITECT/ENGINEER: _____

_____ (The foregoing terms are incorporated into and more fully explained in the provisions that follow.) _____

Forthright Construction, Inc. a "Contractor" and N & C Iron Works, Inc. a Structural Steel "Subcontractor", with offices at the addresses shown above, agree as follows:

1. **WORK:** The said Subcontractor hereby agrees to furnish all materials; required shop and erection drawings; required samples; all tools and equipment together with all labor under supervision satisfactory to the Architect. Engineer, Owner, and the Contractor to complete the following part or parts of the work of the Contract in all respects as therein required of the Contractor, and all work incidental thereto including cost of all water and electric current used by the Subcontractor and proportionate cost of operating hoisting equipment furnished by Contractor, if used by Subcontractor, namely: This agreement is hereinafter referred to as "the Subcontract".

   Progress schedule for work performance is attached.

2. **CONTRACT DOCUMENTS:** The Subcontractor hereby certifies that he has carefully examined all the applicable plans and specifications prepared for the entire work of which the work covered by this Subcontract is a part. Said plans and specifications are hereby referred to and made a part of this Contract. The Subcontractor and his subcontractors will be and are bound by said plans and specification insofar as they relate to the work undertaken herein.

   List of Contract Documents.

   <u>**Insurance Exhibit and Hold Harmless Agreement must be included with this document.**</u>

3. **PRICE:** It being mutually understood by the Contractor and Subcontractor that this Contract is a <u>**Lump Sum**</u> Subcontract and the said Contractor hereby agrees to pay the said Subcontractor for such labor and material herein undertaken to be done and furnished for the work as mentioned above the fixed sum of

   $805,000 (Eight hundred five thousand, 00/100)

   Progress payments shall be paid by the Contractor to the Subcontractor for work properly performed and accepted pursuant to this contract less ____10%____ retainage. Payment schedule is attached.

   <u>**Release and Partial Waiver of Liens must be provided to the Contractor after each payment.**</u>

4. **DEFAULT:** Should the Subcontractor at any time refuse or neglect to supply a sufficient number of properly skilled workmen, or a sufficient quantity of materials of proper quantity, or fail in any respect to prosecute the work covered by this subcontract, with promptness and diligence, or fail in the performance of any of the agreements herein contained, the Contractor may, at his option, after forty-eight written notice to the Subcontractor, provide any such labor and materials and deduct the costs thereof from any money then due or thereafter to become dues the Subcontractor under this Subcontract; or the Contractor may at his potion, terminate the employment of the Subcontractor for the said work, and shall have the right to enter upon the premises and take possession, for the purpose of completing the work included under this Contract, of all the materials, tolls, and appliances thereon, and may employ any other person or persons to finish the work and provide the materials therefore; and in cast of such discontinuance of the employment by the said Contractor, said Subcontractor shall not be entitled to receive any other payments under this Contract until the work shall be wholly finished; at which time, if the unpaid balance of the amount to be paid under this Contract exceeds the expenses incurred by the Contractor in finishing the work, such excess shall be paid by the Contractor to the Subcontractor, but, if such expenses exceed the unpaid balance, the Subcontractor shall pay the difference to the Contractor. The expense incurred by the Contractor, as herein provided, either for furnishing or for finishing the work and any damaged incurred by such default shall be chargeable to, and paid by, said Subcontractor, and the Contractor shall have a lien upon all materials, tools, and appliances, taken possessions on an aforesaid to secure the payment thereof.

5. **INDEMNITY:** To the fullest extent permitted by law, Subcontractor shall indemnify, defend, save, and hold the Owner, Contractor, and their respective partners, officers, directors, employees and anyone else acting for or on behalf of any of them (herein collectively called "Indemnitees") harmless from and against all liability, demands and actions of any nature whatsoever (including attorneys' fees and disbursements) which arise out of or are connected with, or any act or omission of Subcontractor;
   1. The performances of the Work by the subcontractor, or any act or omission of subcontractor;
   2. Any accident or occurrence which happens, or is alleged to have happened, in or about the place where the Work is being performed or in the vicinity thereof (a) while the Subcontractor is performing the Work, either directly, or indirectly through a sub-subcontractor or

material agreement or (b) while any of the Subcontractor's property, equipment or personnel are in or about such place or the vicinity thereof by reason of or as a result of the Performance of the Work; or

3. The use, misuse, erection, maintenance, operation of or failure of any machinery or equipment (including but not limited to scaffolds, derricks, ladders, hoists, rigging supports, etc.) whether or not such machinery or equipment was furnished, rented or loaned to the contractor by the Owner or the Contractor or their officers, employees, agents, servants or others.

