UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ATLANTIC CASUALTY
INSURANCE COMPANY,

                        Plaintiff,

                                          Case No. 07 CIV 4098

      v.

FORTHRIGHT CONSTRUCTION, INC.,
WONDER WORKS CONSTRUCTION CORP.,
VASILIS AFTOUSMIS and CONSTANTIA
AFTOUSMIS,

                        Defendants.
------------------------------------------------------------X


**ATLANTIC CASUALTY'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**


Aidan M. McCormack
Cyril E. Smith
Nixon Peabody LLP
*Attorneys for Plaintiff
Atlantic Casualty
Insurance Company*
437 Madison Avenue
New York, New York 10022
(212) 940-3000

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 5

A.    The *Aftousmis* Action .............................................................................. 5

B.    The Wonder Works – Forthright Subcontract ............................................ 6

C.    Forthright's Subcontracts .......................................................................... 6

D.    Mark Kanevsky's March 20, 2007 Statement ............................................ 7

E.    Mark Kanevsky's Deposition Testimony ................................................... 8

F.    Rinat Yanborisov's Affidavit In The *Aftousmis* Action ........................... 10

G.    The Other Insurance Policies .................................................................. 10

H.    The Late Notice To Atlantic Casualty ..................................................... 11

I.    The Declaratory Judgment Action ........................................................... 11

J.    The Atlantic Casualty Insurance Contracts .............................................. 11

ARGUMENT ........................................................................................................ 16

POINT I  THE EXCLUSION – INDEPENDENT CONTRACTORS / SUBCONTRACTORS
BARS COVERAGE FOR THE AFTOUSMIS ACTION ........................................ 16

POINT II  THE GROSS LATE NOTICE BARS ANY COVERAGE ......................... 19

POINT III  THE MATERIAL MISREPRESENTATIONS IN THE INSURANCE
APPLICATIONS BAR COVERAGE .................................................................... 26

POINT IV  THE SUBSIDENCE EXCLUSION BARS COVERAGE FOR THE AFTOUSMIS
ACTION .............................................................................................................. 28

POINT V  THE OTHER INSURANCE DEFENSE BARS COVERAGE FOR THE
AFTOUSMIS ACTION ........................................................................................ 30

POINT VI  THE CLAIMS IN PROCESS EXCLUSION BARS COVERAGE FOR THE
AFTOUSMIS ACTION ........................................................................................ 31

POINT VII  THERE IS NO COVERAGE SINCE THE CLAIM DOES NOT FALL WITHIN
THE SCOPE OF THE CLASSIFICATION LIMITATION ENDORSEMENT IN THE 11/24/05-
06 ATLANTIC CASUALTY INSURANCE CONTRACT ...................................... 32

CONCLUSION .................................................................................................... 33

# TABLE OF AUTHORITIES

## FEDERAL CASES

Asbeka Indus. v. Travelers Indem. Co.,
   831 F. Supp. 74 (E.D.N.Y. 1993) ...................................................................21

Axa Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus., Inc.,
   891 F. Supp. 978 (S.D.N.Y. 1995), aff'd, 84 F.3d 622 (2d Cir. 1996) ..........21, 24

Comm. Union Ins. Co. v. Internat'l Flavors & Fragrances, Inc.,
   822 F.2d 267 (2d Cir. 1987)........................................................................20

Heiser v. Union Cent. Life Ins. Co.,
   1995 U.S. Dist. LEXIS 8271 (N.D.N.Y. 1995) ...........................................27

Mount Vernon Fire Ins. Co. v. Chios Constr. Corp.,
   1996 U.S. Dist. LEXIS 414 (S.D.N.Y. 2006)...............................................19

N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.),
   266 F.3d 112 (2nd Cir. 2001).......................................................................27

Ogden Corp. v. Travelers Indem. Co.,
   924 F.2d 39 (2d Cir. 1991)...........................................................................20

Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP,
   379 F. Supp. 2d 442
   (S.D.N.Y. 2005)............................................................................................27

State of N.Y. v. Blank,
   27 F.3d 783 (2d Cir. 1994)...........................................................................20

Travelers Cas. and Sur. Co. v. Dormitory Authority - State of N.Y., 2008 U.S. Dist. LEXIS
   48751 (S.D.N.Y. June 25, 2008).................................................................23

U.S. Underwriters Ins. Co. v. 203-211 W. 145th St. Realty Corp.,
   2001 U.S. Dist. LEXIS 7099 (S.D.N.Y. 2001), rev'd on other grounds,
   2002 U.S. App. LEXIS 12231 (2d Cir. N.Y. 2002)......................................18

U.S. Underwriters Ins. Co. v. Congregation B'Nai Isr.,
   900 F. Supp. 641 ..........................................................................................18

U. S. Underwriters Ins. Co. v. Congregation Kollel Tisereth,
   2004 U.S. Dist. LEXIS 19608 (E.D.N.Y. 2004)...........................................18

Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.,
   748 F.2d 118 (2d Cir. 1984).........................................................................20

## STATE CASES

Amer. Home Products Assur. Co. v. Internat'l Ins. Co.,
90 N.Y.2d 433, 661 N.Y.S.2d 584 (1997) .......................................................................20

Argo Corp. v. Greater N.Y. Mut. Ins. Co.,
4 N.Y.3d 332, 794 N.Y.S.2d 704 (2005) .......................................................................21

Cali v. Merrimack Mut. Fire Ins. Co.,
43 A.D.3d 415, 841 N.Y.S.2d 128 (2d Dep't 2007)........................................................29

Columbus Trust Co. v. Hanover Ins. Co.,
50 A.D.2d 798, 375 N.Y.S.2d 628 (2d Dep't 1975)........................................................23

Deso v. London & Lancashire Indem. Co.,
3 N.Y.2d 127, 164 N.Y.S.2d 689 (1957) .......................................................................24

Haas Tobacco Co. v. Amer. Fidelity Co.,
226 N.Y. 343, 123 N.E. 755 (1919) (10 days)................................................................24

Heydt Contr. Corp. v. Amer. Home Assur. Co.,
146 A.D.2d 497, 536 N.Y.S.2d 770 (1st Dep't 1989), appeal dismissed mem.,
74 N.Y.2d 651, 542 N.Y.S.2d 520 (1989) .......................................................................24

Labate v. Liberty Mut. Ins. Co.,
45 A.D.3d 811, 847 N.Y.S.2d 128 (2d Dep't 2007)........................................................29

Murphy Temple A.M.E. Zion Church v. Mt. Vernon Fire Ins. Co.,
199 A.D.2d 374, 605 N.Y.S.2d 370 (2d Dep't 1993)......................................................24

Parmar v. Hermitage Ins. Co.,
21 A.D.3d 538, 800 N.Y.S.2d 726 (2d Dep't 2005)........................................................27

Rushing v. Comm. Cas. Ins. Co.,
251 N.Y. 302, 167 N.E. 450 (1929) (22 days)................................................................24

Safer v. Government Employees Ins. Co.,
254 A.D.2d 344, 678 N.Y.S.2d 667 (2d Dep't 1998)..................................................23, 24

Saraco Glass Corp. v. Yeled V'Yalda Early Childhood Center, Inc.,
2006 N.Y. Misc. LEXIS 598 (Sup. Ct., Kings Cty. March 28, 2006) ..............................24

Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.,
31 N.Y.2d 436, 340 N.Y.S.2d 902 (1972) ..................................................................20, 21

Steinberg v. Hermitage Ins. Co.,
809 N.Y.S.2d 569 (2d Dep't 2006) ................................................................................23

## STATE STATUTES

N.Y. Ins. Law § 3105 ............................................................................................................30

Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty") submits this memorandum of law in support of its motion for summary judgment.

