UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ATLANTIC CASUALTY
INSURANCE COMPANY,

                Plaintiff,

                                                Case No. 07 CIV 4098

    v.

FORTHRIGHT CONSTRUCTION, INC.,
WONDER WORKS CONSTRUCTION CORP.,
VASILIS AFTOUSMIS and CONSTANTIA
AFTOUSMIS,

                Defendants.
------------------------------------------------------------X

## ATLANTIC CASUALTY'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

       Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby files this Statement of Material Facts in support of its Motion for Summary Judgment in the above-captioned action as follows:

**I.**      **The *Aftousmis* Action**

      1.      On or about February, 22, 2007, the underlying plaintiffs filed an action entitled <u>Vasilis Aftousmis and Constantia Aftousmis v. Wonder Works Construction Corp. and Forthright Construction, Inc.</u>, Index No. 102479/07, Supreme Court of the State of New York, County of New York (the "Aftousmis action"), arising out of the alleged damage to their building located at 97 Quentin Road, Brooklyn, New York. **(McCormack Dec. Ex. A)**[1]

---

[1] References to "McCormack Dec." are to the accompanying Declaration of Aidan M. McCormack, with exhibits, in support of Atlantic Casualty's motion for summary judgment, and dated August 1, 2008.

2. The <u>Aftousmis</u> action alleges that the plaintiffs owned the premises adjoining the project, and that the excavation work for the project was allegedly done at a depth of "more than ten feet below the street line of 97 Quentin Road, Brooklyn, New York." **(Id. at ¶8)** It also alleges that Forthright and Wonder Works allegedly "wrongfully neglected to request permission to excavate" the soil beneath the plaintiffs' premises and failed to notify the plaintiffs of the excavation near to and underneath their premises. **(Id. at ¶10, 28)** In addition, Forthright and Wonder Works allegedly wrongfully neglected to provide proper foundations to protect plaintiffs' walls and premises and ensure that they would be safe once excavation commenced. As a result, the complaint alleges, the excavation of the soil caused cracks to develop in the walls and cement floor of the plaintiffs' premises.

3. On June 12, 2007, Forthright filed a third-party complaint against subcontractors MMG Design, Inc. ("MMG"), ATY Construction ("ATY"), O.M.I. Construction Co., Inc. ("OMI"), N&C Iron Works, Inc. ("N&C"), and Monaco Construction Corp. ("Monaco"). **(McCormack Dec. Ex. B)**

4. On September 26, 2007, Wonder Works filed a Second Third-Party Action against the same defendants in the third-party action. **(McCormack Dec. Ex. C)** Both third-party complaints allege that each defendant "entered into a written contract with regard to the premises," and that the claims alleged in the Aftousmis action arose of the third-party defendants' negligence. **(Id. at ¶26)**

II. **The Wonder Works – Forthright Subcontract**

5. On or about November 17, 2003, Wonder Works contracted with Quentin Terrace LLC, the owner, to build the project. **(McCormack Dec. Ex. D)**

2

6.      On or about February 19, 2004, Wonder Works and Forthright entered into a "Subcontract" with respect to the construction of the project. **(McCormack Dec. Ex. E)**

7.      The subcontract lists Wonder Works as the "Contractor" and Forthright as the "Subcontractor." It also describes Forthright's scope of work as follows:

> 1.1     The Subcontractor shall perform and furnish all the work, labor, services, materials, plans, equipment, tools, scaffolds, appliances and all other things necessary for the completion of the Subcontractor's Work for the project known as QUENTIN TERRACE, located at 167 West 10th Street/99-101 Quentin Road and 103-105 Quentin Road, Brooklyn, NY…. **(Id.)**

**III.    Forthright's Subcontracts**

8.      On or about February 19, 2004, Forthright and MMG Design, Inc. ("MMG") executed a document detailing the scope of the excavation and underpinning work at the project. **(McCormack Dec. Ex. F)**

9.      On or about June 1, 2004, Forthright entered into a subcontract with ATY Construction ("ATY") with respect to the project. The contract lists Forthright as the "Contractor" and ATY as the "Subcontractor," and states that ATY is to perform "Cast In Place Concrete, Sheeting, Excavation," and underpinning work at the project. **(McCormack Dec. Ex. G)**

10.     On or about March 29, 2005, Forthright entered into a subcontract N&C Iron Works ("N&C"). The subcontract lists Forthright as the "Contractor" and N&C as the "Structural Steel Subcontractor." **(McCormack Dec. Ex. H)**

11.     On or about February 8, 2006, Forthright and OMI Construction Co., Inc. ("OMI") executed a "Contract-Estimate" with respect to the project. The Contract-Estimate

3

stated that the work involved the installation of all brick veneer and stones and construction of walls at the project.