4. Notwithstanding the above, wherever there is a provision in the applicable law governing this Subcontract making void and unenforceable any such indemnification of an Indemnitee hereunder where such Indemnitee is negligent or at fault, in whole or in part, then and in any event such indemnification shall apply only to the extent permitted by such applicable law but nothing herein set forth shall be deemed to preclude the indemnification of an Indemnitee hereunder from any of the foregoing damages caused by, arising out of, resulting from, or occurring in connection with the negligence or any other fault of a party other than the Indemnitee, whether or not the Indemnitee is partially negligent or at fault. Subcontractor's obligation hereunder shall not be limited by the provisions of any workmen's compensation or similar act.

6. **INSURANCE:**

   1. The Subcontractor, at its own expense, shall obtain and submit to the Contractor, before undertaking any part of the Work, policies and certificates with receipts for the payment of premiums from the Subcontractor's insurance carriers indication coverage from companies, in amounts and on such other terms as provided for hereinafter and in the "Insurance Schedule" attached to this Agreement as Exibit A. Any "deductible" with respect to such coverage shall be submitted to, and approved in writing by, the Owner, provided that any costs or damages not covered due to the approved deductible shall be borne solely by Subcontractor. All such insurance shall be maintained by Subcontractor, at its expense, until the Work has been completed and all obligations of Subcontractor under the Contract Documents have been satisfied. Any policy of insurance covering the contractor's tools, equipment, or facilities against loss of physical damage, shall provide a complete waiver of subrogation against the Contractor, the Owner, and their respective members, officers, directors, employees, agents and servants.

   2. All policies required of Subcontractor hereunder shall provide for notice to the Contractor thirty (30) before any change in or cancellation of such insurance, and shall otherwise be acceptable to the Contractor. Upon request, the Subcontractor shall furnish the Contractor with evidence of insurance satisfactory to the Contractor for each Subcontractor employed by it. The insurance required herein shall in any event include blanket (broad form) Contractual liability insurance. The existence of insurance shall not be construed to limit the Subcontractor's liability under this Subcontract.

   3. The Subcontractor hereby waives all rights which arise by subrogation or otherwise that it may have against the Owner or Contractor for damages caused by fire or other perils covered by insurance referred to in this Trade Subcontract Article 7 or in the Insurance Schedule.

   4. The provisions of this Trade Subcontract Article 7 and obligations of the Subcontractor hereunder shall survive Final Completion and any termination hereof.

7. **LIENS:** The said Subcontractor agrees to turn said work over to the Contractor in good condition, and clear from all claims, encumbrances, patent royalties and liens growing out of the performance of this Subcontract. Said Subcontractor shall, as often as requested in writing by the Owner or by the Contractor, make out and give to said Owner or Contractor a sworn statement of persons furnishing labor or materials to the Subcontractor or his Subcontractors, giving their names and how much, if any, is due to each.

8. **TAXES:** It is hereby specifically and expressly agreed that with respect to labor requirements and wage scales, the Subcontractor will comply with all statutory and specification requirements, will pay all taxes assessed against his labor, and materials, and will also comply with all statutory and specification requirements as to labor reports, payroll taxes, and the like, Subcontractor agrees to conform with all State and Federal Labor Laws and to the labor policy of the Contractor. The Subcontractor agrees to pay any fines assessed against the Contractor on account of labor law violation by the Subcontractor or his Subcontractors.

9. **EXTENSION OF TIME:** Should the Subcontractor be delayed in the prosecution or completion of the work by the act, neglect, or default of Architect, or Engineer, or the Contractor, or by damage caused by fire or other casualty for which the Subcontractor is not responsible, then the time agreed upon the completion of the work shall be extended the number of days that Subcontractor has been delayed, but no allowance or extension shall be made unless the claim therefore is presented in writing to the Contractor within forty-eight hours of the occurrence of such delay.