## PRELIMINARY STATEMENT

In this insurance coverage dispute, Forthright Construction, Inc. ("Forthright") and Wonder Works Construction Corporation ("Wonder Works") seek coverage from Atlantic Casualty for the underlying Aftousmis action arising out their alleged negligent construction work that damaged the claimants' premises. For the following reasons, there is no coverage for the Aftousmis action under the Atlantic Casualty insurance contracts.

First, the independent contractors/subcontractors exclusion bars coverage for this claim. It bars coverage for "claims, loss, costs or expense arising out of the actions of independent contractors/subcontractors for or on behalf of any insured." **(Brauns Aff. Ex. B; ¶8)**[1] Quentin Terrace LLC contracted with Wonder Works to build the project. **(McCormack Dec. Ex. D)**[2] Wonder Works did no work at the project, but subcontracted the construction of the entire project to Forthright. Forthright also did no work at the project, but hired demolition, excavation, underpinning, foundation, and other subcontractors to do all the work required by Forthright's subcontract with Wonder Works. **(McCormack Dec. Exs. J and L)** This claim thus arises from the activity of independent contractors/subcontractors, and is not covered.

Second, the gross breach of the notice requirements bars coverage for the claim. The Atlantic Casualty insurance contracts unambiguously require that each insured provide timely written notice of an occurrence, claim, and suit. The record establishes that no one

---

[1] References to "Brauns Aff." are to the accompanying Affidavit of Ryan Brauns, with exhibits, in support of Atlantic Casualty's motion for summary judgment.

[2] References to "McCormack Dec." are to the accompanying Declaration of Aidan M. McCormack, with exhibits, in support of Atlantic Casualty's motion for summary judgment, and dated August 1, 2008.

provided notice to Atlantic Casualty for years. Forthright and Wonder Works were at the site each day. Forthright did a "damage inspection" of the premises in March 2004, and observed several cracks in the basement of the premises. In late 2004, after the claimant complained about a crack in his basement, Forthright again inspected the premises and observed "many cracks." **(McCormack Dec. Ex. J; Ex. K, pp. 102-103)** In July 2005 and August 2006, the claimants filed complaints with the New York City Department of Buildings concerning the cracks. **(McCormack Dec. Ex. S)** The record reveals that the alleged damage was known since 2004. Atlantic Casualty, however, first received notice of the incident, claim, and suit on February 28, 2007. **(Brauns Aff. ¶5)** Thus, the gross breach of the notice conditions bars coverage.

Third, Forthright's material misrepresentations on the applications for insurance from Atlantic Casualty also bar coverage for the claim. The insurance applications state that Forthright's business is "drywall/wallboard installation," "residential carpentry", and "painting." **(Parraga Aff. Ex. A)**[3] On the applications, Forthright answered "no" to questions regarding whether: (1) demolition exposure and structural operations were contemplated, (2) during the past 5 years, it worked on original structural construction, townhouses, and (3) it did condominium, excavation, foundation, underpinning, earth moving, or tunneling work. **(Id.)** The project, however, involved the construction of a five and seven story condominium complex, including underpinning, excavation, and demolition work. **(McCormack Dec. Ex. J)** Forthright hired all the subcontractors for the project, and oversaw all of the excavation, underpinning, and demolition work. **(McCormack Dec. Ex. J; Ex. K, pp. 37-38)** Atlantic Casualty would not have issued the policies had it known that Forthright was contemplating (and indeed, performing) such

---

[3]    References to "Parraga Aff." are to the Affidavit of Allen N. Parraga, with exhibit, in support of Atlantic Casualty's motion for summary judgment, and sworn to on July 28, 2008.

work. **(Parraga Aff. ¶10)** Thus, Forthright's material misrepresentations and failure to disclose material information on the insurance applications bar coverage for the claim.

Fourth, the Subsidence Exclusion also applies to bar coverage. It expressly excludes coverage for damage "caused by, resulting from, … the subsidence of land as a result of a … earth sinking or shifting, resulting from operations of the Named Insured or any other subcontractor of the Named Insured…." **(Brauns Aff. Ex. B)** Forthright and Wonder Works' work involved excavating holes more than ten-feet deep below the street line of the underlying plaintiffs' premises. **(McCormack Dec. Ex. A)** As a result, the earth shifted, causing, among other things, major cracks, separation of the floor structure from the wall of the first floor, and a hole in the boiler room. **(McCormack Dec. Exs. P, Q, and R)** Thus, the exclusion applies to bar coverage.

Fifth, the Atlantic Casualty insurance contracts are excess to any other insurance available to the insured. **(Brauns Aff. Ex. B; ¶22)** Forthright and Wonder Works have other insurance available to them under policies issued by Sirius America Insurance Company, Tower Insurance Company, and Arch Insurance. **(McCormack Dec. Exs. M and N)** They also filed separate third-party actions against subcontractors who worked at the project seeking reimbursement for any judgment or liability incurred in the <u>Aftousmis</u> action. **(McCormack Dec. Exs. B and C)** Thus, there is no coverage for the claim since the Atlantic Casualty insurance contracts are expressly excess to any such other insurance.

Sixth, the Claims In Process Exclusion bars coverage under the 11/24/2004-11/24/2005 and 11/24/2005-11/24/2006 Atlantic Casualty insurance contracts. It bars coverage for any "property damage" claim that "first occurred" before the policy incepted or which is "in the process of occurring" on the date the policy incepted, even if the insured did not know of the

alleged damage. **(Brauns Aff. Ex. B)** The demolition work at the project ended in March 2004 and Forthright did a "damage inspection" in March 2004. **(McCormack Dec. Ex. J)** Forthright also inspected the premises in late 2004 and observed several cracks. **(McCormack Dec. Ex. J; Ex; K, pp. 102-103)** The cracks worsened as the construction progressed. **(McCormack Dec. Exs. P, Q, and R)** Thus, the exclusion bars coverage since the damage first occurred prior to November 24, 2004.

Seventh, the claim does not fall within the scope of the Classification Limitation endorsement of the 11/24/05-06 Atlantic Casualty insurance contract. The endorsement limits the scope of coverage to property damage "arising out of only those operations described by the classification on the Commercial General Liability Coverage Declarations, …." **(Brauns Aff. Ex. B)** The business described on the insurance contract is limited to "Dry Wall or Wallboard Installation" (Code No. 92338). The work is also limited to the "construction of residential property <u>not exceeding three stories in height</u>." (Code No. 91340) (emphasis added). Further, it states that "Contractors – subcontracted work – in connection with building construction, reconstruction, repair or erection – one or two family dwellings." (Code No. 91583) **(<u>Id.</u>)** The project involved the construction of a condominium complex consisting of a five-story and a seven-story building. **(McCormack Dec. Ex. J)** Thus, there is no coverage for this claim since the operations performed by the defendants are beyond the scope covered by the Atlantic Casualty insurance contract.

Accordingly, for each of the reasons set forth above, Atlantic Casualty respectfully requests that this Court grant its motion for summary judgment and declare that Atlantic Casualty owes no coverage obligation with respect to the <u>Aftousmis</u> action.

## STATEMENT OF FACTS

A.    **The *Aftousmis* Action**

On or about February, 22, 2007, the underlying plaintiffs filed an action entitled

Vasilis Aftousmis and Constantia Aftousmis v. Wonder Works Construction Corp. and

Forthright Construction, Inc., Index No. 102479/07, Supreme Court of the State of New York,

County of New York (the "Aftousmis action"), arising out of the alleged damage to their

building located at 97 Quentin Road, Brooklyn, New York.  **(McCormack Dec. Ex. A)**  The

Aftousmis action alleges that the plaintiffs owned the premises adjoining the project, and that the

excavation work for the project was allegedly done at a depth of "more than ten feet below the

street line of 97 Quentin Road, Brooklyn, New York." **(Id. at ¶8)**  It also alleges that Forthright

and Wonder Works allegedly "wrongfully neglected to request permission to excavate" the soil

beneath the plaintiffs' premises and failed to notify the plaintiffs of the excavation near to and

underneath their premises.  **(Id. at ¶10, 28)**  In addition, Forthright and Wonder Works allegedly

wrongfully neglected to provide proper foundations to protect plaintiffs' walls and premises and

ensure that they would be safe once excavation commenced. As a result, the complaint alleges,

the excavation of the soil caused cracks to develop in the walls and cement floor of the plaintiffs'

premises.