### IV. Mark Kanevsky's March 20, 2007 Statement

12. On March 20, 2007, Forthright, by Mark Kanevsky, provided a written statement with respect to the claim. In the statement, Kanevsky states that Forthright is a general contracting company that "managed construction projects only, with all of the labor subcontracted out to various companies." **(McCormack Dec. Ex. J)** Among other things, Kanevsky states as follows:

- The project involved the construction of a five-story and a seven-story building as part of a condominium complex.

- Wonder Works' representative would visit the site once a week, and the day-to-day running of the project was Forthright's responsibility.

- Forthright hired all of the subcontractors for the project, and the work project began around the time of the contract (February 19, 2004).

- MMG was the demolition subcontractor, and demolition work was completed in March 2004.

- Forthright also contracted MMG to do excavation and underpinning work at the project. The only complaint during demolition was that the "walls of the remaining building needed to be waterproofed since we demolished the 2-story building that was adjacent to it." Forthright waterproofed the walls "to avoid any problems."

- In June 2004, Forthright hired ATY to do the excavation, underpinning and shoring work. ATY's work involved driving piles around the perimeter of the site

4

and "underpinning the building at 97 Quentin." The underpinning work was done in late 2004.

- In late 2004, when the excavation work was completed, "we examined the basement at 97 Quentin and found many cracks in the foundation (but he complained only about one)...."

V.     **Mark Kanevsky's Deposition Testimony**

13.    On May 13, 2008, Kanevsky, on behalf of Forthright, testified in the Aftousmis action. **(McCormack Dec. Ex. K)** Among other things, Kanevsky testified that:

- He is a vice-president of Forthright and his duties involve overseeing the entire project from start to finish. Id., p. 26, at 4-7; p. 27, at 5-21; p. 37, at 2-12.

- Forthright and Wonder Works were both general contractors at the project, and Forthright's work at the project began in 2004. Id., p. 27, at 22-25; p. 28, at 2-15. The project took four years to complete. Id., p. 77, at 5-10.

- Forthright was responsible for doing the excavation and underpinning work at the project. Id., p. 37, at 14-20.

- "Everybody who used to be on the project was under my supervision." Id., p. 38, at 20-21.

- Forthright contracted with ATY to do the excavation, foundation, and underpinning work in 2004. Id., p. 40, at 3-13; p. 48, at 4-5. Forthright also contracted with MMG Design to do the demolition work at the project. Id., p. 41, at 15-24. Forthright contracted with OMI in 2004. Id., p. 109, at 5-11.

5

- Forthright was at the project every day during the excavation and underpinning work and supervised the work. Id., p. 51, at 24-25; p. 52, at 2-3; p. 57, at 19-21; p. 69, at 11-18.

- A Wonder Works' representative was present at the project on a daily basis and when Forthright first inspected the premises. Id., p. 65, at 4-8.

- Underpinning work "involves partial of digging under the foundation, filling those digging holes with reinforced concrete and dry packing of the gap between existing foundation and new underpinning." Id., p. 57, at 9-14.

- Kanevsky inspected the interior of the premises in late 2005 or 2006 after being contacted by the building's superintendent and observed cracks in the basement. Id., p. 93, at 16-21; p. 95, at 12-24.

- Kanevsky inspected the premises again after the owner of the premises complained about cracks. Id., p. 102, at 16-24; p. 103, at 7-24. In response, Kanevsky offered to "fix anything in the building" when Forthright's work is finished. Id., p. 104, at 2-7.

- Forthright placed crack monitors on the walls of the premises to determine if the cracks were getting larger. Id., p. 128, at 19-23-25; p. 129, at 2-7.