10. **FINAL PAYMENT:** Final payment shall be made after satisfactory completion of the work included in this Subcontract. Payment of any installment or final payment shall be withheld until Subcontractor furnishes satisfactory proof of payment of all bills for labor, materials, taxes, services and other expenses with this Subcontract.

11. **ACCEPTANCE:** It is further mutually agreed between the parties hereto that no payment made under this Subcontract, except the final payment, shall be conclusive evidence of the performance of this Subcontract, either in whole or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials.

12. **MISCELLANIOUS:** Subcontractor shall, at its own expense:
    (a) Obtain all necessary permits and licenses and comply with all statutes, ordinances, rules, regulations and orders, of any governmental or quasi-governmental authority, applicable to the performance of the Work; and be responsible for any correct any violations thereof;
    (b) Conform to the basic safety policy of Contractor, and comply with all specific safety requirements promulgated by the Owner or Contractor including Occupational Safety and Health Act of 1970.

13. **GUARANTEE:** Subcontractor guarantees that the Work shall be free from defects and shall conform to and meet the requirements of the Contract and the Contract Documents; and shall furnish any separate guarantee for the Work, or portions thereof, required under the Contract or Contract Documents. Subcontractor agrees to make, good to the satisfaction of the Owner, any portions of the Work which prove defective within one year (or such longer period as may be specified in the Contract or Contract Documents) from the sate of acceptance of the Project by Owner.

14. **ASSIGNMENT:** The Subcontractor will not sublet, assign, or transfer this contract or any part thereof without the written consent of the Contractot, nor will the Subcontractor assign any moneys to become due him (them, it) hereunder, without prior written consent of the Contractor.

15. **AGREEMENT:** This writing compromises the full and entire agreement between the parties affecting the work provided for herein. No other agreements or understanding of any nature concerning the same has been entered into or will be recognized. Contractor has made no inducements or representations to Subcontractor whatsoever except as expressly stated in this contract. No oral modification of this Subcontract shall have any force or affect.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first written above, this instrument being executed in duplicate each party retaining a copy.

Witness: _____

Witness: _____

Forthright Construction, Inc.
Contractor
By: _____

N & C Iron Works, Inc.
Subcontractor
By: _____

*Contract –* **Estimate**

OMI Construction Co Inc.

1411 Ave N ste C2
Brooklyn, NY 11230

| Date | Estimate # |
|---|---|
| 1/10/2006 | 15 |

**Name / Address**

FORTHRIGHT CONSTRUCTION
RINAT YANBORISOV
2240 McDONALD AVE., 1st FLOOR
BROOKLYN, NY, 11223

**PROJECT**

1671 W 10 st, 103 Quentin

| Description | Qty | Rate | Total |
|---|---|---|---|
| WE HEREBY SUBMIT ESTIMATE FOR: AS PER KARL FISCHER ARCHITECT PLANS FROM FEB 2003: INSTALLATION OF ALL BRICK VENEER AND STONES, ALL ATTACH WALLS TO BE CONSTRUCTED FROM 8" CMU, PARAPET TO BE CONSTRUCTED FROM 10" BRICK AND BLOCK WALL. ESTIMATE BASED ON STANDARD SIZE BRICK UP TO 0.50$, GREY TYPE "S" MORTAR CEMENT, REGULAR 75% SOLID CMU. H.M. DOOR FRAMES, MISC STEEL, METAL FLUSHING, RE-BARS, ~~PRECAST STONES~~, SLOPED GLAZING NOT INCLUDED. CARTING BY OTHERS. ALL PAYMENTS TO BE MADE ON BY-WEEKLY SCHEDULE, BY REQUISITION BASED ON WORK COMPLETED OR PERCENTAGE OF AMOUNT OF CONTRACT | | 550,000.00 | 550,000.00 |

OMI CONSTRUCTION
SIGNATURE_____

GENERAL CONTRACTOR
SIGNATURE_____

DATE __2.8.06__

| | Total | $550,000.00 |
|---|---|---|

5   1671 w 10 — 150,000 $