On June 12, 2007, Forthright filed a third-party complaint against subcontractors

MMG Design, Inc. ("MMG"), ATY Construction ("ATY"), O.M.I. Construction Co., Inc.

("OMI"), N&C Iron Works, Inc. ("N&C"), and Monaco Construction Corp. ("Monaco").

**(McCormack Dec. Ex. B)**  On September 26, 2007, Wonder Works filed a Second Third-Party

Action against the same defendants in the third-party action. **(McCormack Dec. Ex. C)**  Both

third-party complaints allege that each defendant "entered into a written contract with regard to

the premises," and that the claims alleged in the <u>Aftousmis</u> action arose of the third-party defendants' negligence. **(Id. at ¶26)**

### B.    The Wonder Works – Forthright Subcontract

On or about November 17, 2003, Wonder Works contracted with Quentin Terrace LLC, the owner, to build the project.  **(McCormack Dec. Ex. D)**  On or about February 19, 2004, Wonder Works and Forthright entered into a "Subcontract" with respect to the construction of the project.  **(McCormack Dec. Ex. E)**  The subcontract lists Wonder Works as the "Contractor" and Forthright as the "Subcontractor."  It also describes Forthright's scope of work as follows:

> 1.1    The Subcontractor shall perform and furnish all the work, labor, services, materials, plans, equipment, tools, scaffolds, appliances and all other things necessary for the completion of the Subcontractor's Work for the project known as QUENTIN TERRACE, located at 167 West 10th Street/99-101 Quentin Road and 103-105 Quentin Road, Brooklyn, NY….

### C.    Forthright's Subcontracts

On or about February 19, 2004, Forthright and MMG Design, Inc. ("MMG") executed a document detailing the scope of the excavation and underpinning work at the project. **(McCormack Dec. Ex. F)**  On or about June 1, 2004, Forthright entered into a subcontract with ATY Construction ("ATY") with respect to the project. The contract lists Forthright as the "Contractor" and ATY as the "Subcontractor," and states that ATY is to perform "Cast In Place Concrete, Sheeting, Excavation," and underpinning work at the project.  **(McCormack Dec. Ex. G)** On or about March 29, 2005, Forthright entered into a subcontract N&C Iron Works ("N&C"). The subcontract lists Forthright as the "Contractor" and N&C as the "Structural Steel Subcontractor."  **(McCormack Dec. Ex. H)**  On or about February 8, 2006, Forthright and OMI Construction Co., Inc. ("OMI") executed a "Contract-Estimate" with respect to the project. The

Contract-Estimate stated that the work involved the installation of all brick veneer and stones and construction of walls at the project. **(McCormack Dec. Ex. I)**

For clarification purposes, the following is a diagram of the respective contractual relationships with respect to the project:



**QUENTIN TERRANCE LLC**
↓
**WONDER WORKS CONSTRUCTION CORP.**
↓
**FORTHRIGHT CONSTRUCTION, INC.**

| **MMG Design** | **ATY Construction** | **OMI Construction** | **N&C Iron Works** |
| ↓ | ↓ | ↓ | ↓ |
| **Demolition** | **Excavation Foundation Underpinning** | **Brick Veneer Walls** | **Iron Works** |

**D.      Mark Kanevsky's March 20, 2007 Statement**

On March 20, 2007, Forthright, by Mark Kanevsky, provided a written statement with respect to the claim. In the statement, Kanevsky states that Forthright is a general contracting company that "managed construction projects only, with all of the labor subcontracted out to various companies." **(McCormack Dec. Ex. J)** Among other things, Kanevsky states as follows:

- The project involved the construction of a five-story and a seven-story building as part of a condominium complex.

- Wonder Works' representative would visit the site once a week, and the day-to-day running of the project was Forthright's responsibility.

- Forthright hired all of the subcontractors for the project, and the work project began around the time of the contract (February 19, 2004).

- MMG was the demolition subcontractor, and demolition work was completed in March 2004.

- Forthright also contracted MMG to do excavation and underpinning work at the project. The only complaint during demolition was that the "walls of the remaining building needed to be waterproofed since we demolished the 2-story building that was adjacent to it." Forthright waterproofed the walls "to avoid any problems."

- In June 2004, Forthright hired ATY to do the excavation, underpinning and shoring work. ATY's work involved driving piles around the perimeter of the site and "underpinning the building at 97 Quentin." The underpinning work was done in late 2004.

- In late 2004, when the excavation work was completed, "we examined the basement at 97 Quentin and found many cracks in the foundation (but he complained only about one)…."

**E.      Mark Kanevsky's Deposition Testimony**

On May 13, 2008, Kanevsky, on behalf of Forthright, testified in the Aftousmis action. **(McCormack Dec. Ex. K)** Among other things, Kanevsky testified that:

(1)      He is a vice-president of Forthright and his duties involve overseeing the entire project from start to finish. Id., p. 26, at 4-7; p. 27, at 5-21; p. 37, at 2-12.

(2)     Forthright and Wonder Works were both general contractors at the project, and Forthright's work at the project began in 2004. Id., p. 27, at 22-25; p. 28, at 2-15. The project took four years to complete. Id., p. 77, at 5-10.

(3)     Forthright was responsible for doing the excavation and underpinning work at the project. Id., p. 37, at 14-20.

(4)     "Everybody who used to be on the project was under my supervision." Id., p. 38, at 20-21.

(5)     Forthright contracted with ATY to do the excavation, foundation, and underpinning work in 2004. Id., p. 40, at 3-13; p. 48, at 4-5. Forthright also contracted with MMG Design to do the demolition work at the project. Id., p. 41, at 15-24. Forthright contracted with OMI in 2004. Id., p. 109, at 5-11.

(6)     Forthright was at the project every day during the excavation and underpinning work and supervised the work. Id., p. 51, at 24-25; p. 52, at 2-3; p. 57, at 19-21; p. 69, at 11-18.

(7)     A Wonder Works' representative was present at the project on a daily basis and when Forthright first inspected the premises. Id., p. 65, at 4-8.

(8)     Underpinning work "involves partial of digging under the foundation, filling those digging holes with reinforced concrete and dry packing of the gap between existing foundation and new underpinning." Id., p. 57, at 9-14.

(9)     Kanevsky inspected the interior of the premises in late 2005 or 2006 after being contacted by the building's superintendent and observed cracks in the basement. Id., p. 93, at 16-21; p. 95, at 12-24.

(10)    Kanevsky inspected the premises again after the owner of the premises complained about cracks. Id., p. 102, at 16-24; p. 103, at 7-24. In response, Kanevsky offered to "fix anything in the building" when Forthright's work is finished. Id., p. 104, at 2-7.

(11)    Forthright placed crack monitors on the walls of the premises to determine if the cracks were getting larger. Id., p. 128, at 19-23-25; p. 129, at 2-7.

### F.    Rinat Yanborisov's Affidavit In The *Aftousmis* Action

On August 1, 2007, Forthright's co-owner, Rinat Yanborisov, provided a sworn affidavit in support of Forthright's opposition to the plaintiffs' motion for summary judgment in the Aftousmis action.  **(McCormack Dec. Ex. L)**  Among other things, the affidavit stated that: (1) Forthright contracted with Wonder Works on February 19, 2004; (2) the Wonder Works-Forthright subcontract "required excavation and underpinning work as per the engineering plans approved by the New York City Department of Buildings;" (3) Forthright subcontracted MMG to "perform the demolition, excavation and underpinning" work; and (4) ATY also "performed underpinning, pile driving, dry packing and foundation work."