**VI.    Rinat Yanborisov's Affidavit In The Aftousmis Action**

14.    On August 1, 2007, Forthright's co-owner, Rinat Yanborisov, provided a sworn affidavit in support of Forthright's opposition to the plaintiffs' motion for summary judgment in the Aftousmis action. **(McCormack Dec. Ex. L)**

6

15. Among other things, the affidavit stated that: (1) Forthright contracted with Wonder Works on February 19, 2004; (2) the Wonder Works-Forthright subcontract "required excavation and underpinning work as per the engineering plans approved by the New York City Department of Buildings;" (3) Forthright subcontracted MMG to "perform the demolition, excavation and underpinning" work; and (4) ATY also "performed underpinning, pile driving, dry packing and foundation work."

### VII. The Other Insurance Policies

16. Both Forthright and Wonder Works have other insurance with respect to this claim. In their discovery responses, Forthright and Wonder Works list the following general liability policies issued to Forthright: (1) Tower Insurance Company of New York (Policy No. CGL2610688; 05/26/06-07; 05/26/07-08) and (2) Sirius America Insurance Company (Policy No. IRS105049 (05/24/04-05); IRS107746 (05/24/05-06)) as policies under which they are insureds or are entitled to coverage. **(McCormack Dec. Exs. M and N)** Wonder Works' discovery responses state that it had its own insurance with Arch Insurance beginning in 2003. **(McCormack Dec. Ex. N)**

### VIII. The Late Notice To Atlantic Casualty

17. By letter dated February 27, 2007, Essential Services & Programs, LLC, the third-party administrator for Wonder Works, tendered the claim to B.R. Vital Brokerage, Inc. ("BR Vital"), Forthright's broker.

18. On February 28, 2007, Atlantic Casualty received first notice of the incident and claim. **(Brauns Aff. ¶5)**[2] The notice was years after Forthright did a damage inspection of the

---

[2] References to "Brauns Aff." are to the accompanying Affidavit of Ryan Brauns, with exhibits, in support of Atlantic Casualty's motion for summary judgment.

premises in March 2004, years after Mr. Aftousmis complained about cracks in his basement in late 2004, and years after several visits by Kanevsky to the premises to inspect the damage in response to the claims. **(McCormack Dec. Exs. J and K)**

### IX. The Declaratory Judgment Action

19. On May 25, 2007, Atlantic Casualty filed a declaratory judgment action against Forthright, Wonder Works, and Vasilis and Constantia Aftousmis. **(McCormack Dec. Ex. O)**

20. In the declaratory judgment action, Atlantic Casualty seeks a declaration that it owes no coverage obligation with respect to the Aftousmis action. **(Id.)**

### X. The Atlantic Casualty Insurance Contracts

21. Atlantic Casualty Insurance Company issued to Forthright Construction, Inc. of 2240 McDonald Avenue, Brooklyn, New York 11223, insurance contracts numbered L036000522, with a policy period of 11/24/03 – 11/24/04; L036001127, with a policy period of 11/24/04 – 11/24/05; and L036001737, with a policy period of 11/24/05 – 11/24/06 (collectively, the "Atlantic Casualty insurance contracts"). **(Brauns Aff. Ex. B)**

22. The Atlantic Casualty insurance contracts include the following provisions:

**SECTION I COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1. Insuring Agreement**

        a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1)    The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

    (2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.

b.    This insurance applies to "bodily injury" and "property damage" only if:

    (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)    The "bodily injury" or "property damage" occurs during the policy period; …

\* \* \*

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS …**

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    (1)    How, when and where the "occurrence" or offense took place;

    (2)    The names and addresses of any injured persons and witnesses; and

    (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

    (1)    Immediately record the specifics of the claim or "suit" and the date received; and

    (2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    You and any other involved insured must:

    (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

    (2)    Authorize us to obtain records and other information;

  (3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.  No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

* * *

4.  **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

  a.  **Primary Insurance**

  This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

  b.  **Excess Insurance**

  This insurance is excess over:

  (1)  Any of the other insurance, whether primary, excess, contingent or on any other basis:

    (a)  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (b)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    (c)  That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    (d)  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I Coverage A Bodily Injury And Property Damage Liability.

  (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

  When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

\* \* \*

## EXCLUSIONS/LIMITATIONS - COMBINATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

\* \* \*

### EXCLUSION – INDEPENDENT CONTRACTORS/SUBCONTRACTORS

You or any insured are not covered for claims, loss, costs or expense arising out of the actions of independent contractors/subcontractors for or on behalf of any insured.