### G.    The Other Insurance Policies

Both Forthright and Wonder Works have other insurance with respect to this claim.  In their discovery responses, Forthright and Wonder Works list the following general liability policies issued to Forthright: (1) Tower Insurance Company of New York (Policy No. CGL2610688; 05/26/06-07; 05/26/07-08) and (2) Sirius America Insurance Company (Policy No. IRS105049 (05/24/04-05); IRS107746 (05/24/05-06)) as policies under which they are insureds or are entitled to coverage.  **(McCormack Dec. Exs. M and N)**  Moreover, Wonder Works' discovery responses state that it had its own insurance with Arch Insurance beginning in 2003.  **(McCormack Dec. Ex. N)**

- 10 -

**H.**    **The Late Notice To Atlantic Casualty**

By letter dated February 27, 2007, Essential Services & Programs, LLC, the third-party administrator for Wonder Works, tendered the claim to B.R. Vital Brokerage, Inc. ("BR Vital"), Forthright's broker. On February 28, 2007, Atlantic Casualty received first notice of the incident and claim.  **(Brauns Aff. ¶5)**  Significantly, the notice was years after Forthright did a damage inspection of the premises in March 2004, years after Mr. Aftousmis complained about cracks in his basement in late 2004, and years after several visits by Kanevsky to the premises to inspect the damage in response to the claims.  **(Brauns Aff. ¶16)**

**I.**    **The Declaratory Judgment Action**

On May 25, 2007, Atlantic Casualty filed a declaratory judgment action against Forthright, Wonder Works, and Vasilis and Constantia Aftousmis. **(McCormack Dec. Ex. O)**  In the declaratory judgment action, Atlantic Casualty seeks a declaration that it owes no coverage obligation with respect to the <u>Aftousmis</u> action.

**J.**    **The Atlantic Casualty Insurance Contracts**

Atlantic Casualty Insurance Company issued to Forthright Construction, Inc. of 2240 McDonald Avenue, Brooklyn, New York 11223, insurance contracts numbered L036000522, with a policy period of 11/24/03 – 11/24/04; L036001127, with a policy period of 11/24/04 – 11/24/05; and L036001737, with a policy period of 11/24/05 – 11/24/06 (collectively, the "Atlantic Casualty insurance contracts"). **(Brauns Aff. Ex. B)**  The Atlantic Casualty insurance contracts include the following provisions:

**SECTION I COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**    **Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; …

\* \* \*

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS …

**2.     Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

a.     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)     How, when and where the "occurrence" or offense took place;

(2)     The names and addresses of any injured persons and witnesses; and

(3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.     If a claim is made or "suit" is brought against any insured, you must:

(1)     Immediately record the specifics of the claim or "suit" and the date received; and

(2)     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

    (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

    (2)    Authorize us to obtain records and other information;

    (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.    No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

* * *

**4.**    **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

    **a.**    **Primary Insurance**

    This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

    **b.**    **Excess Insurance**

    This insurance is excess over:

    (1)    Any of the other insurance, whether primary, excess, contingent or on any other basis:

        (a)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        (b)    That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        (c)    That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

- 13 -

(d)     If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I Coverage A Bodily Injury And Property Damage Liability.

(2)     Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

\* \* \*

## EXCLUSIONS/LIMITATIONS - COMBINATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

\* \* \*

## EXCLUSION – INDEPENDENT CONTRACTORS/SUBCONTRACTORS

You or any insured are not covered for claims, loss, costs or expense arising out of the actions of independent contractors/subcontractors for or on behalf of any insured.

\* \* \*

## EXCLUSION – SUBSIDENCE

In consideration of the premium charged, it is hereby understood and agreed that liability for bodily injury or property damage caused by, resulting from, attributable to or contributed to, or aggravated by the subsidence of land as a result of a landslide, mud flow, earth sinking or shifting, resulting from operations of the Named Insured or any other subcontractor of the Named Insured is excluded.

\* \* \*

## EXCLUSION – CLAIMS IN PROCESS

Paragraphs **b. (3), c. and d.** under **Insuring Agreement of Section I – Coverage A – Bodily Injury and Property Damage Liability,** are deleted. The following is added to 2. Exclusions under **Section I – Coverage A – Bodily Injury and Property Damage Liability:**

1.     any loss or claim for damages arising out of or related to "bodily injury" or "property damage", whether known or unknown:

a.     which first occurred prior to the inception date of this policy; or

      b.     which is, or is alleged to be, in the process of occurring as of the inception date of this policy.

2.     any loss or claim for damages arising out of ore related to "bodily injury" or "property damage", whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.

We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

* * *

     Atlantic Casualty insurance contract number L036001737 (11/24/05-06) also contains the following provisions:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART – DECLARATIONS

* * *

| Classification | Code No. |
|---|---|
| Dry Wall or Wallboard Installation | 92338 |

* * *

| | |
|---|---|
| Carpentry – construction of residential property not exceeding three stories in height. | 91340 |
| Contractors – subcontracted work – in connection with building construction, reconstruction, repair or erection – one or two family dwellings. | 91583 |

* * *

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CLASSIFICATION LIMITATION

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to and no duty to defend is provided for "bodily injury", "property damage", "personal and advertising injury" or medical payments for operations which are not classified or shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements.

* * *

     Atlantic Casualty insurance contracts numbered L036000522 (11/24/2003-11/24/2004) and L036001737 (11/24/2005-11/24/2006) also contain the following provisions:

- 15 -

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**SUBCONTRACTORS – DEFINITION OF ADEQUATELY INSURED**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The classifications used in this policy containing the words "Contractors – Subcontracted Work" apply to that portion of the operations performed for the insured by "adequately insured" subcontractors.

This insurance does not apply to any claim arising from subcontracted work unless:

1.    The subcontractor maintains insurance in force for his operations with at least the following Limits of Liability:

      A.    General Aggregate Limit

          (Other than Products –Completed Operations)     $1,000,000

          Products-Completed Operations Aggregate Limit    $1,000,000

          Each Occurrence Limit    $1,000,000

      B.    Or the limits provided by this policy, whichever are less; and

2.    You maintain a current certificate of insurance for the subcontractor; and

3.    A hold harmless agreement  in favor of you has been executed with the subcontractor; and/or

4.    You are endorsed to the subcontractors Commercial General Liability policy as an additional insured.

If all of the above conditions are met, the subcontractor will be considered "adequately insured" and exclusion AGL-005 Exclusion-Independent Contractors/Subcontractors shown on the Exclusions/Limitations-Combination Endorsement attached to this policy is deleted in its entirely.

All other terms and conditions remain unchanged.

* * *

**ARGUMENT**

**POINT I**

**THE EXCLUSION – INDEPENDENT CONTRACTORS /
SUBCONTRACTORS BARS COVERAGE FOR THE
AFTOUSMIS ACTION**

The Exclusion – Independent Contractors/Subcontractors bars coverage for

"claims, loss, costs or expense arising out of the actions of independent

contractors/subcontractors for or on behalf of any insured." **(Brauns Aff. Ex. B)** There is no coverage where the loss or claim arises out of the actions of the insured's contractors or subcontractors. Here, it is indisputable that the <u>Aftousmis</u> action arises out of subcontractors' work. The <u>Aftousmis</u> action alleges that Forthright's and Wonder Works' work was negligent and that they "wrongfully neglected to request permission to excavate" the soil beneath the plaintiffs' premises and failed to notify the plaintiffs of the excavation near to and underneath their premises. **(Id. at ¶10, 28)**