\* \* \*

### EXCLUSION – SUBSIDENCE

In consideration of the premium charged, it is hereby understood and agreed that liability for bodily injury or property damage caused by, resulting from, attributable to or contributed to, or aggravated by the subsidence of land as a result of a landslide, mud flow, earth sinking or shifting, resulting from operations of the Named Insured or any other subcontractor of the Named Insured is excluded.

\* \* \*

### EXCLUSION – CLAIMS IN PROCESS

Paragraphs **b. (3), c. and d.** under **Insuring Agreement of Section I – Coverage A – Bodily Injury and Property Damage Liability,** are deleted. The following is added to 2. Exclusions under **Section I – Coverage A – Bodily Injury and Property Damage Liability:**

1. any loss or claim for damages arising out of or related to "bodily injury" or "property damage", whether known or unknown:

  a. which first occurred prior to the inception date of this policy; or
  b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy.

2. any loss or claim for damages arising out of ore related to "bodily injury" or "property damage", whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.

11

We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

\* \* \*

Atlantic Casualty insurance contract number L036001737 (11/24/05-06) also contains the following provisions:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART – DECLARATIONS**

\* \* \*

| Classification | Code No. |
|---|---|
| Dry Wall or Wallboard Installation | 92338 |

\* \* \*

| | |
|---|---|
| Carpentry – construction of residential property not exceeding three stories in height. | 91340 |
| Contractors – subcontracted work – in connection with building construction, reconstruction, repair or erection – one or two family dwellings. | 91583 |

\* \* \*

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**CLASSIFICATION LIMITATION**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to and no duty to defend is provided for "bodily injury", "property damage", "personal and advertising injury" or medical payments for operations which are not classified or shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements.

\* \* \*

Atlantic Casualty insurance contracts numbered L036000522 (11/24/2003-11/24/2004) and L036001737 (11/24/2005-11/24/2006) also contain the following provisions:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**SUBCONTRACTORS – DEFINITION OF ADEQUATELY INSURED**

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The classifications used in this policy containing the words "Contractors – Subcontracted Work" apply to that portion of the operations performed for the insured by "adequately insured" subcontractors.

This insurance does not apply to any claim arising from subcontracted work unless:

1. The subcontractor maintains insurance in force for his operations with at least the following Limits of Liability:

    A.  General Aggregate Limit
        (Other than Products –Completed Operations)     $1,000,000
        Products-Completed Operations Aggregate Limit   $1,000,000
        Each Occurrence Limit                           $1,000,000

    B.  Or the limits provided by this policy, whichever are less; and

2. You maintain a current certificate of insurance for the subcontractor; and

3. A hold harmless agreement in favor of you has been executed with the subcontractor; and/or

4. You are endorsed to the subcontractors Commercial General Liability policy as an additional insured.

If all of the above conditions are met, the subcontractor will be considered "adequately insured" and exclusion AGL-005 Exclusion-Independent Contractors/Subcontractors shown on the Exclusions/Limitations-Combination Endorsement attached to this policy is deleted in its entirely.

All other terms and conditions remain unchanged.   **(Brauns Aff. Ex. B)**

Dated: New York, New York
       August 11, 2008

/s/ Aidan M. McCormack
Aidan M. McCormack, Esq.
Cyril E. Smith, Esq.
Nixon Peabody LLP
*Attorneys for Plaintiff*
*Atlantic Casualty Insurance Company*
437 Madison Avenue
New York, New York 10022
(212) 940-3000

TO:    Michael L. Smar, Esq.
McCabe, Collins, McGeough & Fowler, LLP
*Attorneys for Defendant*
*Wonder Works Construction Corp.*
346 Westbury Avenue – P.O. Box 9000
Carle Place, New York  11514

William Pager, Esq.
Law Offices of William Pager
*Attorneys for Defendant*
Forthright Construction, Inc.
470 Kings Highway
Brooklyn, New York 11223

Steve Newman, Esq.
Law Offices of Steve Newman
*Attorneys for Defendant*
Vasilis and Constantia Aftousmis
65 Broadway, Suite 825
New York, New York  10006

11113999