The February 19, 2004 Wonder Works / Forthright subcontract clearly shows that Forthright was acting as Wonder Works' subcontractor with respect to the project. **(McCormack Dec. Ex. E)** What is more, the record establishes that Forthright was responsible for the construction of the entire project, including overseeing all of the work of its subcontractors. **(McCormack Dec. Ex. K, pp. 26-27, 37-28; Ex. L)** Forthright hired all the subcontractors for the project, including the demolition, excavation, and underpinning subcontractors MMG and ATY. **(McCormack Dec. Exs. F, G, H, I, J, and L)**

In particular, Kanevsky testified at deposition that Forthright contracted with ATY to do the excavation, foundation, and underpinning work, and contracted with MMG Design to do the demolition work. **(McCormack Dec. Ex. K, p. 40, at 3-13; p. 41, at 15-24; p. 48, at 4-5)** Kanevsky also testified that "[e]verybody who used to be on the project was under my supervision." **(Id., p. 38, at 20-21)** Similarly, Forthright's other co-owner, Rinat Yanborisov, testified in the <u>Aftousmis</u> action that Forthright "subcontracted all of the work within the scope of the February 19, 2004 contract [with Wonder Works]." **(McCormack Dec. Ex. L)** This claim arose out of that work. In particular, the extensive excavation of the foundation, performed by Forthright's subcontractor, ATY, resulted in a large hole more than ten feet deep. **(McCormack**

**Dec. Ex. A)** Moreover, ATY did extensive underpinning work, which involved digging and creating holes under the foundation. **(McCormack Dec. Ex. K, p. 57)** This work was performed at the project directly adjoining the underlying plaintiffs' premises. **(McCormack Dec. Ex. A)** As a result, the soil shifted and caused settlement damage, separation between the floor structure and east wall of the first floor, a hole in the boiler room floor, major wall and floor cracks and other damage to the underlying plaintiffs' premises. **(McCormack Dec. Exs. P, Q, R)** All of this alleged damage was due to Forthright's subcontractors' work.

Under settled New York law, the independent contractors / subcontractors exclusion is broadly construed, unambiguous, and enforceable to bar coverage. See U.S. Underwriters Ins. Co. v. 203-211 W. 145th St. Realty Corp., 2001 U.S. Dist. LEXIS 7099 (S.D.N.Y. 2001) ("The language of the exclusion at issue here -- excluding coverage for personal and bodily injury 'arising out of operations performed for any insured by independent contractors' -- consistently has been held by courts to be 'clear and unambiguous.'"), rev'd on other grounds, 2002 U.S. App. LEXIS 12231 (2d Cir. N.Y. 2002); U.S. Underwriters Ins. Co. v. Congregation B'Nai Isr., 900 F. Supp. 641. 645 (E.D.N.Y. 1995) (same). Here, the record, including Forthright's own documents and testimony, confirms that Wonder Works hired Forthright as its subcontractor to construct the project, and that Forthright in turn hired all the subcontractors. Thus, since the work was done by subcontractors, the claim "aris[es] out of the actions of the actions of independent contractors / subcontractors for or on behalf of any insured." See U. S. Underwriters Ins. Co. v. Congregation Kollel Tisereth, 2004 U.S. Dist. LEXIS 19608 (E.D.N.Y. 2004) ("Because Meneses alleges that he sustained bodily injuries while performing demolition work for a contractor retained by the Congregation, the independent contractors exclusion applies and U.S. Underwriters is not obligated to defend or

indemnify the Congregation."); <u>Mount Vernon Fire Ins. Co. v. Chios Constr. Corp.</u>, 1996 U.S. Dist. LEXIS 414 (S.D.N.Y. 2006) (Court enforces independent contractors/subcontractors exclusion to bar coverage.).

As the record and the above case law establish, the exclusion clearly applies to bar coverage for the <u>Aftousmis</u> action. The only possible exception would be if the defendants proved adequate insurance within the meaning of the insurance contracts. To date, however, despite repeated requests for such information and extensive discovery, defendants have failed to provide any such proof.  Further, discovery is now closed and Forthright swears that it has no other responsive documents in its possession. **(McCormack Dec. Ex. T)** Thus, the Court should grant Atlantic Casualty's motion for summary judgment as a matter of settled New York law.

## POINT II

### <u>THE GROSS LATE NOTICE BARS ANY COVERAGE</u>

The Atlantic Casualty insurance contracts require, as a *condition precedent* to coverage, that each alleged insured provide Atlantic Casualty with timely written notice of an occurrence and immediate written notice of any claim or suit. The Atlantic Casualty insurance contracts also require that each alleged insured immediately forward all suit and claim-related papers to Atlantic Casualty and that it otherwise cooperate with Atlantic Casualty's investigation and defense of the claim. The record establishes that the claim was known since March of 2004, but notice was not provided to Atlantic Casualty until February 28, 2007.  Thus, under well-settled New York law, this nearly three-year failure to provide the required timely written notice relieves Atlantic Casualty of any possible obligation to provide coverage for the <u>Aftousmis</u> action.

A.    **New York Law Firmly Embraces Atlantic Casualty's Late Notice Defense**

Under New York law, notice to Atlantic Casualty, by virtue of both the explicit terms of the Atlantic Casualty insurance contract and the New York courts' views of such terms, is a *condition precedent* for Atlantic Casualty to have any possible obligation to defend or indemnify anyone with respect to the Aftousmis action. Forthright's and Wonder Works' failure to satisfy the strict notice requirements vitiates any such obligation under the Atlantic Casualty insurance contracts. See Amer. Home Products Assur. Co. v. Internat'l Ins. Co., 90 N.Y.2d 433, 661 N.Y.S.2d 584 (1997) (failure to satisfy the notice requirement vitiates coverage under New York law); Security Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 905 (1972) (insured's late notice is a complete and total bar to coverage); State of N.Y. v. Blank, 27 F.3d 783, 793 (2d Cir. 1994) ("where the insured fails to comply with [the notice requirement], the insurer is relieved of its duty *not only* to indemnify, but *also* to defend the insured.") (emphasis added); Comm. Union Ins. Co. v. Internat'l Flavors & Fragrances, Inc., 822 F.2d 267, 271 (2d Cir. 1987) (compliance with the notice provision in an insurance policy is a condition precedent to an insurer's coverage obligation under New York law).

Moreover, the insured's obligation to provide notice accrues when "the circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim." International Flavors, 822 F.2d at 272; Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos., 748 F.2d 118, 121-122 (2d Cir. 1984) ("New York law ... requires that the time of discovery [of a potential claim] be determined according to an objective test, based on the conclusions that a reasonable person would draw from the facts known to the insured"); Ogden Corp. v. Travelers Indem. Co., 924 F.2d 39, 43 (2d Cir. 1991) ("[t]he test for determining whether notice of occurrence must be given to a particular insurer is whether the circumstances

known to the insured at that time would have suggested to a reasonable person the possibility of a claim ....") (citations omitted).  Plainly, the notice conditions of the Atlantic Casualty insurance contracts serve an important purpose for *both* Atlantic Casualty and any alleged insured. As the Court of Appeals put it, "[n]otice provisions in insurance policies afford the insurer an opportunity to protect itself ...." Acker-Fitzsimons, 31 N.Y.2d at 440; Asbeka Indus. v. Travelers Indem. Co., 831 F. Supp. 74, 85, n.13 (E.D.N.Y. 1993) (proper notice is required under New York law to enable an insurer to investigate claims against the alleged insured, to preserve evidence and to protect itself).

Finally, New York courts have consistently and without exception held that an insurer, such as Atlantic Casualty, need not show any prejudice resulting from its insured's late notice to defeat the insured's demand that the insurer defend and indemnify it in the underlying litigation. See Argo Corp. v. Greater N.Y. Mut. Ins. Co., 4 N.Y.3d 332, 340, 794 N.Y.S.2d 704 (2005) ("Argo's delay was unreasonable as a matter of law and thus, its failure to timely notify GNY vitiates the contract. GNY was not required to show prejudice before declining coverage for late notice of law suit."); Acker-Fitzsimons, 31 N.Y.2d at 440, 340 N.Y.S.2d at 905 ("a failure to satisfy the notice requirement vitiates the policy ... and the insurer *need not show prejudice* before it can assert the defense of non-compliance") (emphasis added); Axa Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus., Inc., 891 F. Supp. 978 (S.D.N.Y. 1995), aff'd, 84 F.3d 622 (2d Cir. 1996) ("Under New York law, the notice provisions of an insurance policy are a *condition precedent* to the insurer's liability, and the insured's failure to comply with these provisions relieves the insurer of liability *regardless of whether the insurer was prejudiced* by the delay.") (emphasis added).

**B.**    **The Evidence Establishes Late Notice As A Matter Of New York Law**

Here, the evidence establishes the full extent of the late notice to Atlantic Casualty. Forthright's work at the project began in February 2004. **(McCormack Dec. Ex. J)** Kanevsky testified that Forthright was at the project every day and supervised the work at the project. **(McCormack Dec. Ex. K, p. 51, at 24-25; p. 52, at 2-3; p. 57, at 19-21; p. 69, at 11-18)** Moreover, Kanevsky testified that a Wonder Works' representative was also present at the project on a daily basis and when Forthright first inspected the premises. **(Id., p. 65, at 4-8)** Kanevsky also stated that the demolition work at the project ended in March 2004. **(McCormack Dec. Ex. J)** Forthright's interrogatory responses in the declaratory judgment action indicate that it did a "damage inspection" of the premises in March 2004. **(McCormack Dec. Ex. M)** Further, Kanevsky testified that he inspected the interior of the premises in late 2005 or 2006 after being contacted by the building's superintendent and observed cracks in the basement. **(McCormack Dec. Ex. K, p. 93, at 16-21; p. 95, at 12-24)** Kanevsky later inspected the premises after the owner complained about cracks. **(Id., p. 102, at 16-24; p. 103, at 7-24)** In late 2004, in response to the owner's complaints, Kanevsky offered to "fix anything in the building" when Forthright's work is finished." **(Id., p. 104, at 2-7)** According to Kanevsky, Forthright also placed crack monitors on the walls of the premises to determine if the cracks were getting larger. **(Id., p. 128, at 19-23-25; p. 129, at 2-7)** In addition, in July 2005 and August 2006, Aftousmis filed complaints with the New York City Department of Buildings concerning the cracks allegedly caused by Forthright's and Wonder Works' work at the project. **(McCormack Dec. Ex. S)**

As the above illustrates, the alleged damage was known since March 2004, when Forthright did a damage inspection of the premises. Moreover, Forthright inspected the premises

on several occasions afterwards, including in response to complaints by the underlying plaintiffs in late 2004. Moreover, by at least July 2005, the underlying plaintiffs had filed complaints with the Department of Buildings regarding the cracks. In addition, testimony confirms that Forthright and Wonder Works were at the project daily. **(McCormack Dec. Ex. K, pp. 51, 65)** Atlantic Casualty, however, did not receive notice of the incident, claim, and suit until February 28, 2007. **(Brauns Aff. ¶5)**

Thus, there is no coverage for the claim since no one provided any notice of the alleged damage, complaints, and claim to Atlantic Casualty for almost three years. This delay is unreasonable as a matter of law and frees Atlantic Casualty "as a matter of law from [any] obligation to defend and indemnify" its alleged insured. Columbus Trust Co. v. Hanover Ins. Co., 50 A.D.2d 798, 375 N.Y.S.2d 628, 629 (2d Dep't 1975). As the court stated in Safer v. Government Employees Ins. Co., 254 A.D.2d 344, 678 N.Y.S.2d 667 (2d Dep't 1998):

> The plaintiff's delay in notifying GEICO of the incident until more than **one month** after he was served with Mayerhoff's Amended Complaint was unreasonable as a matter of law. Therefore, that branch of the plaintiff's motion which was for summary judgment declaring that the defendant must indemnify the plaintiff in the action entitled Mayerhoff v. Safer, should have been denied, and the matter is remitted for declaration and in favor of the defendant [insurance company]. Id. (citations omitted).

In Travelers Cas. and Sur. Co. v. Dormitory Authority - State of N.Y., 2008 U.S. Dist. LEXIS 48751, at *2 (S.D.N.Y. June 25, 2008), this very Court recently ruled that "a seven-month delay in providing notice of a claim to an insurer is unreasonable and relieves the insurer of any obligation to provide coverage in this complex construction litigation." Similarly, in Steinberg v. Hermitage Ins. Co., 809 N.Y.S.2d 569 (2d Dep't 2006), the claimant was injured on the insured's premises and advised the insured, by November 19, 1997 letter, of the claimant's

- 23 -

injuries and that the insured should notify its insurer. The insurer, however, did not receive notice of the accident until its agent sent a letter dated January 20, 1998.  The Appellate Division, Second Department, held that the insured's 57-day delay in providing notice of the accident to the insurer entitled the insurer to summary judgment as a matter of law. Id. at 3. Likewise, in Saraco Glass Corp. v. Yeled V'Yalda Early Childhood Center, Inc., 2006 N.Y. Misc. LEXIS 598 (Sup. Ct., Kings Cty. March 28, 2006), the insured waited six months to notify its insurer of two notice of violation letters it received due to its defective construction work and a letter discussing claims for damages against it. The Court held that the insured's delay was "inexplicable", and barred coverage for its claim due to late notice to the insurer.  Id. at 23.

Indeed, there is a plethora of New York court decisions barring coverage where the late notice was much shorter than the three-year late notice in the present case. See e.g. Haas Tobacco Co. v. Amer. Fidelity Co., 226 N.Y. 343, 345, 123 N.E. 755 (1919) (**10 days**); Rushing v. Comm. Cas. Ins. Co., 251 N.Y. 302, 304, 167 N.E. 450 (1929) (**22 days**); Safer v. GEICO, 254 A.D.2d 344, 678 N.Y.S.2d 667, (2d Dep't 1998) (**one month**); Deso v. London & Lancashire Indem. Co., 3 N.Y.2d 127, 130, 164 N.Y.S.2d 689, 692 (1957); Heydt Contr. Corp. v. Amer. Home Assur. Co., 146 A.D.2d 497, 499-500, 536 N.Y.S.2d 770, 772-73 (1st Dep't 1989), appeal dismissed mem., 74 N.Y.2d 651, 542 N.Y.S.2d 520 (1989) (**four months**); Murphy Temple A.M.E. Zion Church v. Mt. Vernon Fire Ins. Co., 199 A.D.2d 374, 605 N.Y.S.2d 370, 371-72 (2d Dep't 1993) (**nine months**); Axa Marine, 891 F. Supp. at 983 (**ten months**), aff'd, 84 F.3d 622 (2d Cir. 1996).

Here, the egregious failure to provide timely written notice for nearly three years is certainly far more unreasonable than the 10 days, 22 days, 51 days, one month, four months, nine months, and ten months or longer delays for which New York courts routinely bar coverage

as a matter of law. Thus, by declaring that Atlantic Casualty has no coverage obligation for the
<u>Aftousmis</u> action because of the unreasonable delay in providing notice, this Court would follow
not only the well-reasoned decisions cited above, but also the founding principle of *stare decisis*.

### C.    <u>Atlantic Casualty Was Prejudiced By The Gross Late Notice</u>

The gross delay in notifying Atlantic Casualty of the claim vitiates any coverage
obligation under the Atlantic Casualty insurance contracts as a matter of law. Although the late
notice is a complete defense and Atlantic Casualty has no obligation to establish prejudice, the
gross late notice is a precise example of why New York courts routinely grant summary
judgment to insurers and consistently presume that insurers, such as Atlantic Casualty, suffer
prejudice as a result of an alleged insured's late notice. For example, during the *nearly three-
year* delay between Forthright's damage inspection and the date of first written notice Atlantic
Casualty, Atlantic Casualty was deprived of its contractual right to protect itself. Indeed, this
egregious delay deprived Atlantic Casualty of the opportunity to promptly investigate the
underlying claim, of the ability to conduct a contemporaneous investigation of Forthright's and
Wonder Works' involvement in the circumstances concerning the alleged damage; of the ability
to inspect the property before the conditions changed and extensive costs were incurred; of the
opportunity to question witnesses about Forthright's and Wonder Works' alleged negligence
before their memories faded, or before the witnesses left the jurisdiction; of the opportunity to
evaluate possible compromises; and of the opportunity to take action to limit liability, risks, and
exposure for which Atlantic Casualty is now being asked to indemnify. **(Brauns Aff. ¶17)**

Accordingly, based on the plethora of evidence provided and well-settled New
York law, the gross breach of the Atlantic Casualty insurance contracts bars any coverage for
this claim.

**POINT III**

**THE MATERIAL MISREPRESENTATIONS IN THE INSURANCE
APPLICATIONS BAR COVERAGE**

The material misrepresentations and failure to disclose material information in the applications for the Atlantic Casualty insurance contracts bar any coverage. In the insurance applications, Forthright represented that its business is "drywall / wallboard installation," "residential carpentry", and "painting." **(Parraga Aff. Ex. A)** Further, with respect to questions regarding whether there would be any demolition exposure and whether structural operations were contemplated, Forthright answered "no." **(Id.)** Forthright also answered "no" to whether, during the past 5 years, it worked on original structural construction, townhouses or did condominium, excavation, foundation, underpinning, earth moving, or tunneling work. **(Id.)** Also, when asked what Forthright used subcontractors for, it responded only "Painting." **(Id.)** Each of these statements was inaccurate and bars coverage as a matter of law.

The Wonder Works / Forthright contract demonstrates that Forthright contracted to perform and was responsible for the construction of the entire five and seven story condominium complex project. **(McCormack Dec. Ex. E)** That included the entire demolition, excavation, and underpinning work. **(McCormack Dec. Ex. K, p. 37)** Forthright also hired all the subcontractors for the project, including the excavation and demolition subcontractors. **(McCormack Dec. Exs. F, G, H, I, J, and L)**

Thus, as shown, Forthright's work at the project was clearly contrary to the representations made on the insurance applications. Indeed, Forthright misrepresented that: (1) it did not work on condominiums, (2) it did not do excavation, foundation, and underpinning work, (3) it only hired subcontractors to do painting, (4) it did not do underground work, (5) it had not done such work in the last five years, and (6) it only did drywall and residential carpentry work.

Indeed, the insurance applications – even those incepting after Forthright's work at the project began in February 2004 – specifically asked about excavation, underground, and underpinning work and whether Forthright ever did or was contemplating constructing or working on condominiums. Forthright responded "no" to each such question. **(Parraga Aff. Ex. A)**

Under New York statutory and common law, Forthright's material misrepresentations and failure to disclose material information entitle Atlantic Casualty to summary judgment. See N.Y. Ins. Law § 3105; Parmar v. Hermitage Ins. Co., 21 A.D.3d 538, 800 N.Y.S.2d 726 (2d Dep't 2005) (Insurer denies coverage for late notice and material misrepresentation in the insurance application, and then moves for summary judgment seeking to rescind the policy due to the misrepresentation.); Heiser v. Union Cent. Life Ins. Co., 1995 U.S. Dist. LEXIS 8271 (N.D.N.Y. 1995) ("Generally, under New York law an insurer is entitled to reject a claim and rescind a policy where it learns that the insured materially misrepresented facts on his application.").

Forthright's misrepresentations and failure to disclose material information were material to Atlantic Casualty's assessment of the risk and decision to issue the insurance contracts. Indeed, had Forthright revealed the true nature of its work on the insurance applications, Atlantic Casualty would not have issued the insurance contracts. **(Parraga Aff. ¶10)** See N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.), 266 F.3d 112, 123 (2nd Cir. 2001) ("A non-disclosed fact is material if it would have affected the insurer's decision to insure at all or at a particular premium."); Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP, 379 F. Supp. 2d 442, 453 (S.D.N.Y. 2005) ("A misrepresentation is material if 'knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer' to issue the exact policy the insurer did issue.").

Accordingly, Forthright's material misrepresentations and failure to disclose material information on the insurance applications bar coverage and entitle Atlantic Casualty to summary judgment as a matter of law.

## POINT IV

### THE SUBSIDENCE EXCLUSION BARS COVERAGE FOR THE AFTOUSMIS ACTION

The Exclusion – Subsidence also bars coverage for the Aftousmis action. It bars coverage for damage "caused by, resulting from, attributable to or contributed to, or aggravated by the subsidence of land as a result of … earth sinking or shifting, resulting from the operations of the Named Insured or any other subcontractor of the Named Insured…." **(Brauns Aff. Ex. A)**

Here, the claim alleges that Forthright's and Wonder Works' excavation of holes more than ten feet below the street line of the underlying plaintiffs' premises and extensive underpinning and related work caused major cracks to develop in the walls and cement floor of the underlying plaintiffs' adjoining premises. **(McCormack Dec. Ex. A)** Kanevsky testified that he observed cracks and a hole in the basement of the premises on several occasions. **(McCormack Dec. Ex. K, pp. 93, 95, 102, 103)** On July 22, 2005, the underlying plaintiffs complained to the New York City Department of Buildings about the settlement damage caused by Forthright's and Wonder Works' adjacent underpinning and excavation work. **(McCormack Dec. Ex. S)** Significantly, in a May 19, 2005 report, engineer Wiktor Wasilewski states that a vertical crack on the east well of the underlying plaintiffs' adjoining premises is "indicative of a recent shifting of the foundation." **(McCormack Dec. Ex. P, p. 2)** It also notes cracks caused by Forthright's and Wonder Works' excavation and underpinning work and states that Forthright's and Wonder Works' excavation work caused the underlying plaintiffs' adjoining premises to be without any lateral support. **(Id.)** Further, a February 6, 2006 expert report by Ainso &

- 28 -

Associates, Inc. states that the basement has a "major crack a few feet from the East Wall where the underpinning took place." **(McCormack Dec. Ex. Q, p. 1)**  It also states that "the other major fault is the separation between the floor structure and the East wall at the first floor level." **(Id.)**  Finally, a March 30, 2007 "Report on Cracks and Damages" by Ainso & Associates notes a "serious crack" in the east wall of the premises, a hole in the floor slab in the boiler room, and a "major hollow" also in the boiler room. The report states that the damage was due to Forthright's and Wonder Works' underpinning work. **(McCormack Dec. Ex. R, p. 1)**  Further, the report also mentions the "separation between the first floor structure and the east wall" due to the underpinning and excavation work.  **(Id.)**

Simply stated, the claim alleges that Forthright's and Wonder Works' negligent excavation, underpinning, and other work was more than ten feet deep. This work caused earth shifting, structural separation, cracks, and other damage to the underlying plaintiffs' adjoining premises. These allegations squarely fall under the subsidence exclusion in the Atlantic Casualty insurance contracts and, thus, there is no coverage for this claim. See Labate v. Liberty Mut. Ins. Co., 45 A.D.3d 811, 847 N.Y.S.2d 128 (2d Dep't 2007) (Court holds that an "Earth movement" exclusion in a homeowner's insurance policy bars coverage for damages to the insured's home due to the settling and cracked of walls and floors of the insured's home.); Cali v. Merrimack Mut. Fire Ins. Co., 43 A.D.3d 415, 841 N.Y.S.2d 128 (2d Dep't 2007)  (Court holds that an "earth movement" exclusion bars coverage under a homeowner's insurance policy for a claim alleging that the concrete slab foundation supporting the insured's home settled, sank, and cracked.).  Accordingly, Atlantic Casualty's motion for summary judgment should be granted.

## POINT V

## THE OTHER INSURANCE DEFENSE BARS COVERAGE
## FOR THE AFTOUSMIS ACTION

This Court should also grant Atlantic Casualty's motion for summary judgment since both Forthright and Wonder Works have other insurance available for the Aftousmis action. The Atlantic Casualty insurance contracts expressly state that they are excess of any other insurance available to the insured. **(Brauns Aff. Ex. B)**  Here, Forthright's and Wonder Works' discovery responses indicate that Sirius America Insurance Company and Tower Insurance Company also provided general liability insurance to Forthright during the period of the alleged damage at the project. **(McCormack Dec. Exs. M and N)**  Moreover, Wonder Works had its own insurance with Arch Insurance during the periods of the alleged damage at the project. **(McCormack Dec. Ex. N)**  Further, both Wonder Works and Forthright commenced separate third-party actions in the Aftousmis action against subcontractors N&C, OMI, ATY, Monaco, and MMG seeking reimbursement for any liability and fees incurred in the defense of the Aftousmis action.  **(McCormack Dec. Exs. B and C)**

Thus, under the express terms of the Atlantic Casualty insurance contracts, the Atlantic Casualty insurance contracts are excess to the primary insurance provided by Sirius America, Tower Insurance, and Arch Insurance to Forthright and Wonder Works. Accordingly, there is no coverage for the Aftousmis action since the Atlantic Casualty insurance contracts are expressly excess to any such other insurance.

## POINT VI

### THE CLAIMS IN PROCESS EXCLUSION BARS
### <u>COVERAGE FOR THE AFTOUSMIS ACTION</u>

The Claims In Process Exclusion bars coverage for the <u>Aftousmis</u> action under the 11/24/2004-11/24/2005 and 11/24/2005-11/24/2006 Atlantic Casualty insurance contracts. The exclusion provides that there is no coverage for any "bodily injury" or property damage" claim that "first occurred" before the policy incepted or which is "in the process of occurring" on the date the policy incepted. Moreover, the exclusion applies regardless of whether the insured knew of the alleged damage. **(Brauns Aff. Ex. B)**

Here, the claim arises out Forthright's and Wonder Works' alleged negligent work that damaged the premises. **(McCormack Dec. Ex. A)**   Kanevsky stated that the demolition work at the project ended in March 2004. Also, Forthright did a "damage inspection" in March 2004. **(McCormack Dec. Exs. J and M)**  Kanevsky also stated that, in late 2004, after the claimant had complained about cracks in his basement, he again inspected the premises and observed several cracks. **(McCormack Dec. Ex. K, pp. 102, 103)** Moreover, the cracks worsened over time. **(McCormack Aff. Exs. P, Q, and R)** The Atlantic Casualty insurance contracts' periods are from 11/24/2003 – 11/24/2004, 11/24/2004 – 11/24/2005, and 11/24/2005 – 11/24/2006.

Based on the record and Kanevsky's own statements and testimony, the exclusion bars coverage under the 11/24/2004-11/24/2005 and 11/24/2005-11/24/2006 Atlantic Casualty insurance contracts since Kanevsky knew about the alleged damage by the damage inspection in March 2004. This was at least <u>eight months before</u> the 11/24/2004–11/24/2005 Atlantic Casualty insurance contract incepted. Moreover, Kanevsky concedes that he inspected the premises on several occasions. **(McCormack Dec. Ex. K, p. 102)**  Further, since the cracks worsened over

time, the claim clearly was "in the process of occurring" when the 11/24/2004-11/24/2005 and 11/24/2005-11/24/2006 insurance contracts incepted. Thus, there is no coverage for the claim under the 11/24/2004-11/24/2005 and 11/24/2005-11/24/2006 insurance contracts. Accordingly, the Court should grant Atlantic Casualty's motion for summary judgment.

**POINT VII**

**THERE IS NO COVERAGE SINCE THE CLAIM DOES
NOT FALL WITHIN THE SCOPE OF THE
CLASSIFICATION LIMITATION ENDORSEMENT IN
THE 11/24/05-06 ATLANTIC CASUALTY INSURANCE CONTRACT**

There is no coverage since the alleged damage arises out of work outside the scope of the risk that Atlantic Casualty agreed to insure under the Classification Limitation endorsement in the 11/24/2005-11/24/2006 Atlantic Casualty insurance contract. The endorsement limits coverage to property damage "arising out of only those operations described by the classification on the Commercial General Liability Coverage Declarations, its endorsements, and supplements." **(Brauns Aff. Ex. B)** The business described on the Atlantic Casualty insurance contract is "dry wall or wallboard installation." (Code No. 92338). **(Id.)** It also states that carpentry classification consists of "construction of residential property not exceeding three stories in height." (Code No. 91340) **(Id.)** Finally, with respect to contractors, it states that the classification is "subcontracted work – in connection with building construction, reconstruction, repair or erection – one or two family dwellings." (Code No. 91583) **(Id.)**

Here, Wonder Works hired Forthright as its subcontractor to build the project. **(McCormack Dec. Ex. E)** Kanevsky's own words confirm that the project required the construction of a condominium complex consisting of a five-story building and a seven-story building. **(McCormack Dec. Ex. J)** The project also involved demolition, underpinning, excavation, and related work. **(McCormack Dec. Ex. J; K, pp. 37, 51-52, 57)** Plainly, the work

Forthright contracted to perform for Wonder Works was not within the classification limitation of the 11/24/2005-11/24/2006 Atlantic Casualty insurance contract. The type of insured work was limited to "Drywall Install, Carpentry." Further, the work was limited to residences "<u>not exceeding three stories in height</u>." (code 91340) **(Brauns Aff. Ex. B)** (emphasis added). Here, the project required the construction of a five-story building and a seven-story building as part of a condominium complex, including all excavation, underpinning, and demolition work. **(McCormack Dec. Exs. J, K, 37, 51-52, 57)** The work clearly exceeded the scope of the endorsement and is thus not covered by the 11/24/2005-11/24/2006 insurance contract.

## CONCLUSION

For the reasons expressed herein, Atlantic Casualty respectfully requests that this Court grant its motion for summary judgment and declare that (1) the independent contractor / subcontractor exclusion bars coverage for the <u>Aftousmis</u> action, (2) Forthright's and Wonder Works' gross late notice also bars coverage, (3) Forthright's material misrepresentations on the Atlantic Casualty insurance contracts bar coverage, (4) the Subsidence exclusion applies to bar coverage (5) Forthright and Wonder Works have other insurance available for the <u>Aftousmis</u> action, (6) the Claims In Process Exclusion applies to bar coverage, and (7) the alleged damage was not the result of work within the Classification Limitation Endorsement of the 11/24/05-06 insurance contract. Atlantic Casualty also requests that the Court grant and such other relief that the Court deems just and proper.

Dated: New York, New York
       August 1, 2008

                                        Aidan M. McCormack, Esq.
                                        Cyril E. Smith, Esq.
                                        Nixon Peabody LLP
                                        *Attorneys for Plaintiff*
                                        *Atlantic Casualty Insurance Company*
                                        437 Madison Avenue
                                        New York, New York 10022
                                        (212) 940-3000

TO:    Michael L. Smar, Esq.
       McCabe, Collins, McGeough & Fowler, LLP
       *Attorneys for Defendant*
       *Wonder Works Construction Corp.*
       346 Westbury Avenue – P.O. Box 9000
       Carle Place, New York  11514

       William Pager, Esq.
       Law Offices of William Pager
       *Attorneys for Defendant*
       Forthright Construction, Inc.
       470 Kings Highway
       Brooklyn, New York 11223

       Steve Newman, Esq.
       Law Offices of Steve Newman
       *Attorneys for Defendant*
       Vasilis and Constantia Aftousmis
       65 Broadway, Suite 825
       New York, New York  10006

11078946.2